**LAW OFFICES OF RONALD A. MARRON**
RONALD A. MARRON (SBN 175650)
*ron@consumersadvocates.com*
MICHAEL T. HOUCHIN (SBN 305541)
*mike@consumersadvocates.com*
651 Arroyo Drive
San Diego, California 92103
Telephone:   (619) 696-9006
Facsimile:   (619) 564-6665
***Attorneys for Plaintiff and the Proposed Class***

# UNITED STATES DISTRICT COURT
## FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| GREGORY ARTHUR, on behalf of himself, all others similarly situated, and the general public, | Case No.: |
| | **CLASS ACTION** |
| Plaintiff, | |
| v. | |
| UNITED INDUSTRIES CORPORATION, a Delaware Corporation, | |
| Defendant. | |

Plaintiff GREGORY ARTHUR ("Plaintiff"), on behalf of himself, all others similarly situated, and the general public, by and through his undersigned counsel, hereby brings this action against UNITED INDUSTRIES CORPORATION ("UIC"), and alleges the following upon his own personal knowledge or, where he lacks personal knowledge, upon information and belief, including the investigation of his counsel.

## JURISDICTION AND VENUE

1.     This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332(d)(2)(A), the Class Action Fairness Act, because the matter in controversy exceeds the sum or value of $5,000,000 exclusive of interest and costs, and at least one member of the class of plaintiffs is a citizen of a state different from UIC. In addition, more than two-thirds of the members of the class reside in states other than the state in which UIC is a citizen and in which this case is filed, and therefore any exceptions to jurisdiction under 28 U.S.C. § 1332(d) do not apply. The Court also has supplemental jurisdiction over plaintiff's state law claims pursuant to 28 U.S.C. § 1367.

2.     The Court has personal jurisdiction over UIC pursuant to Cal. Code Civ. P. § 410.10, as a result of UIC's substantial, continuous and systematic contacts with the state and because UIC has purposely availed itself of the benefits and privileges of conducting business activities within the state.

3.     Venue is proper in the Central District of California pursuant to 28 U.S.C. § 1391(b) and (c), because UIC resides (i.e., is subject to personal jurisdiction) in this district, and a substantial part of the events or omissions giving rise to the claims occurred in this district.

## SUMMARY OF CASE

4.     UIC is the manufacturer of a herbicide known as Spectracide® Weed and Grass Killer. Among other UIC products, UIC manufactures, markets, and sells Spectracide® Weed and Grass Killer Concentrate ("Spectracide Concentrate"). Unlike "Ready-to-Use" Spectracide, the Spectracide Concentrates are intended to be diluted with

water prior to use, so that the diluted product will have the same weed-killing power as Ready-to-Use Spectracide®.

5.      During at least the preceding four years, UIC advertised the Spectracide® Concentrates as being capable of making a certain number of gallons. For example, prominently at the top of the container in bold red numbers on a yellow background, the 32-fluid ounce size advertises it "Makes Up to 10 Gallons." as pictured below.



6.      These advertisements were false, however, because the Spectracide Concentrates were in fact only capable of making a fraction of the number of gallons represented when diluted to the same strength as "Ready-to use" Spectracide® according to UIC's own instructions. For example, the 32-fluid ounce size makes only 6.6 gallons of Spectracide® when used for "general weed control."

7.      Plaintiff brings this action to enjoin UIC from continuing to falsely advertise the Spectracide Concentrates in this manner, and to recover damages for himself and other purchasers.

## PARTIES

8.      Plaintiff is a resident of Tujunga, California.

9.      Defendant United Industries Corporation is a Delaware Corporation that maintains its principal place of business at 1 Rider Trail Plaza Drive Suite 300 Earth City Missouri 63045.

## FACTS

10.      UIC manufactures, markets and sells Spectracide Concentrate in 16-, 32- and 64-fluid ounce bottles, as pictured below.

