**LAW OFFICES OF RONALD A. MARRON**
RONALD A. MARRON (SBN 175650)
*ron@consumersadvocates.com*
MICHAEL T. HOUCHIN (SBN 305541)
*mike@consumersadvocates.com*
651 Arroyo Drive
San Diego, California 92103
Telephone: (619) 696-9006
Facsimile: (619) 564-6665
***Attorneys for Plaintiff and the Proposed Class***

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

GREGORY ARTHUR, on behalf of himself, all others similarly situated, and the general public,

      Plaintiff,

vs.

UNITED INDUSTRIES CORPORATION,

      Defendant.

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

Case No. 2:17-cv-06983-CAS-SK

**CLASS ACTION**

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFF'S MOTION FOR CLASS CERTIFICATION AND TO APPOINT CLASS COUNSEL**

Date: March 26, 2018
Time: 10:00 AM
Judge: Hon. Christina A. Snyder

REDACTED FOR PUBLIC FILING

-1-

# **TABLE OF CONTENTS**

I.    INTRODUCTION ..................................................................................1

II.   FACTS ..................................................................................................2

III.  LEGAL STANDARD ..........................................................................5

IV.   ARGUMENT .......................................................................................5

      A. The Requirements of Rule 23(a) Are Satisfied............................5

            1.    Numerosity ............................................................................5

            2.    Commonality .........................................................................6

            3.    Typicality ..............................................................................7

            4.    Adequacy ...............................................................................9

      B. The Requirements of Rule 23(b)(3) Are Satisfied.....................10

            1.    Predominance ......................................................................10

                  a.    UIC's Liability Will be Adjudicated Pursuant to
                        Objective Standards, Using Common Evidence ...........11

                  b.    The Class's Damages Stem Solely From UIC's
                        Actions That Created the Legal Liability.....................13

            2.    Superiority ...........................................................................17

                  a.    The Class Has No Interest in Individually
                        Controlling Separate Actions .......................................17

                  b.    There Is No Other Litigation and it is Desirable to
                        Litigate in this Forum...................................................17

                  c.    No Manageability Concerns Outweigh Superiority.......18

      C. The Requirements of Rule 23(b)(2) Are Satisfied.....................18

      D. The Class Is Ascertainable ........................................................19

      E. The Court Should Approve Notice to the Class..........................22

V.    CONCLUSION ..................................................................................22

-ii-

*Arthur v. United Industries Corporation*, Case No. 2:17-cv-06983-CAS-SK
Memorandum of Points and Authorities  in Support of Plaintiff's Motion for Class
Certification and to Appoint Class Counsel

# <u>TABLE OF AUTHORITIES</u>

**Cases**

*Agne v. Papa John's Int'l, Inc.*,
  286 F.R.D. 559 (W.D. Wa. 2012) ........................................................... 20

*Allen v. Hyland's Inc.*,
  300 F.R.D. 643 (C.D. Cal. 2014) ............................................................ 21

*Amchem Prods., Inc. v. Windsor*,
  521 U.S. 591 (1997) ..........................................................6, 10, 17

*Amgen Inc. v. Conn. Ret. Plans & Trust Funds*,
  133 S. Ct. 1184 (2013) ............................................................................ 5

*Astiana v. Kashi Co.*,
  291 F.R.D. 493 (S.D. Cal. 2013) ........................................................... 20

*Berger v. Home Depot USA, Inc.*,
  741 F.3d 1061 (9th Cir. 2014) ............................................................... 10

*Briseno v. ConAgra Foods, Inc.*,
  844 F. 3d 1121 (9th Cir. Jan. 3, 2017) ..................................................... 5

*Brockey v. Moore*,
  107 Cal. App. 4th 86 (2003) ............................................................ 11, 12

*Brown v. Hain Celestial Grp., Inc.*,
  2014 WL 6483216 (N.D. Cal. Nov. 18, 2014) ....................................... 21

*Bruno v. Eckhart Corp.*,
  280 F.R.D. 540 (C.D. Cal. 2012) ........................................................... 12

*Butler v. Sears, Roebuck & Co.*,
   727 F.3d 796 (7th Cir. 2013) ................................................................ 13

*Chavez v. Blue Sky Nat. Beverage Co.*,
  268 F.R.D. 365 (N.D. Cal. 2010) ..................................................... 13, 20

*Chowning v. Kohl's Dep't Stores, Inc.*,
  2016 WL 1072129 (C.D. Cal. Mar. 15, 2016) ....................................... 14

-iii-

*Clark v. Super. Ct.*,
   50 Cal. 4th 605 (2010) .........................................................................14

*Colgan v. Leatherman Tool Group, Inc.*,
   135 Cal. App. 4th 663 (2006) ...................................................11, 14

*Comcast Corp. v. Behrend*,
   133 S. Ct. 1426 (2013)............................................................10, 13

*Cortez v. Purolator Air Filtration Prods. Co.*,
   23 Cal. 4th 163 (2000) .........................................................................14

*Culley v. Lincare Inc.*,
   2016 WL 4208567 (E.D. Cal. Aug. 10, 2016) ....................................18

*De La Fuente v. Stokely-Van Camp, Inc.*,
   713 F.2d 225 (7th Cir. 1983) .................................................................8

*Deposit Guar. Nat'l Bank v. Roper*,
   445 U.S. 326 (1980) ...........................................................................17

*Eike v. Allergan, Inc.*,
   2016 WL 4272127 (S.D. Ill. 2016).....................................................17

*Ellis v. Costco Wholesale Corp.*,
   657 F.3d 970 (9th Cir. 2011) ..............................................................19

*Erica P. John Fund, Inc. v. Halliburton Co.*,
   563 U.S. 804 (2011) ...........................................................................11

*Fletcher v. Sec. Pac. Nat'l Bank*,
   23 Cal. 3d 442 (1979) .........................................................................14

*Forcellati v. Hyland's, Inc.*,
   2014 WL 1410264 (C.D. Cal. Apr. 9, 2014)................................19, 21

*Galvan v. KDI Distribution Inc.*,
   2011 WL 5116585 (C.D. Cal. 2011) ..................................................21

*Guido v. L'Oreal, USA, Inc.*,
   284 F.R.D. 468 (C.D. Cal. 2012)..................................................12, 19

*Hale v. State Farm Mut. Auto. Ins. Co.*,
  2016 WL 4992504 (S.D. Ill. Sept. 16, 2016) ................................................7, 11
*Hall v. Time*,
  158 Cal.App.4th 847 (2008) ............................................................................15
*Hanlon v. Chrysler Corp.*,
  150 F.3d 1011 (9th Cir. 1998) ................................................................*passim*
*Hanon v. Dataproducts Corp.*,
  976 F.2d 497 (9th Cir. 1992) ..............................................................................8
*Hendricks v. Starkist Co.*,
  2016 WL 5462423 (N.D. Cal. Sept. 29, 2016) ................................................15
*Hilao v. Estate of Marcos*,
  103 F.3d 767 (9th Cir. 1996) ............................................................................21
*In re Brazilian Blowout Litig.*,
  2011 WL 10962891 (C.D. Cal. Apr. 12, 2011) ....................................6, 8, 9, 17
*In re Cathode Ray Tube (CRT) Antitrust Litig.*,
  2013 WL 5429718 (N.D. Cal. 2013) ................................................................13
*In re Ferrero Litig.*,
  278 F.R.D. 552 (S.D. Cal. 2011) ......................................................................13
*In re Morning Song Bird Food Litig.*,
  2013 WL 12144051 (S.D. Cal. Sept. 30, 2013) ................................................15
*In re Tobacco II Cases*,
  46 Cal. 4th 298 (2009) ................................................................................12, 19
*In re Vioxx Class Cases*,
  180 Cal. App. 4th 116 (2009) ............................................................................14
*Jefferson v. Chase Home Fin.*,
  2008 WL 1883484 (N.D. Cal. Dec. 14, 2007) ..................................................11
*Jimenez v. Allstate Ins. Co.*,
  765 F.3d 1161 (9th Cir. 2014) ............................................................................6

