UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | **CIVIL MINUTES – GENERAL** | | **'O'** |
|---|---|---|---|
| Case No. | 2:17-cv-06983-CAS(SKx) | Date | March 23, 2018 |
| Title | GREGORY ARTHUR v. UNITED INDUSTRIES CORPORATION | | |

| Present: The Honorable | CHRISTINA A. SNYDER | |
|---|---|---|
| Catherine Jeang | Not Present | N/A |
| Deputy Clerk | Court Reporter / Recorder | Tape No. |

| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants: |
|---|---|
| Not Present | Not Present |

**Proceedings:** (IN CHAMBERS) - DEFENDANT'S MOTION TO DISMISS (Dkt. 22, filed January 12, 2018)

The Court finds this motion appropriate for decision without oral argument. Fed. R. Civ. P. 78; C.D. Cal. Local Rule 7-15. Accordingly, the hearing date of March 26, 2018 is vacated, and the matter is hereby taken under submission.

## I. INTRODUCTION

On September 21, 2017, plaintiff Gregory Arthur filed the instant putative class action complaint against defendant United Industries Corporation. Dkt. 1. On November 27, 2017, plaintiff filed a first amended complaint. Dkt. 16 ("FAC"). Plaintiff asserts that defendant is a manufacturer of the herbicide known as Spectracide Weed and Grass Killer Concentrate ("Concentrate"), and that defendant falsely advertised on Concentrate bottles that each bottle may be diluted to make a specified number of gallons of herbicide. Plaintiff brings this putative class action to enjoin defendant from continuing to falsely advertise, and to recover damages on behalf of himself and other purchasers. In particular, plaintiff asserts claims for (1) violation of the Consumers Legal Remedies Act, Cal. Civ. Code §§ 1750, et seq., ("CLRA"); (2) violation of the False Advertising Law, Cal. Bus. & Prof. Code §§ section 17500, et seq. ("FAL"); and (3) violation of the Unfair Competition Law, Cal. Bus. & Prof. Code §§ 17200, et seq. ("UCL"). See FAC.

On January 12, 2018, defendant filed a motion to dismiss plaintiff's FAC. Dkt. 22 ("Motion"). On February 12, 2018, plaintiff filed an opposition, dkt. 30 ("Opp'n"), and also filed a request for judicial notice, dkt. 30–6 ("RJN"). On March 12, 2018, defendant filed a reply, dkt. 32 ("Reply"), and submitted an opposition to plaintiff's RJN, dkt. 33 ("Opp'n RJN").

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES – GENERAL      'O'

| Case No. | 2:17-cv-06983-CAS(SKx) | Date | March 23, 2018 |
|---|---|---|---|
| Title | GREGORY ARTHUR v. UNITED INDUSTRIES CORPORATION | | |

On January 15, 2018, plaintiff filed a motion for class certification. Dkt. 23. Plaintiff's motion is scheduled for a hearing on May 14, 2018. Dkt. 29.

After considering the parties' arguments, the Court finds and concludes as follows.

**II.    BACKGROUND**

Plaintiff alleges the following facts.

Plaintiff is a resident of Tujunga, California. FAC ¶ 8. Defendant is the manufacturer of an herbicide known as Spectracide Weed and Grass Killer Concentrate. Id. ¶ 4. Defendant is a Delaware corporation that maintains its principal place of business in Earth City, Missouri. Id. ¶ 9.

Defendant manufactures, markets, and sells Concentrates in 16-, 32-, and 64-fluid ounce bottles, which, unlike defendant's "Ready-to-Use" Spectracide, are intended to be diluted with water prior to use. Id. ¶¶ 4, 10. Because Concentrates are comparatively less expensive than Ready-to-Use Spectracide, plaintiff alleges that defendant markets its Concentrates as better values than its Ready-to-Use products. Id. ¶ 13.

Plaintiff alleges that during the preceding four years, defendant advertised the Concentrates as capable of making a certain number of galleons of herbicide. Id. ¶ 5. For example, at the top of the bottle in bold red letters, the 32-fluid ounce Concentrate advertises that it "Makes Up to 10 Gallons." Id. The 16-fluid ounce container advertises that it "Makes Up to 5 gallons," and the 64-fluid ounce container advertises that it "Makes Up to 20 Gallons." Id. ¶ 11.