  

3

11.     The principal display panel of each of the Spectracide Concentrates prominently claims that that product "Makes Up to" a stated number of gallons, as follows:

| | |
|---|---|
| Spectracide Weed and Grass Killer Concentrate 16 Fluid Ounce. | "Makes Up to 5 Gallons" |
| Spectracide Weed and Grass Killer Concentrate 32 Fluid Ounce. | "Makes Up to 10 Gallons" |
| Spectracide Weed and Grass Killer Concentrate 32 Fluid Ounce. | "Makes Up to 20 Gallons" |

12.     Directly under the Spectracide name, each Spectracide® Concentrate label states "WEED & GRASS KILLER." Further, directly under the Spectracide® name and inside of a red rectangle, each Spectracide® Concentrate label also claims the product "Kills the Root!"

13.     Given the price of the Spectracide® Concentrates in comparison to Ready-to-Use Spectracide®, together with the purported number of gallons each Spectracide® Concentrate makes, UCI markets the Spectracide® Concentrates as better values than its Ready-to-Use products.

14.     A glossy several-page pamphlet is taped over the back label of each Spectracide® Concentrate bottle, with its front page showing a graphic providing information under three headings, "Where to Use," "What it Does," and "When to use." The back of the bottle of the Spectracide® Concentrate 32 Fluid Ounce taped pamphlet is depicted on the following page:

4



15.     As depicted above, the back label also has a heading that states "Amount to Use." Under the "Amount to Use" heading, the Spectracide 32 Fluid Ounce bottle states that "For Best Results: 7 fl oz (14 Tbsp) per gallon of water;" for "general weed control (annuals): 5 fl oz (10 Tbsp) per gallon of water);" and for "Newly emerged weeds: 3 fl oz (6 Tbsp) per gallon of water." The back label also states "Makes Up to 20 Gallons."

16.     The inside of the several-page pamphlet also has a section titled "mixing instructions." The "mixing instructions" for the Spectracide® Concentrate 32 Fluid Ounce bottle is depicted on the following page:

STOP. Read Entire Label Before Use.

**Environmental Hazards** • This pesticide is toxic to aquatic invertebrates. To protect the environment, do not allow pesticide to enter or run off into storm drains, drainage ditches, gutters or surface waters. Applying this product in calm weather when rain is not predicted for the next 24 hours will help to ensure that wind or rain does not blow or wash pesticide off the treatment area. Rinsing application equipment over the treated area will help avoid runoff to water bodies or drainage systems.

## DIRECTIONS FOR USE

It is a violation of Federal law to use this product in a manner inconsistent with its labeling.
*For outdoor residential use only.*

**Do not allow people or pets to enter the treated area until sprays have dried.**

*APPLICATION RESTRICTIONS*
Do not apply this product in a way that will contact any person or pet, either directly or through drift. Keep people and pets out of the area during application.

*USER SAFETY RECOMMENDATIONS*
Clothing and protective equipment exposed to this product should be washed in detergent and hot water. Such items should be kept and washed separately from other laundry.

## MIXING INSTRUCTIONS

**Tank Sprayer** (plastic, aluminum or stainless steel)
• Add appropriate amount of concentrate to 1 gal of water.
• Spot treat or spray evenly over 300 sq ft.

**Dial-Type Hose-End Sprayer**
• Set sprayer to the "fl oz/gallon" level specified in the directions.
• Use only enough product for the area to be treated.
• Close sprayer, attach to hose and apply.

**Concentrate Plus Water Type Sprayer**
• Determine the amount of concentrate required.
• Pour concentrate into sprayer jar to the required "fl oz" level.
• Add the required amount of water to the "gallons" level.
• Replace sprayer top on jar and apply.

**Step 1:** Use a clean sprayer. Carefully measure and mix the amount of product and water as directed. Food utensils such as teaspoons and measuring cups must not be used for food purposes after use with pesticides.

**Step 2:** Spray as directed. Thorough coverage is important. Flush sprayer with clean water after each use.

**AMOUNT TO USE:**
**To kill newly emerged weeds:** 3 fl oz (6 Tbsp) per gallon of water treats 300 sq ft.
**For general weed control:** 5 fl oz (10 Tbsp) per gallon of water treats 300 sq ft.
**For best results:** 7 fl oz (14 Tbsp) per gallon of water treats 300 sq ft.