-v-

*Arthur v. United Industries Corporation*, Case No. 2:17-cv-06983-CAS-SK
MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFF'S MOTION FOR CLASS
CERTIFICATION AND TO APPOINT CLASS COUNSEL

*Johns v. Bayer Corp.*,
 280 F.R.D. 551 (S.D. Cal. 2012) ......................................................13

*Keegan v. Am. Honda Motor Co., Inc.*,
 284 F.R.D. 504 (C.D. Cal. June 12, 2012) ......................................12

*Keele v. Wexler*,
 149 F.3d 589 (7th Cir. 1998) ............................................................7

*Keilholtz v. Lennox Heart Prods., Inc.*,
 268 F.R.D. 330 (N.D. Cal. 2010) ....................................................20

*Knutson v. Schwan's Home Serv., Inc.*,
 2013 WL 4774763 (S.D. Cal. Sept. 5, 2013) .............................20, 21

*Koh v. S.C. Johnson & Son, Inc.*,
 2010 WL 94265 (N.D. Cal. Jan. 6, 2010)........................................15

*Korea Supply Co. v. Lockheed Martin Corp.*,
 29 Cal. 4th 1134 (2003) ..................................................................14

*Krueger v. Wyeth, Inc.*,
 310 F.R.D. 468 (S.D. Cal. 2015) ....................................................13

*Kwikset Corp. v. Superior Court*,
 51 Cal. 4th 310 (2011)....................................................................19

*Lambert v. Nutraceutical Corp.*,
 870 F.3d 1170 (9th Cir. 2017) ........................................................13

*Lavie v. Procter & Gamble Co.*,
 105 Cal. App. 4th 496 (2003) ..........................................................11

*Levya v. Medline Indus. Inc.*,
 716 F.3d 510 (9th Cir. 2013) ....................................................10, 18

*Lilly v. Jamba Juice Co.*,
 308 F.R.D. 231 (N.D. Cal. 2014) ......................................9, 11, 20, 21

*Martin v. Monsanto Co.*,
 2017 WL 1115167 (C.D. Cal. Mar. 24, 2017) ............................*passim*

-vi-

*McCrary v. Elations Co., LLC*,
  2014 WL 17792438 (C.D. Cal. Jan. 13, 2014)..................................................19

*McGill v. Citibank*, N.A.,
  2 Cal. 5th 945 (2017) ........................................................................................19

*Mezzadri v. Med. Depot, Inc.*,
  2016 WL 5107163 (S.D. Cal. May 12, 2016) ....................................................6

*Moyle v. Liberty Mut. Ret. Benefit Plan*,
  823 F.3d 948 (9th Cir. May 20, 2016)...............................................................12

*Ortega v. Natural Balance, Inc.*,
  2014 WL 2782329 (C.D. Cal. June 19, 2014)....................................................20

*Parkinson v. Hyundai Motor Am.*,
  258 F.R.D. 580 (C.D. Cal. 2008).......................................................................13

*Pulaski Middleman, LLC v. Google, Inc.*,
  802 F.3d 979 (9th Cir. 2015) .......................................................................11, 13

*Rahman v. Mott's LLP*,
  2014 WL 6815779 (N.D. Cal. Dec. 3, 2014) .....................................................20

*Rasario v. Livaditis*,
  963 F.2d 1013 (7th Cir. 1992) .............................................................................6

*Ries v. Arizona Beverages USA LLC*,
  287 F.R.D. 523 (N.D. Cal. 2012) ..................................................................20, 21

*Rodman v. Safeway, Inc.*,
  2014 WL 988992 (N.D. Cal. 2014).....................................................................6

*Saavedra v. Eli Lily & Co.*,
  2014 WL 7338930 (C.D. Cal. Dec. 18, 2014)....................................................15

*Salvagne v. Fairfield Ford Inc.*,
  264 F.R.D. 321 (S.D. Ohio 2009)........................................................................8

*Schwab v. Comm'r of Internal Revenue*,
  715 F.3d 1169 (9th Cir. 2013) ............................................................................14

-vii-

*Shady Grove Orthopedic Assocs., P.A. v. Allstate Ins. Co.*,
  559 U.S. 393 (2010) .................................................................5

*Simpson v. Fireman's Fund Ins. Co.*,
  231 F.R.D. 391 (N.D. Cal. 2005) ...........................................8

*Six (6) Mexican Workers v. Arizona Citrus Growers*,
  904 F.2d 1301 (9th Cir. 1990) ...............................................21

*Smith v. Univ. of Wash. Law Sch.*,
  233 F.3d 1188 (9th Cir. 2000) ...............................................18

*Spann v. J.C. Penney Corp.*,
  307 F.R.D. 508 (C.D. Cal. 2015)..............................................7

*Stearns v. Ticketmaster Corp.*,
  655 F.3d 1013 (9th Cir. 2012) ...............................................12

*Steven Ades & Hart Woolery v. Omni Hotels Mgmt. Corp.*,
  2014 WL 4627271 (C.D. Cal. Sept. 8, 2014).........................20

*Tait v. BSH Home Appliances Corp.*,
  289 F.R.D. 466 (C.D. Cal. 2012).......................................12, 17

*Todd v. Tempur-Sealy Int'l, Inc.*,
  2016 WL 5746364 (N.D. Cal. Sept. 30, 2016 .........................9

*Valentino v. Carter-Wallace, Inc.*,
  97 F.3d 1227 (9th Cir. 1996) .................................................18

*Wal-Mart Stores, Inc. v. Dukes*,
  564 U.S. 338 (2011) .................................................5, 6, 7, 18

*Werdebaugh v. Blue Diamond Growers*,
  2014 WL 2191901 (N.D. Cal. May 23, 2014) .......................20

*Williams v. Gerber Prods. Co.*,
  552 F.3d 934 (9th Cir. 2008) .................................................11

*Wolin v. Jaguar Land Rover N. Am., LLC*,
  617 F.3d 1168 (9th Cir. 2010) ...........................................8, 17

*Zinser v. Accufix Research Inst., Inc.*,
  253 F.3d 1180 (9th Cir. 2001) ................................................................17, 18

**Statutes**

Cal. Bus. & Prof. Code §§ 17200 *et seq.* ...............................................................5

Cal. Bus. & Prof. Code §§ 17500 *et seq.* ...............................................................5

Cal. Civ. Code §§ 1750 *et seq.* ..............................................................................4

**Rules**

Fed R. Civ. P. 23(a)(3) ............................................................................................7

Fed R. Civ. P. 23(a)(4) ............................................................................................9

Fed R. Civ. P. 23(b)(2) ..........................................................................................18

Fed R. Civ. P. 23(c)(2)(B) ......................................................................................22

Fed. R. Civ. P.  23(a)(1) ...........................................................................................5

Fed. R. Civ. P. 23 .....................................................................................................5

Fed. R. Civ. P. 23(a)(2) ............................................................................................6

Fed. R. Civ. P. 23(b)(3) ......................................................................................1, 10

Rule 23(a) .................................................................................................................1

# I.    INTRODUCTION

This is a straightforward consumer fraud action in which the class alleges Defendant United Industries Corporation ("UIC") promises its Spectracide Concentrate herbicide products make more spray solution for the advertised and usual applications than they actually make.