Plaintiff contends that these advertisements were false insofar as the Concentrates were only capable of making a fraction of the number of gallons represented when diluted to the same strength as "Ready-to-Use" Spectracide, mixed in accordance with defendant's own instructions. Id. ¶ 6.

On the back label of each Concentrate bottle, plaintiff alleges that there is a glossy-paged pamphlet that depicts a graphic on its front page stating "Where to Use, "What It Does," "When to Use," and "Amount to Use." Id. ¶¶ 14–15. Plaintiff alleges that under the "Amount to Use" heading on the back label of the 32-fluid ounce bottle, the label provides that (1) "For best results: 7 fl oz (14 Tbsp) per gallon of water;" (2) for "general weed control (annuals): 5 fl oz (10 Tbsp) per gallon of water;" and (3) for "Newly

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**  'O'

| | | | |
|---|---|---|---|
| Case No. | 2:17-cv-06983-CAS(SKx) | Date | March 23, 2018 |
| Title | GREGORY ARTHUR v. UNITED INDUSTRIES CORPORATION | | |

emerged weeds: 3 fl oz (6 Tbsp) per gallon of water." Id. ¶ 15. The back label of the 32-fluid ounce bottle also provides that it "Makes Up to 20 Gallons." Id.

The inside of the pamphlet on the 32-fluid ounce bottle contains a section titled "Mixing Instructions." Id. ¶¶ 16–17. This section provides the following instructions:

> **To kill newly emerged weeds:** 3 fl oz (6 Tbsp) per gallon of water treats 300 sq ft.
> **For general weed control:** 5 fl oz (10 Tbsp) per gallon of water treats 300 sq ft.
> **For best results:** 7 fl oz (14 Tbsp) per gallon of water treats 300 sq ft.
> 1 Tbsp = 3 tsp      1 fl oz = 2 Tbsp

Id. ¶ 17 (emphasis in original).

Plaintiff alleges that, given the dilutions set forth on the back panel of each Concentrate bottle, each bottle is capable of making only a fraction of defendant's representations when mixed according to defendant's instructions for "general weed control." Id. ¶ 18. Plaintiff provides the following table:

| Product | "Makes up to" gallon claim | Back label instruction "for general weed control" (Amount to mix with 1 gallon of water) | Amount made following instructions |
|---|---|---|---|
| Spectracide Concentrate 16-fluid ounce | "Makes up to 5 gallons" | "5 fl oz (10 Tbps) per gallon of water treats 300 sq ft." | 3.3 Gallons |
| Spectracide Concentrate 32-fluid ounce | "Makes up to 10 gallons" | "5 fl oz (10 Tbps) per gallon of water treats 300 sq ft." | 6.6 Gallons |
| Spectracide Concentrate 64-fluid ounce | "Makes up to 20 gallons" | "5 fl oz (10 Tbps) per gallon of water treats 300 sq ft." | 13.2 Gallons |

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | CIVIL MINUTES – GENERAL | | 'O' |
|---|---|---|---|
| Case No. | 2:17-cv-06983-CAS(SKx) | Date | March 23, 2018 |
| Title | GREGORY ARTHUR v. UNITED INDUSTRIES CORPORATION | | |

Id. ¶ 18. Plaintiff alleges that defendant fails to disclose that the advertised "makes up to" amount can only be achieved by following the mixing instruction for "newly emerged weeds." Id. ¶ 19. Plaintiff contends that reasonable consumers would expect that the advertised "makes up to" amount would be for the product's intended purpose, which is "general weed control." Id. ¶¶ 19–21. Plaintiff alleges that a reasonable purchaser does not have the professional understanding of what constitutes a "newly emerged weed," and would instead rely on defendant's representation that for "general weed control," the purchaser should mix "5 fl oz (10 Tbps) per gallon of water [to treat] 300 sq ft." Id. ¶ 20. Plaintiff further alleges that use of the product on "newly emerged weeds" is not normal use, and that normal use is instead represented on the pamphlet's cover and the front of the bottles as a "WEED & GRASS KILLER" that "Kills the Root!" and is to be used "on patios, walkways, and flowerbeds." Id. ¶ 22.

In sum, plaintiff contends that a reasonable consumer should not be expected to look beyond "misleading representations" on the front label to discover the truth from mixing instructions in small print on a product's back pamphlet. Id. ¶ 24. Plaintiff alleges that this is especially true where the products at issue are concentrated forms of a Ready-to-Use product and are represented to be a better value than the Ready-to-Use product. Id. Moreover, plaintiff argues that the U.S. Federal Trade Commission has stated that "advertisers using [the "makes up" to] claims should be able to substantiate that consumers are likely to achieve the maximum results promised under normal circumstances." Id. ¶ 21.