1 Tbsp = 3 tsp          1 fl oz = 2 Tbsp

17.    As depicted above, the "mixing instructions" for the Spectracide® Concentrate 32-fluid ounce bottle has a sub-heading titled "Amount to Use" that provides the following instructions:

**To kill newly emerged weeds**: 3 fl oz (6 Tbsp) per gallon of water treats 300 sq ft.
**For general weed control**: 5 fl oz (10 Tbsp) per gallon of water treats 300 sq ft.
**For best results**:   7 fl oz (14 Tbsp) per gallon of water treats 300 sq ft.

    1 Tbsp= 3 tsp          1 fl oz = 2 Tbsp

CLASS ACTION COMPLAINT

18.     Given the dilutions set forth on the back panel of each Spectracide®
Concentrate, the specified number of gallons that UIC represents the Spectracide®
Concentrates are capable of making is *only a fraction* what they are actually capable of
making when mixed with water according to UIC's own instructions "for general weed
control." Thus, the Spectracide® Concentrates actually make less than the amount UIC
claims "for general weed control," as demonstrated in the table below.

| Product | "Makes up to" gallon claim | Back label instruction "for general weed control" (Amount to mix with 1 gallon of water) | Amount made following instructions |
|---|---|---|---|
| Spectracide® Concentrate 16-fluid ounce | "Makes up to 5 Gallons" | "5 fl oz (10 Tbps) per gallon of water treats 300 sq ft." | 3.3 Gallons |
| Spectracide® Concentrate 32-fluid ounce | "Makes up to 10 Gallons" | "5 fl oz (10 Tbps) per gallon of water treats 300 sq ft." | 6.6 Gallons |
| Spectracide® Concentrate 64-fluid ounce | "Makes up to 20 Gallons" | "5 fl oz (10 Tbps) per gallon of water treats 300 sq ft." | 13.2 Gallons |

19.     UIC fails to disclose that the advertised "makes up to" amount can only be
achieved by following the mixing instruction for "newly emerged weeds."  However,
reasonable consumers like plaintiff would expect that the advertised "makes up to"
amount would be for the product's intended purpose, which is "general weed control."

7

20.     A reasonable purchaser – for example, an ordinary homeowner interested in removing weeds along a fence, on a driveway, or around trees or flower beds – does not have the professional understanding of what constitutes an "newly emerged weed," and does not have the technical expertise to discern when it would be appropriate to use less concentrate per this instruction. To the contrary, a reasonable consumer would instead rely on UIC's representation that "for general weed control" "5 fl oz (10 Tbps) per gallon of water treats 300 sq ft."

21.     Reasonable consumers read and understand "up to" representations – like the "Makes Up to" a specific number of "Gallons" representations on the UIC Concentrates – as providing, under normal and reasonable conditions for use, the maximum results promised. Indeed, the U.S. Federal Trade Commission has explicitly determined this to be the case, stating that its "view" is "that advertisers using these claims should be able to substantiate that consumers are likely to achieve the maximum results promised under normal circumstances."

22.     As demonstrated by the pamphlet itself, including its cover, use of the product only on "newly emerged weeds" is not normal use. Rather, normal use is as represented on the pamphlet's cover, and of course on the front of the bottle: as a "WEED AND GRASS KILLER," that "Kills The Root!" and is to be used "on patios, walkways, and flowerbeds."

23.     Moreover, the front label of the Spectracide® Concentrate products claim to kill "chickweed," "plantain," "annual blue grass," "dandelion," and "clover."   An enlarged image of the Spectracide® Concentrate 64-fluid ounce bottle is depicted on the following page:

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19



20   24.   Reasonable consumers should not be expected to look beyond misleading

21   representations on the front of the label to discover the truth from the mixing instructions

22   in small print on the back pamphlet of the product. This is especially true where, as here,

23   the products at issue are concentrated forms of a Ready-to-Use product. In other words,

24   reasonable consumers understand that they will obtain the same degree of efficacy,

25   indeed the same formulation and therefore the same concentration of active ingredient,

26   as UIC's Ready-to-Use Concentrate product, the only difference being that for a higher

27   price paid, the consumer receives a better value: more product at the same concentration

28   for less money.