The case is readily amenable to certification. Each of the Rule 23(a) criteria is satisfied. For numerosity, Defendant has sold ███ retail units of the Spectracide Concentrate products in the state of California. For commonality, Plaintiff demonstrates that UIC's behavior was the same to all class members, so that its liability to each will be determined by answering the same questions, namely whether UIC has violated California's consumer protection laws and whether its gallons claim was likely to deceive a reasonable consumer. For typicality, Plaintiff demonstrates the legal theory and type of injury is the same for all class members, regardless of variety or bottle size. And for adequacy, Plaintiff demonstrates he and his counsel have no conflicts and have been vigorously prosecuting the case on behalf of the class.

In addition, each of the Rule 23(b)(3) criteria is satisfied. The class's claims present predominating common questions based on objective standards that will be resolved through classwide evidence. The class challenges only a single deceptive representation, so its damages necessarily flow from UIC's conduct creating the legal liability. Moreover, in this under-fill case, the shortage can be determined from the product labels, and the class's damages from multiplying the shortage by the products' sales. Class treatment is also the superior means of adjudicating claims that are not economically feasible to adjudicate individually. In fact, a court in the Central District of California recently granted class certification in an analogous case involving Round-Up Concentrate products that purportedly "Make Up To" a specified number of gallons. *See Martin v. Monsanto Co.*, No. EDCV162168JFWSPX, 2017 WL 1115167, at *1 (C.D. Cal. Mar. 24, 2017).

## II.    FACTS

Plaintiff filed this action on September 21, 2017. Dkt. No. 1. Plaintiff then filed a First Amended Complaint ("FAC") on November 21, 2017. Dkt. No. 16. Plaintiff alleges that UIC manufactures and markets Spectracide Weed and Grass Killer. FAC ¶ 4.  In addition to "Ready-to-Use" formulations, UIC sells concentrated versions, which must be diluted with water to make a solution for use in a tank or other sprayer. FAC ¶¶ 4-5. At issue here are Spectracide Weed and Grass Killer Concentrate products. FAC ¶¶ 4-5. The principal display panel on each product prominently claims the product "Makes Up to" a certain number of gallons (referred to sometimes herein as UIC's "gallon statement"), as follows:

| 16 Ounce Spectracide Concentrate | "Makes Up to 5 Gallons" |
| 32 Ounce Spectracide Concentrate | "Makes Up to 10 Gallons" |
| 40 Ounce Spectracide Concentrate | "Makes Up to 13 Gallons" |
| 64 Ounce Spectracide Concentrate | "Makes Up to 20 Gallons" |

*See* Declaration of Ronald A. Marron in Support of Plaintiff's Motion for Class Certification ("Marron Decl."), ¶¶ 2-5 & Exs. 1-4. The front labels of the products also claim that the products are a "WEED & GRASS KILLER" that "Kills the Root." FAC ¶ 12; Marron Decl., ¶¶ 2-5 & Exs. 1-4.

A glossy several-page pamphlet is taped over the back label of each Spectracide® Concentrate bottle, with its front page showing a graphic providing information under three headings, "Where to Use," "What it Does," and "When to use." FAC ¶ 14; Marron Decl., ¶¶ 2-5 & Exs. 1-4. The back pamphlet also has a heading that states "Amount to Use." FAC ¶ 15; Marron Decl., ¶¶ 2-5 & Exs. 1-4. Under the "Amount to Use" heading on the Spectracide 32 Fluid Ounce bottle for example, UIC states that "For Best Results: 7 fl oz (14 Tbsp) per gallon of water;" for "general weed control (annuals): 5 fl oz (10 Tbsp) per gallon of water);" and for "Newly emerged weeds: 3 fl oz (6 Tbsp) per gallon of water." The front label also

states: "Makes Up to 10 Gallons." Marron Decl., ¶ 3 & Ex. 2.

Given the products' net contents and UIC's "Amount to Use" dilution instructions, UIC's gallons statement represents that the Spectracide Concentrates are capable of making *only a fraction* of what they are actually capable of making when mixed with water according to UIC's own instructions "for general weed control." FAC ¶ 18. Thus, the Spectracide® Concentrates actually make less than the amount UIC claims "for general weed control," as demonstrated in the table below:

| Product | "Makes Up to" Claim | Calculated Yield for "General Weed Control" |
|---|---|---|
| 16 Ounce Spectracide Concentrate | "Makes Up to 5 Gallons" | 3.2 Gallons |
| 32 Ounce Spectracide Concentrate | "Makes Up to 10 Gallons" | 6.4 Gallons |
| 40 Ounce Spectracide Concentrate | "Makes Up to 13 Gallons" | 8.0 Gallons |
| 64 Ounce Spectracide Concentrate | "Makes Up to 20 Gallons" | 12.8 Gallons |

*See* Declaration of Charlene L. Podlipna, CPA in Support of Plaintiff's Motion for Class Certification ("Podlipna Decl."), ¶ 12 & Table 1. Thus, "[b]ased on Plaintiff's claim that reasonable consumers' intended purpose for the product is 'general weed control,' the Spectracide Concentrate products are underfilled by 36% to 38% respectively[.]" Podlipna Decl., ¶ 13.

Plaintiff alleges that "UIC fails to disclose that the advertised 'makes up to' amount can only be achieved by following the mixing instruction for 'newly emerged weeds.'" FAC ¶ 19. "However, reasonable consumers like plaintiff would

expect that the advertised 'makes up to' amount would be for the product's intended purpose, which is 'general weed control.'" FAC ¶ 19. "Reasonable consumers read and understand 'up to' representations – like the 'Makes Up to' a specific number of 'Gallons' representations on the UIC Concentrates – as providing, under normal and reasonable conditions for use, the maximum results promised."  FAC ¶ 21. Indeed, the U.S. Federal Trade Commission has explicitly determined this to be the case, stating that its "view" is "that advertisers using these claims should be able to substantiate that consumers are likely to achieve the maximum results promised under normal circumstances." *See* Marron Decl., ¶ 6 & Ex. 5.  The FTC reached this conclusion based on the results of a consumer survey that was performed on consumer interpretations of "Makes Up To" claims. *See* Marron Decl., ¶¶ 6-7 & Exs. 5-6.

Plaintiff purchased Spectracide® Concentrate products on multiple occasions, from Wal-Mart, Home Depot, and/or Lowes stores located near his home in the San Fernando Valley, California. *See* Declaration of Gregory Arthur in Support of Plaintiff's Motion for Class Certification ("Arthur Decl."), ¶ 3. In purchasing Spectracide® Concentrate products, Plaintiff relied on the prominent labeling claim near the top of the front of the bottle stating that the product "makes up to" a specified amount of gallons of the product which he took to mean would, in fact, make up to the advertised amount of gallons when used as directed for general weed control. FAC ¶ 27. By using the misleading gallons statement, UIC obtained enhanced negotiating leverage over Plaintiff and other class members, commanding a price for the Spectracide Concentrates that class members would not have paid had they have been fully informed. FAC ¶¶ 31-37.

Plaintiff filed this suit "to enjoin UIC from continuing to falsely advertise the Spectracide Concentrates in this manner, and to recover damages for himself and other purchasers." FAC ¶ 7.  Plaintiff brings claims on behalf of a class for violations of California's Consumers Legal Remedies Act, Cal. Civ. Code §§ 1750 *et seq.*

("CLRA"), California's False Advertising Law, Cal. Bus. & Prof. Code §§ 17500 *et seq.* ("FAL"), and California's Unfair Competition Law, Cal. Bus. & Prof. Code §§ 17200 *et seq.* ("UCL"). *See generally* FAC.