Plaintiff alleges that he purchased Concentrate products on multiple occasions, and that he relied on the products' "makes up to" labels. Id. ¶ 27. Plaintiff contends that defendant's representations on these Concentrate products were false and misleading insofar as these products did not yield the volume of herbicide necessary to kill all types of weed and grass, such as the Ready-to-Use Spectracide products. Id. ¶ 30. Plaintiff alleges that he paid more for the Concentrate products, and that he would have only been willing to pay *less* absent the false and misleading advertising. Id. ¶ 32.

Plaintiff also includes class action allegations, and requests "appropriate final injunctive and declaratory relief," damages, and restitution concerning consumers who purchased the Concentrates during the class period. Id. ¶¶ 38–40. Plaintiff alleges that class treatment is appropriate under Federal Rules of Civil Procedure 23(a), 23(b)(2), and 23(b)(3). Id. ¶ 46.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | CIVIL MINUTES – GENERAL | | 'O' |
|---|---|---|---|
| Case No. | 2:17-cv-06983-CAS(SKx) | Date | March 23, 2018 |
| Title | GREGORY ARTHUR v. UNITED INDUSTRIES CORPORATION | | |

## III. LEGAL STANDARDS

A motion pursuant to Federal Rule of Civil Procedure 12(b)(6) tests the legal sufficiency of the claims asserted in a complaint. Under this Rule, a district court properly dismisses a claim if "there is a 'lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory.'" Conservation Force v. Salazar, 646 F.3d 1240, 1242 (9th Cir. 2011) (quoting Balisteri v. Pacifica Police Dep't, 901 F.2d 696, 699 (9th Cir. 1988)). "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007). "[F]actual allegations must be enough to raise a right to relief above the speculative level." Id.

In considering a motion pursuant to Rule 12(b)(6), a court must accept as true all material allegations in the complaint and all reasonable inferences to be drawn from them. Pareto v. FDIC, 139 F.3d 696, 699 (9th Cir. 1998). The complaint must be read in the light most favorable to the nonmoving party. Sprewell v. Golden State Warriors, 266 F.3d 979, 988 (9th Cir. 2001). However, "a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth. While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." Ashcroft v. Iqbal, 556 U.S. 662, 679 (2009); see Moss v. United States Secret Service, 572 F.3d 962, 969 (9th Cir. 2009) ("[F]or a complaint to survive a motion to dismiss, the non-conclusory 'factual content,' and reasonable inferences from that content, must be plausibly suggestive of a claim entitling the plaintiff to relief."). "Determining whether a complaint states a plausible claim for relief will. . .be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Iqbal, 556 U.S. at 679.

Unless a court converts a Rule 12(b)(6) motion into a motion for summary judgment, a court cannot consider material outside of the complaint (e.g., facts presented in briefs, affidavits, or discovery materials). In re American Cont'l Corp./Lincoln Sav. & Loan Sec. Litig., 102 F.3d 1524, 1537 (9th Cir. 1996), rev'd on other grounds sub nom Lexecon, Inc. v. Milberg Weiss Bershad Hynes & Lerach, 523 U.S. 26 (1998). A court may, however, consider exhibits submitted with or alleged in the complaint and matters that may be judicially noticed pursuant to Federal Rule of Evidence 201. In re Silicon

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES – GENERAL     'O'

| Case No. | 2:17-cv-06983-CAS(SKx) | Date | March 23, 2018 |
|---|---|---|---|
| Title | GREGORY ARTHUR v. UNITED INDUSTRIES CORPORATION | | |

Graphics Inc. Sec. Litig., 183 F.3d 970, 986 (9th Cir. 1999); Lee v. City of Los Angeles, 250 F.3d 668, 689 (9th Cir. 2001).

## IV. DISCUSSION

Defendant contends that plaintiff's three claims under the CLRA, the UCL, and the FAL should be dismissed because plaintiff fails to demonstrate that a reasonable consumer is likely to be deceived by the "makes up to" representations on the Concentrate bottle labels. Motion at 1. Defendant also requests the Court to strike plaintiff's allegations involving the proposed Rule 23(b)(2) injunctive relief class because the request for injunctive relief is preempted by the Federal Insecticide, Fungicide, and Rodenticide Act ("FIFRA") and must be dismissed. Id.