CLASS ACTION COMPLAINT

25.     Indeed, this is what UIC intends a consumer to understand about the Spectracide Concentrates, this is a fundamental aspect of UIC's marketing of these concentrate products, this is what consumers reasonably rely on in purchasing these concentrate products, and this is what consumers reasonably expect upon purchasing and using these concentrate products.

**PLAINTIFF'S RELIANCE AND INJURY**

26.     Plaintiff Gregory Arthur purchased Spectracide® Concentrate products on multiple occasions, from Wal-Mart, Home Depot, and/or Lowes stores located near his home in the San Fernando Valley, California during the Class Period.

27.     In purchasing Spectracide® Concentrate products, Plaintiff relied on the prominent labeling claim near the top of the front of the bottle stating that the product "makes up to" a specified amount of gallons of the product which he took to mean would, in fact, make up to the advertised amount  of gallons when used as directed for general weed control.

28.     When purchasing Spectracide® Concentrate, plaintiff was seeking a product that was effective at killing all unwanted weeds and grass, and which was more affordable than the Spectracide Ready-to-Use products, and understood that he was purchasing a concentrate with a substantially better dollar-per-gallon value than the Ready-to-Use alternative (i.e., the value that would be had if the product supplied the maximum number of gallons). Moreover, plaintiff was seeking a product that would yield the number of gallons represented, and, at the dilution that resulted in that amount of gallons, would kill all unwanted weeds and grass, including a product that "Kills the Root!"

29.     These representations, upon all of which plaintiff relied in purchasing these products, however, were false and misleading, and had the capacity, tendency, and likelihood to confuse or confound plaintiff and other consumers acting reasonably. This is because, as described in detail herein, the Spectracide® Concentrates do not yield the volume, in gallons, as promised on the label, if following the instructions prominently stated on the product's back panel (i.e., on the instruction pamphlet's cover).

10

30.     These representations were also false and misleading because the Spectracide® Concentrates yield the volume, in gallons, of a product that is not as effective at killing all types of weed and grass, such as the Ready-to-Use Spectracide® products, and, diluted to the maximum volume represented, may not be effective at all, especially for certain applications.

31.     The Spectracide® Concentrates cost more than similar products without misleading labeling, and would have cost less absent the false and misleading statements complained of herein.

32.     Plaintiff paid more for Spectracide® Concentrate, and would only have been willing to pay less, or unwilling to purchase it at all, absent the false and misleading labeling complained of herein.

33.     For these reasons, Spectracide® Concentrate was worth less than what plaintiff paid for it, and may have been worth nothing if diluted to yield, by volume, the number of gallons promised on the label.

34.     By use of its misleading labeling, UIC created increased marketplace demand for the Spectracide Concentrates, and increased its market share, relative to what its demand and share would have been had UIC labeled the Spectracide® Concentrate products truthfully.

35.     Plaintiff lost money as a result of UIC's deceptive claims and practices in that he did not receive what he paid for when purchasing Spectracide® Concentrate.

36.     Plaintiff detrimentally altered his position and suffered damages in an amount equal to the amount he paid for Spectracide® Concentrate, or at least some portion thereof.

37.     If plaintiff could be assured that claims regarding the amount yielded when mixing according to instructions was accurate, and that the product was effective at killing all weeds and grass as a result, and was not otherwise false or misleading, he would consider purchasing the product in the future.

CLASS ACTION COMPLAINT

## CLASS ACTION ALLEGATIONS

38.     While reserving the right to redefine or amend the class definition prior to seeking class certification, pursuant to Federal Rule of Civil Procedure 23, plaintiff seeks to represent a class of all persons in the United States who, on or after September 21, 2013 (the "Class Period"), purchased the Spectracide Concentrates for personal or household use (the "Class" or "Nationwide Class").

39.     While reserving the right to redefine or amend the class definition prior to seeking class certification, pursuant to Federal Rule of Civil Procedure 23, Plaintiff also seeks to represent a subclass of all persons who, during the Class Period, purchased the Spectracide Concentrates for personal or household use (the "Subclass" or "California Subclass").