### III.   <u>LEGAL STANDARD</u>

Under Federal Rule of Civil Procedure 23, "'[a] class action may be maintained' if two conditions are met: The suit must satisfy the criteria set forth in subdivision (a) (*i.e.*, numerosity, commonality, typicality, and adequacy of representation), and it also must fit into one of the three categories described in subdivision (b)." *Shady Grove Orthopedic Assocs., P.A. v. Allstate Ins. Co.*, 559 U.S. 393, 398 (2010) ["*Shady Grove*"]. But these are the *only* criteria that must be met. *Briseno v. ConAgra Foods, Inc.*, 844 F. 3d 1121, 1124-26 (9th Cir. Jan. 3, 2017) ("declin[ing] to interpose an additional hurdle"—administrative feasibility—"into the class certification process delineated in the enacted Rule"). Rule 23 "[b]y its terms . . . creates a categorical rule entitling a plaintiff whose suit meets the specified criteria to pursue his claim as a class action." *Shady Grove*, 559 U.S. at 398 (citations omitted). Although a certification motion requires a district court to conduct a "rigorous analysis" that "[f]requently . . . will entail some overlap with the merits," *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 351 (2011) ["*Dukes*"], the merits may be considered "only" to "determin[e] whether the Rule 23 prerequisites to class certification are satisfied." *Amgen Inc. v. Conn. Ret. Plans & Trust Funds*, 133 S. Ct. 1184, 1195 (2013).

### IV.   <u>ARGUMENT</u>

#### A.  The Requirements of Rule 23(a) Are Satisfied

#### 1.   <u>*Numerosity*</u>

Rule 23(a)(1) is satisfied if "the class is so numerous that joinder of all members is impracticable," Fed. R. Civ. P. 23(a)(1). During the class period, UIC has sold a total of █████ units of Spectracide Concentrate products within California, as follows: ████████████████████████████████

-5-

*Arthur v. United Industries Corporation*, Case No. 2:17-cv-06983-CAS-SK
MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFF'S MOTION FOR CLASS
CERTIFICATION AND TO APPOINT CLASS COUNSEL

█████████████████████████████████████████████

████████████ Podlipna Decl., ¶ 16; Marron Decl., ¶ 8 & Ex. 7.  Numerosity is thus satisfied. *See In re Brazilian Blowout Litig.*, 2011 WL 10962891, at *2 (C.D. Cal. Apr. 12, 2011) ["*Brazilian Blowout*"] ("Courts routinely find the numerosity requirement satisfied when the class consists of 40 or more members.") (citation omitted).

### 2.   *Commonality*

Rule 23(a)(2) is satisfied if "there are questions of law or fact common to the class," Fed. R. Civ. P. 23(a)(2), which means that "the class members have suffered the same injury," so that their claims "depend upon a common contention . . . [whose] truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Dukes*, 564 U.S. at 350. "What matters" is "the capacity of a classwide proceeding to generate common *answers* apt to drive the resolution of the litigation." *Id.* (quotation omitted). Questions "have that capacity" when they have a "close relationship with the . . . underlying substantive legal test." *See Jimenez v. Allstate Ins. Co.*, 765 F.3d 1161, 1165 (9th Cir. 2014). "Where questions common to class members present significant issues that can be resolved in a single adjudication 'there is clear justification for handling the dispute on a representative rather than on an individual basis.'" *Rodman v. Safeway, Inc.*, 2014 WL 988992, at *4 (N.D. Cal. 2014) (quoting *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 623 (1997) (internal quotation marks and citation omitted)).

"[P]laintiff's burden for showing commonality is 'minimal,'" *Mezzadri v. Med. Depot, Inc.*, 2016 WL 5107163, at *3 (S.D. Cal. May 12, 2016) (quoting *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1020 (9th Cir. 1998)). "The existence of shared legal issues with divergent factual predicates is sufficient, as is a common core of salient facts." *Hanlon*, 150 F.3d at 1019. "[A] common nucleus of operative fact is usually enough to satisfy the commonality requirement," *Rasario v. Livaditis*, 963 F.2d 1013, 1018 (7th Cir. 1992), which exists "where a defendant has engaged

-6-

*Arthur v. United Industries Corporation*, Case No. 2:17-cv-06983-CAS-SK
MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFF'S MOTION FOR CLASS
CERTIFICATION AND TO APPOINT CLASS COUNSEL

in standardized conduct toward members of the class." *Hale v. State Farm Mut. Auto. Ins. Co.*, 2016 WL 4992504, at *6 (S.D. Ill. Sept. 16, 2016) (citing *Keele v. Wexler*, 149 F.3d 589, 594 (7th Cir. 1998) (collecting cases)). To satisfy Rule 23(a)(2), "even a single common question will do." *Dukes*, 564 U.S. at 359 (brackets omitted).

Here, the class includes only persons who purchased the Spectracide Concentrate products bearing UIC's gallons claim. The gravamen of the class's claims is that UIC did not fulfill its promise to provide a specified amount of spray solution. This "common contention" is "capable of classwide resolution," *see Dukes*, 564 U.S. at 350, because UIC's liability to every class member will be determined by answering the same questions. For the Class's consumer fraud claims, the class alleges UIC misrepresented how much spray solution the products would make, and thereby the value class members were obtaining. Because the same representation was made to all class members uniformly, the primary common question is whether UIC's gallons statement was likely to deceive. *See, e.g.*, *Spann v. J.C. Penney Corp.*, 307 F.R.D. 508, 518 (C.D. Cal. 2015). Thus, the commonality requirement is easily satisfied. *See Martin*, 2017 WL 1115167, at *4 (finding the commonality requirement satisfied because "the Class is limited to only those persons who purchased Roundup Concentrates bearing the 'Makes Up to __ Gallons' statement, and Plaintiff's claims are all based on his contention that the product did not (and could not) provide the specified amount of spray solution when following the instructions on the back label of the product.").

### 3.    *Typicality*

Rule 23(a)(3) is satisfied if "the claims or defenses of the representative parties are typical of the claims or defenses of the class," Fed. R. Civ. P. 23(a)(3). This means plaintiff's claims "are reasonably co-extensive with those of absent class members; they need not be substantially identical." *Hanlon*, 150 F.3d at 1020. "Typicality refers to the nature of the claim or defense of the class representative, and not to the specific facts from which it arose or the relief sought." *Hanon v.*

*Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir. 1992) (quotation omitted); *see also Wolin v. Jaguar Land Rover N. Am., LLC*, 617 F.3d 1168, 1175 (9th Cir. 2010). "In determining whether typicality is met, the focus should be on the defendants' conduct and plaintiff's legal theory." *Simpson v. Fireman's Fund Ins. Co.*, 231 F.R.D. 391, 396 (N.D. Cal. 2005) (citation and internal quotation marks omitted).

"A plaintiff's claim is typical if it arises from the same event or practice or course of conduct that gives rise to the claims of other class members and . . . her claims are based on the same legal theory." *De La Fuente v. Stokely-Van Camp, Inc.*, 713 F.2d 225, 232 (7th Cir. 1983) (quotation and citations omitted). Thus, "[t]o assess whether or not the representative's claims are typical, the Court examines 'whether other members have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiffs, and whether other class members have been injured by the same course of conduct.'" *Brazilian Blowout*, 2011 WL 10962891, at *3 (quoting *Hanon*, 976 F.2d at 508 (quotation omitted)). "In instances where it is alleged that the defendant[] engaged in a common scheme relative to all members of the class, there is a strong assumption that the claims of the representative parties will be typical of the absent members." *Salvagne v. Fairfield Ford Inc.*, 264 F.R.D. 321, 328 (S.D. Ohio 2009) (quotation omitted).