### A. Whether Plaintiff Fails to State Claims for Relief

Defendant first argues that, under California law, courts apply the "reasonable consumer" standard to plaintiff's three claims under the CLRA, the UCL, and the FAL, and that plaintiff's claims may be resolved at the motion to dismiss stage because plaintiff does not allege that any of defendant's advertising is actually false. Motion at 2–3 (citing Pelayo v. Nestle USA, Inc., 989 F. Supp. 2d 973, 978 (C.D. Cal. 2013); Davis v. HSBC Bank Nevada, N.A., 691 F.3d 1152, 1162 (9th Cir. 2012) ("[W]e note that Davis does not allege that Best Buy's advertisement contained any statements that were actually false.")). Defendant contends that although a true statement couched in a misleading manner is actionable, this is not the case with respect to the Concentrate insofar as the plainly visible rear label identifies multiple mixing options that allow for the Concentrate to make "up to" several different amounts of product. Id. at 3–4. In particular, defendant notes that the Concentrate label provides three mixing options, and that plaintiff actually concedes that the "makes up to" representations on the front label are accurate if the consumer follows the mixing instructions for "newly emerged weeds." Id. at 4 (citing FAC ¶ 19).

Defendant contends that numerous courts have held that a reasonable consumer would not be deceived by advertising that emphasizes a minimum or maximum value within a range of possibilities, as long as the minimum or maximum values are available to at least some consumers. Id. at 4 (citations omitted). Defendant contends that plaintiff's claims are unlike other misleading advertising claims against herbicide Roundup Weed & Grass Killer, where manufacturer Monsanto "buried" mixing

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | CIVIL MINUTES – GENERAL | | 'O' |
|---|---|---|---|
| Case No. | 2:17-cv-06983-CAS(SKx) | Date | March 23, 2018 |
| Title | GREGORY ARTHUR v. UNITED INDUSTRIES CORPORATION | | |

instructions in a place where reasonable consumers could not see multiple mixing options before purchase. Id. at 5 (citing Martin v. Monsanto Co., No. 16-CV-2168-JFW-SPx, 2017 WL 659014 (C.D. Cal. Feb. 16, 2017); Rawa v. Monsanto Co., No. 17-CV-01252-AFG, 2017 WL 3392090 (E.D. Mo. Aug. 7, 2017)). Here, defendant argues that the Concentrate labels do *not* bury the existence of multiple diluting and mixing options, and that a reasonable consumer would have seen these options prior to purchasing the product. Id. at 6. In sum, defendant contends that the "makes up to" language on the Concentrate label represents the maximum quantity according to the most diluted mixing option provided on the front of the rear label, and accordingly, the Concentrate labeling is neither false nor misleading and plaintiff's claims should be dismissed with prejudice. Id.

In opposition, plaintiff contends that the Concentrate labels produced by defendant three days after the FAC was filed demonstrate that the "amount to use" instructions are *not* clearly visible to consumers, and that these instructions are concealed inside of the pamphlets that are taped to the back of the products.[1] Opp'n at 1.

Plaintiff further argues that the disputed question of fact concerning whether a reasonable consumer is likely to see defendant's mixing instructions is reason enough to deny the motion to dismiss, and that reasonable consumers should not be expected to look beyond misleading representations on the front label to discover the truth from the mixing instructions that are written in small print on the back pamphlet of the product.

---

[1] Plaintiff requests that the Court judicially notice four Concentrate labels that defendant produced to plaintiff on November 30, 2017. See RJN. Plaintiff argues that the Court may judicially notice these labels because the labels form the basis of the allegations in the FAC, and because they are not subject to reasonable dispute. Id. at 3. The labels produced to plaintiff on November 30, 2017, however, appear to be materially different than the labels described in the complaint. As plaintiff alleges in his opposition, these subsequently-produced labels demonstrate that the mixing instructions are "concealed inside of the pamphlets that are taped to the back of the Products." Opp'n at 1. Yet plaintiff alleges in the FAC that the Concentrate labels he relied on include the "amount to use" instructions on the "front page" graphic of the rear pamphlet label, in addition to mixing instructions on the inside of the pamphlet. FAC ¶¶ 14–16. Accordingly, because the subsequently-produced labels appear to be materially different labels than the ones upon which plaintiff allegedly relied, the Court declines to judicially notice the labels produced to plaintiff on November 30, 2017.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | CIVIL MINUTES – GENERAL | | 'O' |
|---|---|---|---|
| Case No. | 2:17-cv-06983-CAS(SKx) | Date | March 23, 2018 |
| Title | GREGORY ARTHUR v. UNITED INDUSTRIES CORPORATION | | |