40.     The members in the proposed Class and Subclass are so numerous that individual joinder of all members is impracticable, and the disposition of the claims of all Class and Subclass members in a single action will provide substantial benefits to the parties and Court.

41.     Questions of law and fact common to plaintiffs and the Class and Subclass include:

a. whether by mixing according to the instructions on the back label of the Spectracide Concentrates, the products would result in the "Makes Up To" amount of gallons stated on the principal display panel and in the first bullet point under the heading "MIXING INSTRUCTIONS" in the taped, sealed pamphlet;

b. whether the claimed "Makes up to" amount of gallons was material to purchasers;

c. Whether a reasonable consumer believes that "Makes Up To" actually means the product will make that amount when used under normal, reasonable conditions;

d. Whether a reasonable consumer would remove the sealed pamphlet before purchasing any Spectracide® Concentrate products;

CLASS ACTION COMPLAINT

e. Whether a reasonable consumer would understand what "newly developed weeds" means;

f. Whether by diluting the Spectracide Concentrates to actually obtain the "Makes Up To" amount of gallons claimed, the products are less effective than Spectracide®'s Ready-to-Use products;

g. Whether by diluting the Spectracide® Concentrates to actually obtain the "Makes Up To" amount of gallons claimed, the products are ineffective;

h. Whether UIC's conduct violates public policy;

i. The proper amount of damages, including punitive damages;

j. The proper amount of restitution;

k. The proper scope of injunctive relief, including corrective advertising and recall from the marketplace; and

l. The proper amount of attorneys' fees.

42. These common questions of law and fact predominate over questions that affect only individual Class or Subclass members.

43. Plaintiff's claims are typical of Class and Subclass members' claims because they are based on the same underlying facts, events, and circumstances relating to UIC's conduct. Specifically, all Class and Subclass members, including Plaintiff, were subjected to the same misleading and deceptive conduct when they purchased the Spectracide® Concentrates, and suffered economic injury because Spectracide® Concentrates are misrepresented. Absent UIC's business practice of deceptively and unlawfully labeling the Spectracide® Concentrates, Plaintiff and other Class and Subclass members would not have purchased the Spectracide® Concentrates, or would have paid less for the products.

44. Plaintiff will fairly and adequately represent and protect the interests of the Class and Subclass, have no interests incompatible with the interests of the Class and Subclass, and have retained counsel competent and experienced in class action litigation, and specifically in litigation involving false and misleading advertising.

CLASS ACTION COMPLAINT

45.     Class treatment is superior to other options for resolution of the controversy because the relief sought for each Class and Subclass member is small, such that, absent representative litigation, it would be infeasible for Class and Subclass members to redress the wrongs done to them.

46.     UIC has acted on grounds applicable to the Class and Subclass, thereby making appropriate final injunctive and declaratory relief concerning the Class and Subclass as a whole.

47.     As a result of the foregoing, class treatment is appropriate under Fed. R. Civ. P. 23(a), 23(b)(2), and 23(b)(3).

48.     In addition, it may be appropriate, pursuant to Fed. R. Civ. P. 23(c)(4), to maintain this action as a class action with respect to particular issues.

## CAUSES OF ACTION

### FIRST CAUSE OF ACTION

### VIOLATIONS OF THE CONSUMERS LEGAL REMEDIES ACT

### CAL. CIV. CODE §§ 1750 ET SEQ.

### (BY THE NATIONWIDE AND CALIFORNIA SUBCLASS)

49.     Plaintiff realleges and incorporates the allegations elsewhere in the Complaint as if set forth in full herein.

50.     The CLRA prohibits deceptive practices in connection with the conduct of a business that provides goods, property, or services primarily for personal, family, or household purposes.