Here, Plaintiff alleges that he and all class members were exposed to the same gallons claim and were injured in the same manner when they purchased UIC Concentrate products that provided less spray solution, and thus less value than reasonable consumers would expect for the product's intended purpose, which is "general weed control." FAC ¶¶ 19-20.  Plaintiff's claims are therefore typical of class members' claims. *See Martin,* 2017 WL 1115167, at *4 (finding the typicality requirement to be satisfied because "Plaintiff alleges that she and all class members were exposed to the same statement, i.e., 'Makes Up to __ Gallons', and that they were all injured in the same manner."); *Brazilian Blowout*, 2011 WL 10962891, at *4 (claims typical where "they, like the other class members, purchased Brazilian

Blowout Solution or Brazilian Blowout Acai Professional Smoothing Solution . . . and . . . suffered similar injuries as absent class members"). That some class members purchased different bottle sizes of the Spectracide Concentrate products does not defeat typicality "because the alleged misrepresentation was the same as to each" version. *See Todd v. Tempur-Sealy Int'l, Inc.*, 2016 WL 5746364, at *5 (N.D. Cal. Sept. 30, 2016) (claims typical where "theory of the case is that Defendants falsely represented that all of their products are free of harmful chemicals when in fact, none of them are," and "[s]light differences between the mattresses purchased by class members are not disqualifying, or even relevant"); *Lilly v. Jamba Juice Co.*, 308 F.R.D. 231, 240 (N.D. Cal. 2014) (plaintiffs "clearly have a similar alleged injury as the rest of the proposed class, since they purchased products that are the same as, or very similar to, the products challenged by the rest of the proposed class.").

### 4.  *Adequacy*

Rule 23(a)(4) is satisfied if "the representative parties will fairly and adequately protect the interests of the class," Fed. R. Civ. P. 23(a)(4). "Resolution of two questions determines legal adequacy: (1) do the named plaintiffs and their counsel have any conflicts of interest with other class members and (2) will the named plaintiffs and their counsel prosecute the action vigorously on behalf of the class?" *Hanlon*, 150 F.3d at 1020 (citation omitted). Here, both Plaintiff and his counsel are adequate class representatives. Plaintiff has standing, no conflict of interest with other class members, is aware of his obligations as a class representative, and has been and will continue prosecuting the action vigorously on behalf of the class. Arthur Decl., ¶¶ 2-6; *Brazilian Blowout*, 2011 WL 10962891, at *5 (class representatives adequate where they "submitted declarations" stating "they understand their responsibilities as class representatives that no conflicts exist between their interests and other members of the class, and that they intend to vigorously pursue all claims asserted in this lawsuit"). Plaintiff's counsel are

-9-

*Arthur v. United Industries Corporation*, Case No. 2:17-cv-06983-CAS-SK
MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFF'S MOTION FOR CLASS
CERTIFICATION AND TO APPOINT CLASS COUNSEL

adequate class counsel because they are experienced in consumer protection class actions and other false advertising litigation, have no conflicts, and have been and will continue prosecuting the action vigorously on behalf of the class. Marron Decl. ¶¶ 11-29 & Ex. 10; *Martin*, 2017 WL 1115167, at *5 (finding the adequacy requirement satisfied when Plaintiff's counsel "submitted declarations demonstrating that they have had substantial experience with similar class actions and other false advertising litigation, have no conflicts, and will continue prosecuting the action vigorously on behalf of the Class.").

## B. The Requirements of Rule 23(b)(3) Are Satisfied

### 1. *Predominance*

The "predominance inquiry tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Amchem Prods.*, 521 U.S. at 623; *see also* Fed. R. Civ. P. 23(b)(3). Predominance exists where common questions present "a significant aspect of the case that can be resolved for all members of the class in a single adjudication." *Berger v. Home Depot USA, Inc.*, 741 F.3d 1061, 1068 (9th Cir. 2014) (internal quotation, brackets, and alteration omitted). "[W]hen common questions present a significant aspect of the case and they can be resolved for all members of the class in a single adjudication, there is clear justification for handling the dispute on a representative rather than an individual basis." *Hanlon*, 150 F.3d at 1022 (quotation omitted). In addition to showing that common questions concerning the substantive elements of the class's claims predominate, Rule 23(b)(3) requires a showing that the class's "damages stemmed from the defendant's actions that created the legal liability." *Levya v. Medline Indus. Inc.*, 716 F.3d 510, 514 (9th Cir. 2013) (citing *Comcast Corp. v. Behrend*, 133 S. Ct. 1426, 1435 (2013) ["*Comcast*"]). Plaintiff must also show that "damages are capable of measurement on a classwide basis," *Comcast*, 133 S. Ct. at 1433, so they can "feasibly and efficiently be calculated once the common liability questions are adjudicated." *Levya*, 716 F.3d at 514. "Often, this will impose only a

-10-

*Arthur v. United Industries Corporation*, Case No. 2:17-cv-06983-CAS-SK
MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFF'S MOTION FOR CLASS
CERTIFICATION AND TO APPOINT CLASS COUNSEL

very limited burden." *Lilly*, 308 F.R.D. at 244. "If damages are capable of measurement on a class-wide basis, questions of individual damage calculations will not overwhelm questions common to the class." *Hale*, 2016 WL 4992504, at *8 (citing *Comcast*, 133 S. Ct. at 1433).

### a.    UIC's Liability Will be Adjudicated Pursuant to Objective Standards, Using Common Evidence

"Considering whether 'questions of law or fact common to class members predominate' begins . . . with the elements of the underlying causes of action." *Erica P. John Fund, Inc. v. Halliburton Co.*, 563 U.S. 804, 809 (2011). California's FAL, CLRA, and UCL's "fraudulent" prong "prohibit 'not only advertising which is false, but also advertising which, although true, is either actually misleading or which has a capacity, likelihood or tendency to deceive or confuse the public.'" *Williams v. Gerber Prods. Co.*, 552 F.3d 934, 938 (9th Cir. 2008) (quotation omitted). This is "judged by the effect it would have on a reasonable consumer," who is the "ordinary consumer within the target population," *Lavie v. Procter & Gamble Co.*, 105 Cal. App. 4th 496, 506-507, 510 (2003), is "not versed in the art of inspecting and judging a product, in the process of its preparation or manufacture," *Colgan v. Leatherman Tool Group, Inc.*, 135 Cal. App. 4th 663, 682 (2006), and is not "expected to look beyond misleading representations on the front of the box to discover the truth from the . . . small print." *Williams*, 552 F.3d at 939.

"[T]he primary evidence in a false advertising case is the advertising itself," *Brockey v. Moore*, 107 Cal. App. 4th 86, 100 (2003), and "[t]he 'misleading character' of a given representation 'appears on applying its words to the facts.'" *Jefferson v. Chase Home Fin.*, 2008 WL 1883484, at *17 (N.D. Cal. Dec. 14, 2007) (quoting *Colgan*, 135 Cal. App. 4th at 679). "To state a claim under the UCL or the FAL 'based on false advertising or promotional practices, it is necessary only to show that members of the public are likely to be deceived.'" *Pulaski Middleman, LLC v. Google, Inc.*, 802 F.3d 979, 985 (9th Cir. 2015) ["*Pulaski*"] (quoting *In re*

*Tobacco II Cases*, 46 Cal. 4th 298, 312 (2009)). A product's packaging is misleading if it presents "a likelihood of confounding an appreciable number of reasonably prudent purchasers exercising ordinary care." *Brockey*, 107 Cal. App. 4th at 99.

If plaintiff demonstrates a representation was likely to deceive under this objective "reasonable consumer" test, relief "is available 'without individualized proof of deception, reliance and injury,' so long as the named plaintiff[] demonstrate[s] injury and causation." *Guido v. L'Oreal, USA, Inc.*, 284 F.R.D. 468, 482 (C.D. Cal. 2012) (quotation omitted); *see also Moyle v. Liberty Mut. Ret. Benefit Plan*, 823 F.3d 948, 964-65 (9th Cir. May 20, 2016) ("[W]here the defendant's representations were allegedly made on a uniform and classwide basis, individual issues of reliance do not preclude class certification." (citing *Hanon*, 976 F.2d at 509 ("We emphasize that the defense of non-reliance is not a basis for denial of class certification."))). And while reliance is an element of the class's CLRA claims, "[t]he causation required by the CLRA does not make plaintiffs' claims unsuitable for class treatment because causation as to each class member is commonly proved more likely than not by materiality." *Guido*, 284 F.R.D. at 482 (quotation omitted). That is because "[a] presumption, or at least an inference, of reliance arises . . . whenever there is a showing that a misrepresentation was material." *Tobacco II Cases*, 46 Cal. 4th at 327; *see also Stearns v. Ticketmaster Corp.*, 655 F.3d 1013, 1022 (9th Cir. 2012), *abrogated on other grounds by Comcast*, 133 S. Ct. 1426.