Id. at 2, 9 (citing Williams v Gerber Products Co., 552 F.3d 934, 939 (9th Cir. 2008) ("We disagree with the district court that reasonable consumers should be expected to look beyond misleading representations on the front of the box to discover the truth from the ingredient list in small print on the side of the box."). In light of defendant's labels recently produced to plaintiff, plaintiff contends that this case is analogous to Martin v. Monsanto Co., where the Court rejected Monsanto's motion to dismiss and held that whether the labels are likely to deceive a reasonable consumer is more appropriately resolved on a motion for summary judgment or motion for class certification. Id. at 9–10 (citing Martin, 2017 WL 659014, at *5).

Plaintiff argues that even if defendant's mixing instructions were visible on the back label of the Concentrate products, dismissal is still unwarranted because these instructions do not clearly appear on the front label in proximity to the "makes up to" claims, and reasonable consumers should not be expected to look beyond misleading representations on the front of the label to discover the truth regarding the mixing instructions. Id. at 10 (citing Williams, 552 F.3d at 939; Henderson v. J.M. Smucker Co., No. 10-CV-4524-GHK-VBK, 2011 WL 1050637, at *4 (C.D. Cal. Mar. 17, 2011) (rejecting argument "that since partially hydrogenated vegetable oil, which contains trans-fat, is disclosed as one of the ingredients in its products, no reasonable consumer could be misled"); Jou v. Kimberly-Clark Corp., No. 13-CV-03075-JSC, 2013 WL 6491158, at *9 (N.D. Cal. Dec. 10, 2013) ("Defendant cannot rely on disclosures on the back or side panels of the packaging to contend that any misrepresentation on the front of the packaging is excused."); Martin v. Tradewinds Beverage Co., No. 16-CV-9249-PSG -MRW, 2017 WL 1712533, at *9 (C.D. Cal. Apr. 27, 2017), on reconsideration, No. 16-CV-9249-PSG-MRW, 2018 WL 313123 (C.D. Cal. Jan. 4, 2018) (rejecting argument "that no reasonable consumer could be deceived by the '100% Natural' label because an examination of the ingredient list on the back side of the packaging reveals that the product contains a color additive."); Andriesian v. Cosmetic Dermatology, Inc., No. 14-CV-01600-ST, 2015 WL 1638729, at *5 (D. Or. Mar. 3, 2015), report and recommendation adopted, No. 3:14-CV-01600-ST, 2015 WL 1925944 (D. Or. Apr. 28, 2015) (rejecting argument "that a reasonable consumer could not be misled because the allegedly oil-based ingredients were plainly listed on the product's label."); Mee v. I A Nutrition, Inc., No. 14-CV-5006-MMC, 2015 WL 4776301, at *6 (N.D. Cal. Aug. 13, 2015) ("Although, as defendant points out, the Supplement Facts section of the label explains that the statement pertains to a serving when mixed with two cups of whole milk, the Ninth Circuit, as plaintiffs point out, has rejected essentially the same argument, namely, that 'reasonable consumers should be expected to look beyond misleading

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES – GENERAL     'O'

| Case No. | 2:17-cv-06983-CAS(SKx) | Date | March 23, 2018 |
|---|---|---|---|
| Title | GREGORY ARTHUR v. UNITED INDUSTRIES CORPORATION | | |

representations on the front of the box to discover the truth from the ingredient list in small print on the side of the box.' ").[2]

In reply, defendant argues that it is not plausible that the Concentrate labeling identified in plaintiff's FAC would mislead a significant portion of the general consuming public. Reply at 3 (citing Ebner v. Fresh, Inc., 838 F.3d 958, 965 (9th Cir. 2016)). According to defendant, any member of the general consuming public who purchases the Concentrate would see the "clear and conspicuous instructions" and would deduce that the Concentrate bottle would produce three different amounts of herbicide depending on which of the three dilution options the consumer chooses. Id. at 3. Defendant contends that the case law that plaintiff relies on is inapposite, as these cases dealt with accurate disclosures—like small-print ingredient listing on a back or side panel—and concluded that these disclosures could not, as a matter of law, rectify an *inaccurate* statement displayed on the front of the product. Id. at 3 (citing Jou, 2013 WL 6491158, at *9; Martin, 2017 WL 1712533, at **8–9). Here, defendant contends that the "makes up to" statement on the front of the Concentrate label is accurate regarding the volume that the Concentrate will make when diluted at the highest level of dilution identified on the rear product label.[3] Id.