51.     UIC's false and misleading labeling and other policies, acts, and practices described herein were designed to, and did, induce the purchase and use of UIC's Spectracide® Concentrates for personal, family, or household purposes by Plaintiff and other Subclass members, and violated and continue to violate at least the following sections of the CLRA:

  a.  § 1770(a)(5): Representing that goods or services have characteristics, ingredients, uses, benefits, or quantities which they do not have;

b. § 1770(a)(7): Representing that goods or services are of a particular standard, quality, or grade, or that goods are of a particular style or model, if they are of another;

c. § 1770(a)(9): Advertising goods with intent not to sell them as advertised; and

d. § 1770(a)(16): Representing the subject of a transaction has been supplied in accordance with a previous representation when it has not.

52.     UIC profited from its sales of the falsely, deceptively, and unlawfully advertised Spectracide® Concentrates to unwary consumers.

53.     UIC's wrongful business practices regarding the Spectracide Concentrate constituted, and constitute, a continuing course of conduct in violation of the CLRA.

54.     Plaintiff, on behalf of himself and the Subclass, seeks injunctive relief under Civil Code § 1782(d).

55.     In compliance with Cal. Civ. Code § 1782, plaintiff will send written notice to UIC of his claims. Although plaintiff does not currently seek damages for his claims under the CLRA, if UIC refuses to remedy the violation within 30 days of receiving the notice letter, plaintiff may thereafter amend this Complaint to seek damages.

## SECOND CAUSE OF ACTION
## VIOLATIONS OF THE FALSE ADVERTISING LAW
## CAL. BUS. & PROF. CODE §§ 17500 ET SEQ.
## (BY THE NATIONWIDE CLASS CALIFORNIA SUBCLASS)

56.     Plaintiff realleges and incorporates the allegations elsewhere in the Complaint as if set forth in full herein.

57.     Under the FAL, "[i]t is unlawful for any person, firm, corporation or association, or any employee thereof with intent directly or indirectly to dispose of real or personal property or to perform services" to disseminate any statement "which is untrue or misleading, and which is known, or which by the exercise of reasonable care should be known, to be untrue or misleading." Cal. Bus. & Prof. Code § 17500.

58.    As alleged herein, the advertisements, labeling, policies, acts, and practices of UIC relating to its Spectracide® Concentrates misled consumers acting reasonably as to the amount purchased and efficacy of Spectracide® Concentrates.

59.    Plaintiff suffered injury in fact as a result of UIC's actions as set forth herein because plaintiff purchased Spectracide® Concentrate in reliance on UIC's false and misleading marketing claims that the products "Make Up to" a certain volume when the instructions on the back panel are followed and/or when a purchaser seeks to obtain "best results" as instructed and advertised by UIC.

60.    Plaintiff suffered injury in fact as a result of UIC's actions as set forth herein because Plaintiff purchased Spectracide Concentrate in reliance on UIC's false and misleading marketing claims that the products "Make Up To" a certain volume, by gallons, of product that is efficacious at killing all weeds and grass.

61.    UIC's business practices as alleged herein constitute unfair, deceptive, untrue, and misleading advertising pursuant to the FAL because UIC has advertised the Spectracide® Concentrates in a manner that is untrue and misleading, which UIC knew or reasonably should have known.

62.    UIC profited from its sales of the falsely and deceptively advertised Spectracide Concentrates to unwary consumers.

63.    As a result, pursuant to Cal. Bus. & Prof. Code § 17535, plaintiff and the Subclass are entitled to injunctive and equitable relief and restitution.

**THIRD CAUSE OF ACTION**

**VIOLATIONS OF THE UNFAIR COMPETITION LAW**

**CAL. BUS. & PROF. CODE §§ 17200 ET SEQ.**

**(BY THE NATIONWIDE CLASS CALIFORNIA SUBCLASS)**

64.    Plaintiff realleges and incorporates the allegations elsewhere in the Complaint as if set forth in full herein.

65.    The UCL prohibits any "unlawful, unfair or fraudulent business act or practice." Cal. Bus. & Prof. Code § 17200.

CLASS ACTION COMPLAINT

66.     The acts, omissions, misrepresentations, practices, and non-disclosures of UIC as alleged herein constitute business acts and practices.

**FRAUDULENT**

67.     A statement or practice is fraudulent under the UCL if it is likely to deceive the public, applying a reasonable consumer test.