The objective tests for deception and materiality "renders claims under the UCL, FAL, and CLRA ideal for class certification because they will not require the court to investigate class members' 'individual interaction with the product.'" *Tait v. BSH Home Appliances Corp.*, 289 F.R.D. 466, 480 (C.D. Cal. 2012) (quotation omitted). "For this reason, district courts in California routinely certify consumer class actions arising from alleged violations of the CLRA, FAL, and UCL." *Id.* (citing *Keegan v. Am. Honda Motor Co., Inc.*, 284 F.R.D. 504 (C.D. Cal. June 12, 2012); *Bruno v. Eckhart Corp.*, 280 F.R.D. 540, 547 (C.D. Cal. 2012); *Chavez v.*

-12-

*Blue Sky Nat. Beverage Co.,* 268 F.R.D. 365, 375-80 (N.D. Cal. 2010); *Parkinson v. Hyundai Motor Am.*, 258 F.R.D. 580, 589 (C.D. Cal. 2008)).

Here, "the predominating common issues include whether [UIC] misrepresented" that the Spectracide Concentrate products made more spray solution for the advertised applications than they were actually capable of making, "and whether the misrepresentations were likely to deceive a reasonable consumer." *See Johns v. Bayer Corp.*, 280 F.R.D. 551, 557 (S.D. Cal. 2012); *see also In re Ferrero Litig.*, 278 F.R.D. 552, 560 (S.D. Cal. 2011).

**b.     The Class's Damages Stem Solely From UIC's Actions That Created the Legal Liability**

"[A] methodology that identifies damages that are not the result of the wrong" is an impermissible basis on which to calculate classwide damages. *See Comcast*, 133 S. Ct. at 1434. Here, Plaintiff alleges UIC is liable based solely on its deceptively misrepresenting the number of gallons the Spectracide Concentrate products make. Thus, "[u]nlike the situation in *Comcast*, there is no possibility in this case that damages could be attributed to defendants' acts that are **not** challenged on a class-wide basis because all members of the current class attribute their damages to the" same deceptive practice. *See Krueger v. Wyeth, Inc.*, 310 F.R.D. 468, 482 (S.D. Cal. 2015) (emphasis in original); *accord Butler v. Sears, Roebuck & Co.*, 727 F.3d 796, 800 (7th Cir. 2013) (same); *c.f. In re Cathode Ray Tube (CRT) Antitrust Litig.*, 2013 WL 5429718, at *22 (N.D. Cal. 2013) ("*Comcast* has no application" where "plaintiffs assert . . . only one theory of antitrust liability and impact").

"Class wide damages calculations under the UCL, FAL, and CLRA are particularly forgiving. California law 'requires only that some reasonable basis of computation of damages be used, and the damages may be computed even if the result reached is an approximation.'" *Lambert v. Nutraceutical Corp.*, 870 F.3d 1170, 1183 (9th Cir. 2017) (quoting *Pulaski*, 802 F.3d at 989). The UCL, FAL, and CLRA all "authorize a trial court to grant restitution to private litigants asserting

claims under those statutes." *Colgan*, 135 Cal. App. 4th at 694 (citing *Cortez v. Purolator Air Filtration Prods. Co.*, 23 Cal. 4th 163, 180 (2000); *Fletcher v. Sec. Pac. Nat'l Bank*, 23 Cal. 3d 442, 452 (1979)); *see also* Cal. Bus. & Prof. Code §§ 17203, 17535; Cal. Civ. Code § 1780(a)(3). "The object of restitution is to restore the status quo by returning to the plaintiff funds in which he or she has an ownership interest." *Korea Supply Co. v. Lockheed Martin Corp.*, 29 Cal. 4th 1134, 1149 (2003). It is "measured by what was taken from the plaintiff," *Clark v. Super. Ct.*, 50 Cal. 4th 605, 615 (2010). Thus, "[i]n its simplest form, restitution is simply 'the return of the excess of what the plaintiff gave the defendant over the value of what the plaintiff received.'" *Chowning v. Kohl's Dep't Stores, Inc.*, 2016 WL 1072129, at *5 (C.D. Cal. Mar. 15, 2016) (quoting *Cortez*, 23 Cal. 4th at 174).

"Where a person is entitled to a money judgment against another because by fraud . . . the other has acquired . . . his property, the measure of recovery for the benefit received by the other is the value of the property at the time of its improper acquisition, retention or disposition." *Colgan*, 135 Cal. App. 4th at 698-99 (quoting Restatement of Restitution § 151). For the class's consumer fraud claims, restitution and damages is therefore their out-of-pocket costs, or the difference in the value of the products as misleadingly advertised, and without misleading advertisements. *See In re Vioxx Class Cases*, 180 Cal. App. 4th 116, 131 (2009) ("The difference between what the plaintiff paid and the value of what the plaintiff received is a proper measure of restitution." (citations omitted)).

"Fair market value is generally understood to be '[t]he price that a seller is willing to accept and a buyer is willing to pay on the open market and in an arm's-length transaction; the point at which supply and demand intersect.'" *Schwab v. Comm'r of Internal Revenue*, 715 F.3d 1169, 1178 (9th Cir. 2013) (quotation omitted). Because, "[i]n an ordinary market, price is a proxy for value," the "price paid for a good that was misrepresented to have a given characteristic can serve as a

-14-

*Arthur v. United Industries Corporation*, Case No. 2:17-cv-06983-CAS-SK
MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFF'S MOTION FOR CLASS
CERTIFICATION AND TO APPOINT CLASS COUNSEL

proxy for the value of a product with the misstated characteristic." *Saavedra v. Eli Lily & Co.*, 2014 WL 7338930, at *5 (C.D. Cal. Dec. 18, 2014).

Here, class members bargained for a certain price-per-gallon of spray solution: the average retail price divided by the number of gallons promised. But UIC only delivered a fraction of those gallons. So the bargained-for price-per-gallon value can be multiplied by the number of gallons the products actually supplied, to determine the price they should have cost at the price-per-gallon value that UIC and the class members agreed upon. Class members' damages are the difference between this price and the higher price they actually paid. *See Hendricks v. Starkist Co.*, 2016 WL 5462423, at *5 (N.D. Cal. Sept. 29, 2016) (where "[t]he average retail price for a 5-ounce can of [tuna] was 86 cents during the Class Period," and "[t]esting showed that there was an average underfill between 4.5% and 16.7%," the "damages [were] between 3.87 cents and 14.3 cents per can"); *Martin*, 2017 WL 1115167, at *9 ("In this case, class members bargained for a certain price-per-gallon of spray solution: the average retail price divided by the number of gallons promised. This price-per-gallon can serve as a proxy for the actual value-per-gallon of spray solution. Accordingly, the price-per-gallon value can be multiplied by the number of gallons the products actually supplied, to determine the actual value of the products.").