---

[2] Plaintiff also requests leave to amend the operative complaint pursuant to Federal Rule of Civil Procedure 15. He requests leave to include (1) copies of the product labels produced on November 30, 2017 and allegations that a reasonable consumer would not have seen the mixing instructions buried in the rear pamphlet; (2) allegations relating to the 40-fluid ounce version of the Concentrates; and (3) to remove allegations involving the proposed Rule 23(b)(2) injunctive relief class. Opp'n at 12.

[3] Additionally, defendant argues that the Concentrate labels that plaintiff requests the Court to judicially notice are not the same labels referenced in plaintiff's FAC, and that plaintiff never saw or relied upon these subsequently-produced labels. Reply at 4. As an alternative, given plaintiff's attempt to rely on the labels produced during discovery, defendant "invites" the Court to treat this motion to dismiss as one for summary judgment. Id. at 1, n.1. Defendant goes on to discuss plaintiff's February 2, 2018 deposition, and urges the Court to dismiss plaintiff's FAC with prejudice, citing to plaintiff's deposition testimony in which he stated that he received the amount of product that was promised, but that his true complaint was that the Concentrate was simply not effective at killing weeds. Id. at 6. The Court declines to treat the instant motion to dismiss as a motion for summary judgment in light of its ruling on plaintiff's RJN, and

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | CIVIL MINUTES – GENERAL | | 'O' |
|---|---|---|---|
| Case No. | 2:17-cv-06983-CAS(SKx) | Date | March 23, 2018 |
| Title | GREGORY ARTHUR v. UNITED INDUSTRIES CORPORATION | | |

The Court must determine whether plaintiff adequately alleges claims under the FAL, the CLRA, and the UCL for the allegedly misleading "makes up to" statement on defendant's Concentrate product packaging. The FAL and the CLRA prohibit false or misleading advertising. See Cal. Bus. & Prof. Code § 17500; Cal. Civ. Code §§ 1770(a), (a)(7). The UCL prohibits business practices that are unlawful, unfair, or fraudulent, and generally, a violation of the FAL or the CLRA may also constitute a violation of the fraudulent prong of the UCL. See Cal. Bus. & Prof. Code § 17200; Hadley v. Kellogg Sales Co., 243 F. Supp. 3d 1074, 1089 (N.D. Cal. 2017) (citing In re Tobacco II Cases, 46 Cal.4th 298, 312 n.8 (2009); Consumer Advocates v. Echostar Satellite Corp., 113 Cal. App. 4th 1351, 1360 (2003).

Under the FAL, the CLRA, and the fraudulent prong of the UCL, conduct is considered deceptive or misleading if the conduct is "likely to deceive" a reasonable consumer." Williams, 552 F.3d 934 at 939 (9th Cir. 2008). As another district court explained,

> The CLRA, FAL, and UCL utilize a "reasonable consumer standard." Freeman v. Time, Inc., 68 F.3d 285, 289 (9th Cir. 1995) …. Under the reasonable consumer standard, the plaintiff must "show that members of the public are likely to be deceived." Freeman, 68 F.3d at 289 (internal quotation marks omitted.)

Henderson v. Gruma Corp., No. 10-CV-04173-AHM-AJW, 2011 WL 1362188, at *10 (C.D. Cal. Apr. 11, 2011). "California courts ... have recognized that whether a business practice is deceptive will usually be a question of fact not appropriate for decision on demurrer." Williams v. Gerber Products Co., 552 F.3d 934, 938-39 (9th Cir. 2008) (citations omitted). However, plaintiff must allege "more than a mere possibility that the advertisement might conceivably be misunderstood by some few consumers viewing it in an unreasonable manner." Brod v. Sioux Honey Ass'n, Co-op, 927 F. Supp. 2d 811, 828 (N.D. Cal. 2013) (citing Lavie v. Procter & Gamble Co., 105 Cal. App. 4th 496, 508 (Cal. Ct. App. 2003)).