68.     As set forth herein, UIC's claims relating to the Spectracide® Concentrate products are likely to deceive reasonable consumers and the public.

**UNLAWFUL**

69.     The acts alleged herein are "unlawful" under the UCL in that they violate at least the following laws:

- The False Advertising Law, Cal. Bus. & Prof. Code §§ 17500 *et seq.*; and
- The Consumers Legal Remedies Act, Cal. Civ. Code §§ 1750 *et seq.*

**UNFAIR**

70.     UIC's conduct with respect to the labeling, advertising, and sale of the Spectracide® Concentrates was unfair because UIC's conduct was immoral, unethical, unscrupulous, or substantially injurious to consumers and the utility of its conduct, if any, does not outweigh the gravity of the harm to its victims.

71.     UIC's conduct with respect to the labeling, advertising, and sale of Spectracide® Concentrates was also unfair because it violated public policy as declared by specific constitutional, statutory or regulatory provisions, including but not limited to the False Advertising Law.

72.     UIC's conduct with respect to the labeling, advertising, and sale of Spectracide® Concentrates was also unfair because the consumer injury was substantial, not outweighed by benefits to consumers or competition, and not one consumers themselves could reasonably have avoided.

*               *               *

73.     UIC profited from its sale of the falsely, deceptively, and unlawfully advertised Spectracide Concentrate to unwary consumers.

74.     Plaintiff and Subclass members are likely to be damaged by UIC's deceptive trade practices, as UIC continues to disseminate, and is otherwise free to continue to disseminate misleading information. Thus, injunctive relief enjoining this deceptive practice is proper.

75.     UIC's conduct caused and continues to cause substantial injury to plaintiff and the other Subclass Members, who have suffered injury in fact as a result of UIC's fraudulent, unlawful, and unfair conduct.

76.     In accordance with Bus. & Prof. Code § 17203, Plaintiff, on behalf of himself, the Class and Subclass, and the general public, seeks an order enjoining UIC from continuing to conduct business through unlawful, unfair, and/or fraudulent acts and practices, and to commence a corrective advertising campaign.

77.     Plaintiff, on behalf of himself and the Class and Subclass also seeks an order for the restitution of all monies from the sale of the Spectracide® Concentrates that UIC unjustly acquired through acts of unlawful competition.

## PRAYER FOR RELIEF

78.     Wherefore, Plaintiff, on behalf of himself, all others similarly situated, and the general public, prays for judgment against UIC as to each and every cause of action, and the following remedies:

A.     An Order declaring this action to be a proper class action, appointing Plaintiff as class representative, and appointing his undersigned counsel as class counsel;

B.     An Order requiring UIC to bear the cost of class notice;

C.     An Order enjoining UIC from engaging in the unfair, unlawful, and deceptive business practices and false advertising complained of herein;

D.     An Order compelling UIC to conduct a corrective advertising campaign;

E.     An Order compelling UIC to recall and destroy all misleading and deceptive advertising materials and product labels;

CLASS ACTION COMPLAINT

F.   An Order requiring UIC to disgorge all monies, revenues, and profits obtained by means of any wrongful act or practice;

G.   An Order requiring UIC to pay restitution to restore all funds acquired by means of any act or practice declared by this Court to be an unlawful, unfair, or fraudulent business act or practice, untrue or misleading advertising, plus pre-and post-judgment interest thereon;

H.   An Order requiring UIC to pay all actual and statutory damages permitted under the causes of action alleged herein;

I.   An award of attorneys' fees and costs; and

J.   Any other and further relief that Court deems necessary, just, or proper.

## **JURY DEMAND**

Plaintiff hereby demands a trial by jury on all issues so triable.

Date: September 21, 2017          **LAW OFFICES OF RONALD A. MARRON**

By: */s/ Ronald A. Marron*

RONALD A. MARRON
MICHAEL T. HOUCHIN
651 Arroyo Drive
San Diego, California 92103
Telephone: (619) 696-9006
Facsimile: (619) 564-6665
***Counsel for Plaintiff and the Proposed Class***

CLASS ACTION COMPLAINT