Plaintiff's damages expert will be able to measure classwide damages using the Benefit of the Bargain method "based on the difference between the amount Plaintiff reasonably expected to receive and the actual amount received." Podlipna Decl., ¶ 15; *In re Morning Song Bird Food Litig.*, No. 12CV1592 JAH (RBB), 2013 WL 12144051, at *5 (S.D. Cal. Sept. 30, 2013) (stating that the CLRA, UCL and FAL "all permit benefit of the bargain damages.") (citing *Koh v. S.C. Johnson & Son, Inc.*, 2010 WL 94265 (N.D. Cal. Jan. 6, 2010); *Hall v. Time*, 158 Cal.App.4th 847, 854–55 (2008)). UIC has produced unit sales for Spectracide Concentrate products sold within California. Podlipna Decl., ¶ 16; Marron Decl., ¶ 8 & Ex. 7. UIC has also produced the average retail prices of the Spectracide Concentrate

products, as follows: ███████████████████████████████████

████████████████████████████████████████ Podlipna Decl.,

¶ 17; Marron Decl., ¶ 9 & Ex. 8.  This data can be used to calculate the total purchase

price paid by the Class by multiplying the quantity of bottles sold in California by

the average retail prices. Podlipna Decl., ¶ 18. Here, the Class has paid

approximately ██████████████████████ of Spectracide Concentrate products.

Podlipna Decl., ¶ 18. Damages can easily be computed "by multiplying the total

California retail sales amount (by bottle) by the underfill percentage (by bottle)."

Podlipna Decl., ¶ 18. Thus, damages for the Class are as follows:

| Product Size | CA Unit Sales | Avg. Retail Price | Total CA Sales | Underfill % | Damages |
|---|---|---|---|---|---|
| 16 oz. | ████ | ████ | ████ | 36% | ████ |
| 32 oz. | ████ | ████ | ████ | 36% | ████ |
| 40 oz. | ████ | ████ | ████ | 38% | ████ |
| 64 oz. | ████ | ████ | ████ | 36% | ████ |
| | | | | **TOTAL** | ████ |

Podlipna Decl., ¶ 18 & Schedule 1.

This damages calculation precisely corresponds to Plaintiff's legal theory. In

an analogous case, a class claimed the manufacturer of eye drops caused them injury

by creating a bottle that would dispense drops so large that some portion would be

wasted (meaning the bottle did not ultimately provide the number of drops

consumers would assume based on its net contents, and thus by including product

that would necessarily be wasted and unused, was effectively under-filled). The

court approved of a model that would calculate "the cost incurred by the class for

wasted medication using either the mean drop size, median drop size, or minimum

drop size," then calculate "the percentage of the mean, median, or minimum average

drop in excess of 16 μL" (the amount plaintiffs alleged would not result in waste), "and multiply that by the amount paid at retail by the class." *Eike v. Allergan, Inc.*, 2016 WL 4272127, at *6 (S.D. Ill. 2016). The court explained that "[t]his damage model is based on the common issue of whether the bigger drops lead to wastage." *Id*. Thus, the predominance requirement is satisfied.

### 2. *Superiority*

"A consideration of the[] factors [set forth in Rule 23(b)(3)(A)-(D)] requires the court to focus on the efficiency and economy elements of the class action so that cases allowed under [Rule 23(b)(3)] are those that can be adjudicated most profitably on a representative basis." *Zinser v. Accufix Research Inst., Inc.*, 253 F.3d 1180, 1190 (9th Cir. 2001) (quotation omitted). Superiority is satisfied here considering these factors.

### a. The Class Has No Interest in Individually Controlling Separate Actions

The superiority requirement "is met '[w]here recovery on an individual basis would be dwarfed by the cost of litigating on an individual basis.'" *Tait*, 289 F.R.D. at 486 (quoting *Wolin*, 617 F.3d at 1175); *see also Deposit Guar. Nat'l Bank v. Roper*, 445 U.S. 326, 339 (1980). Class members have no incentive to prosecute separate actions since the products cost about ███████, making individual claims exceedingly small in comparison to the costs of litigation. Courts have found the superiority requirement satisfied under similar circumstances. *See Brazilian Blowout Litig.*, 2011 WL 10962891, at *9; *c.f. Amchem Prods.*, 521 U.S. at 617.

### b. There Is No Other Litigation and it is Desirable to Litigate in this Forum

There is no other litigation pending concerning the class's claims. It is desirable to concentrate the litigation of claims on behalf of a California class in a California court. *See Brazilian Blowout*, 2011 WL 10962891, at *9 (superiority where "no individual actions [are] pending against Defendant based on the claims

asserted by Plaintiffs," and action was "most procedurally advanced" among pending class actions).

### c. No Manageability Concerns Outweigh Superiority

There will be no difficulties in managing this class action because it concerns simple claims for consumer fraud, based on a single statement, made uniformly on four variations of the same basic product. *Compare Brazilian Blowout*, 2011 WL 10962891, at *9 (rejecting defendant's argument "that the Class is unmanageable . . . because the formula of its products varied over time," where it failed to demonstrate a variation material to the class's claims). Manageability concerns cannot, in any event, support a lack of superiority "if no realistic alternative exists." *See Valentino v. Carter-Wallace, Inc.*, 97 F.3d 1227, 1234-35 (9th Cir. 1996); *see also Leyva*, 716 F.3d at 514-15. "The Ninth Circuit has recognized that a class action is a plaintiff's only realistic method for recovery if there are multiple claims against the same defendant for relatively small sums." *Culley v. Lincare Inc.*, 2016 WL 4208567, at *8 (E.D. Cal. Aug. 10, 2016) (citation omitted).

## C. The Requirements of Rule 23(b)(2) Are Satisfied

Plaintiff requests certification under Rule 23(b)(2) in the alternative, or in addition, to certification under (b)(3). In the Ninth Circuit, a class may be certified under both (b)(2) and (b)(3). *Smith v. Univ. of Wash. Law Sch.*, 233 F.3d 1188, 1196 (9th Cir. 2000). First, certification under (b)(2) is appropriate where a defendant has acted on "grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." Fed. R. Civ. P. 23(b)(2). Second, "[a] class seeking monetary damages may be certified pursuant to Rule 23(b)(2) where [monetary] relief is 'merely incidental to [the] primary claim for injunctive relief.'" *Zinser*, 253 F.3d at 1195 (citation omitted). Applying *Dukes*, the Ninth Circuit has held "the key to the (b)(2) class is the indivisible nature of the injunctive or declaratory remedy warranted;" meaning, damages are not an issue if they need not be determined individually. *Ellis v. Costco*

*Wholesale Corp.*, 657 F.3d 970, 987 (9th Cir. 2011) (quotations omitted).

For the first element, Defendant's conduct affected the Class equally because the packaging of the Spectracide Concentrate products was substantially uniform throughout California, conveying the same "Makes Up to ___" representations, and all class members were accordingly exposed to the same or substantially similar misleading or false labels. *See* Marron Decl., ¶¶ 2-5 & Exs. 1-4. Further, the same standard applies to the entire class for injunctive relief because California law protects consumers from advertising that, even if true, is likely to deceive. *Kwikset Corp. v. Superior Court,* 51 Cal. 4th 310, 328, 246 P.3d 877, 889 (2011). Plaintiff also seeks to enjoin Defendant from using misleading claims in the future, which would ensure class members in the market for future purchases are not misled again.

For the second element, Plaintiff's actual damages are not subject to individualized proof because Plaintiff and the Class are limited to their out-of-pocket cost as restitution and damages, and this monetary relief is equitable in nature, flowing from the very wrongs asserted. Moreover, "the primary form of relief available under the UCL to protect consumers from unfair business practices is an injunction." *McGill v. Citibank*, N.A., 2 Cal. 5th 945, 954, 393 P.3d 85, 89 (2017) (quoting *In re Tobacco II Cases*, 46 Cal.4th at 319).  Thus, the requirements of Rule 23(b)(2) are satisfied.