Taking plaintiff's allegations as true and construing them in the light most favorable to plaintiff, the Court finds that the allegations sufficiently state claims for violations of the UCL, FAL, and the CLRA. As noted, the Ninth Circuit in Williams

---

likewise, the Court declines to consider plaintiff's deposition testimony at this juncture insofar as it constitutes evidence outside of the pleadings.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | CIVIL MINUTES – GENERAL | | 'O' |
|---|---|---|---|
| Case No. | 2:17-cv-06983-CAS(SKx) | Date | March 23, 2018 |
| Title | GREGORY ARTHUR v. UNITED INDUSTRIES CORPORATION | | |

remarked that whether a business practice is deceptive is normally a question of fact, and dismissal is only warranted in "rare situations." 552 F.3d 934 at 938. In that case, the Ninth Circuit concluded that reasonable consumers should not be expected to look beyond misleading representations on the front label to discover the truth from "the ingredient list in small print on the side of the box." 552 F.3d 934 at 938, 940. Similarly here, the Court finds that whether defendant's Concentrate labels are misleading or deceptive is a finding of fact more appropriately suited for summary judgment. Plaintiff indeed acknowledges that the Concentrate front label's "makes up to" language is accurate with respect to the most diluted mixing option for "newly emerged weeds." FAC ¶ 19. However, the Court cannot conclude as a matter of law that a reasonable consumer would not be misled by the Concentrate label's "makes up to" language. In particular, each Concentrate bottle includes an explanation on the rear label that there are three different "amount to use" options: for "best results," which is the least diluted mixing option; for "general weed control," the middle mixing option; and for "newly emerged weeds," the most diluted mixing option. See FAC ¶¶ 14–15. Although these instructions are not hidden or abnormally small, they fail to explicitly state *which* option produces the "makes up to" advertisement on the front label of the Concentrate bottle. Consequently, it appears that the three mixing options could result in confusion, as consumers would need to either calculate the ready-to-use quantities of all mixing options or guess which mixing option creates the "makes up to" amount provided on the front label.

Moreover, the Court observes that the rear label of the 32-fluid ounce Concentrate bottle allegedly advertises that it "makes up to 20 gallons," while its front label allegedly states that it "makes up to 10 gallons." FAC ¶¶ 11, 14–15. This contradiction further supports the appropriateness of denying the instant motion to dismiss, as a reasonable consumer could be misled or confused by this contradiction. See Ebner, 838 F.3d 958 at 966 (affirming district court's dismissal of the plaintiff's FAL, CLRA, and UCL claims, in part because defendant's packaging did "not contradict other representations or inferences on [defendant's] packaging.").

In light of the above considerations, the Court concludes that "a significant portion of the general consuming public or of targeted consumers, acting reasonably in the circumstances, could be misled" into thinking that the Concentrate product, when mixed for "best results" or for "general weed control," would make up to 10 gallons of ready-to-use product. See Ebner, 838 F.3d 958 at 966. Accordingly, the Court **DENIES** defendant's motion to dismiss plaintiff's claims under the FAL, CLRA, and UCL.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | CIVIL MINUTES – GENERAL | | 'O' |
|---|---|---|---|
| Case No. | 2:17-cv-06983-CAS(SKx) | Date | March 23, 2018 |
| Title | GREGORY ARTHUR v. UNITED INDUSTRIES CORPORATION | | |

### B. Whether Plaintiff's Request for Injunctive Relief Is Preempted by the Federal Insecticide, Fungicide, and Rodenticide Act

Defendant contends that plaintiff's request for injunctive relief should be stricken, because any request for injunctive relief under these circumstances is preempted under FIFRA. Motion at 6. Plaintiff concedes that his injunctive relief claims are preempted by FIFRA. Opp'n at 2. Accordingly, the Court **GRANTS** as unopposed defendant's request to strike plaintiff's request for injunctive relief.

## V. CONCLUSION

In accordance with the foregoing, the Court **GRANTS in part** and **DENIES** in part defendant's motion to dismiss plaintiff's FAC. The Court denies defendant's motion to dismiss plaintiff's claims for violations of the FAL, CLRA, and UCL. The Court grants defendant's unopposed request to strike plaintiff's request for injunctive relief.

The Court **GRANTS** plaintiff's request to amend the FAC. Plaintiff may file an amended complaint on or before April 16, 2018.

IT IS SO ORDERED.

| | 00 : 00 |
|---|---|
| Initials of Preparer | CMJ |