**D.  The Class Is Ascertainable**

In the Ninth Circuit, "'[t]he requirement of an ascertainable class is met as long as the class can be defined through objective criteria." *Forcellati v. Hyland's, Inc.*, No. CV 12-1983-GHK MRWX, 2014 WL 1410264, at *5 (C.D. Cal. Apr. 9, 2014) (quoting *Guido*, 2013 WL 3353857, at *18). In other words, "[a] class is sufficiently ascertainable if the proposed class definition allows prospective plaintiffs to determine whether they are class members with a potential right to recover." Id. (quotations omitted); *See also McCrary v. Elations Co., LLC,* No. EDCV 13-00242 JGB OP, 2014 WL 1779243, at *8 (C.D. Cal. Jan. 13, 2014) ("In this Circuit, it is

enough that the class definition describes a set of common characteristics sufficient to allow a prospective plaintiff to identify himself or herself as having a right to recover based on the description."); *see also Steven Ades & Hart Woolery v. Omni Hotels Mgmt. Corp.*, 2014 WL 4627271, at *7 (C.D. Cal. Sept. 8, 2014); *Rahman v. Mott's LLP*, 2014 WL 6815779, at *4 (N.D. Cal. Dec. 3, 2014); *Chavez v. Blue Sky Natural Beverages Co.*, 268 F.R.D. 365, 377 (N.D. Cal. 2010); *Knutson v. Schwan's Home Serv., Inc.*, 2013 WL 4774763, at *5 (S.D. Cal. Sept. 5, 2013); *Astiana v. Kashi Co.*, 291 F.R.D. 493, 500 (S.D. Cal. 2013); *Agne v. Papa John's Int'l, Inc.*, 286 F.R.D. 559, 566 (W.D. Wa. 2012); *Keilholtz v. Lennox Heart Prods., Inc.*, 268 F.R.D. 330, 336 (N.D. Cal. 2010); *Werdebaugh v. Blue Diamond Growers*, 2014 WL 2191901, at *10 (N.D. Cal. May 23, 2014); *Ortega v. Natural Balance, Inc.*, 2014 WL 2782329, *2-3 (C.D. Cal. June 19, 2014).

Accordingly, courts in this circuit routinely certify classes for low-cost consumer products where purchasers are unlikely to have retained receipts and where it is impossible to identify and notice every member of the class. *See e.g., Lilly*, 2014 WL 4652283, at *4 ("Few people retain receipts for low-priced goods, since there is little possibility they will need to later verify that they made the purchase. Yet it is precisely in circumstances like these, where the injury to any individual consumer is small, but the cumulative injury to consumers as a group is substantial, that the class action mechanism provides one of its most important social benefits. In the absence of a class action, the injury would go unredressed."); *Ries v. Arizona Beverages USA LLC*, 287 F.R.D. 523, 535 (N.D. Cal. 2012) (noting that if proof of class membership was required for certification, "there would be no such thing as a consumer class action"). Here, the proposed class definition clearly specifies the Spectracide Concentrate products at issue and the relevant time period: on or after September 21, 2013. Thus, putative class members have sufficient information to determine if they purchased one of the Products during the stated time period. Because the class is defined by objective criteria, members of the class can

-20-

*Arthur v. United Industries Corporation*, Case No. 2:17-cv-06983-CAS-SK
MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFF'S MOTION FOR CLASS CERTIFICATION AND TO APPOINT CLASS COUNSEL

be ascertained. *See, e.g., Forcellati*, 2014 WL 1410264, at *5. Additionally, Defendant has no due process interest in the question of class membership because any liability will be determined in the aggregate with total sales being the measure of damages regardless of the size of the class. *Id.*; *Allen v. Hyland's Inc.*, 300 F.R.D. 643, 660 (C.D. Cal. 2014); *Hilao v. Estate of Marcos*, 103 F.3d 767, 786 (9th Cir. 1996); *Six (6) Mexican Workers v. Arizona Citrus Growers*, 904 F.2d 1301, 1307-08 (9th Cir. 1990). Even if Defendant did have an interest, which it does not, there is little risk of inaccurate or fraudulent claim submissions. *See* Declaration of Gajan Retnasaba in Support of Plaintiff's Motion for Class Certification ("Retnasaba Decl."), ¶¶ 22-26 (fraud prevention measures). Nonetheless, especially because absent a class action, most, if not all, purchasers of low cost items could not recover at all, courts in this circuit have held that the inability to provide a proof of purchase does not render a class action unmanageable or nullify the objective criteria that can be used to identify class members. *See, e.g., Lilly*, 2014 WL 4652283, at *4; *Brown v. Hain Celestial Grp., Inc.*, 2014 WL 6483216, at *9 (N.D. Cal. Nov. 18, 2014).

Further, the inability to identify every class member does not render the administration of a class action unmanageable. *See e.g., Knutson*, 2013 WL 4774763, at *10; *Ries*, 287 F.R.D. at 535. Under Rule 23, individual notice must only be provided to class members "who can be identified through reasonable effort." Rule 23(c) also implicitly assumes that some class members cannot be identified. *See* Manual For Complex Litigation, Fourth § 21.311, at 292 (Fed. Jud. Center 2004) ("[I]f no records were kept of sales of an allegedly defective product from retailers to consumers, publication notice may be necessary."). Thus, in cases where a defendant cannot directly identify class members, courts in the Ninth Circuit hold that other types of notice are administratively feasible and sufficient to reveal class members. *See, e.g., Galvan v. KDI Distribution Inc.*, 2011 WL 5116585, at *5-*6 (C.D. Cal. 2011) (notice can be distributed through advertising channels).

### E.  The Court Should Approve Notice to the Class

Under Rule 23(c)(2)(B), for "any class certified under Rule 23(b)(3), the court must direct to class members the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Filed concurrently with this Motion is the Declaration of Gajan Retnasaba of Classaura, detailing a Notice Plan for this case. Because the Product is not sold directly to consumers but purchased off store shelves, individual notice is not possible in this action. Retnasaba Decl. ¶¶ 3-21. Thus, to reach all potential class members, the best notice practicable under the circumstances is notice by publication and through social media websites like Facebook. Retnasaba Decl. ¶¶ 3-21; Fed. R. Civ. P. 23(c)(2)(B). The Court should also order Defendant to post notice on its own website(s) relating to the Product, at no cost to the class, as this will significantly increase the reach of the Class Notice. Retnasaba Decl. ¶ 16.

Plaintiff includes draft notices to the class, in summary and detailed form, notifying them of the certification of this class, how it will affect their rights, and the deadline to opt-out of the class, as required under Rule 23(c)(2)(B). *See* Marron Decl., ¶ 10 & Ex. 9. The short notice directs class members to the claims administrator-created web site, where the detailed notice may be viewed. The notices contain all information required under Rule 23(c)(2)(B) and contain neutral language. *See id.* The Court should respectfully approve the Notice Plan, the proposed Notices, and set an opt-out date for three months after its order certifying the class.

### V.    CONCLUSION

For the foregoing reasons, the Court should respectfully grant Plaintiff's Motion for Class Certification, appoint Plaintiff Arthur as the class representative, appoint the Law Offices of Ronald A. Marron as Class Counsel, and approve notice to the class members.

Dated: January 15, 2018                    Respectfully Submitted,


                                           /s/ *Ronald A. Marron*
                                           RONALD A. MARRON

                                           **LAW OFFICES OF RONALD A.
                                           MARRON**
                                           RONALD A. MARRON
                                           *ron@consumersadvocates.com*
                                           MICHAEL T. HOUCHIN
                                           *mike@consumersadvocates.com*
                                           651 Arroyo Drive
                                           San Diego, California 92103
                                           Telephone:   (619) 696-9006
                                           Facsimile:   (619) 564-6665
                                           ***Counsel for Plaintiff and the Proposed
                                           Class***