UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

## CIVIL MINUTES – GENERAL        'O'

| Case No. | 2:17-cv-06983-CAS(SKx) | Date | May 17, 2018 |
|---|---|---|---|
| Title | GREGORY ARTHUR v. UNITED INDUSTRIES CORPORATION | | |

| Present: The Honorable | CHRISTINA A. SNYDER | |
|---|---|---|
| Catherine Jeang | Not Present | N/A |
| Deputy Clerk | Court Reporter / Recorder | Tape No. |

Attorneys Present for Plaintiffs:      Attorneys Present for Defendants:

Not Present           Not Present

**Proceedings:**    (IN CHAMBERS) - **[REDACTED]** - PLAINTIFF'S MOTION
FOR CLASS CERTIFICATION (Dkt. 23, filed January 15, 2018)

## I.  INTRODUCTION

On September 21, 2017, plaintiff Gregory Arthur filed the instant putative class
action complaint against defendant United Industries Corporation. Dkt. 1. On November
27, 2017, plaintiff filed a first amended complaint. Dkt. 16 ("FAC").

On January 12, 2018, defendant filed a motion to dismiss plaintiff's FAC. Dkt. 22.
On March 23, 2018, the Court denied defendant's motion to dismiss plaintiff's claims for
violations of the FAL, CLRA, and UCL, granted defendant's unopposed request to strike
plaintiff's request for injunctive relief, and granted plaintiff's request to file an amended
complaint. Dkt. 34.

On April 15, 2018, plaintiff filed a second amended complaint. Dkt. 39 ("SAC").
Plaintiff asserts that defendant is a manufacturer of the herbicide known as Spectracide
Weed and Grass Killer Concentrate ("Concentrate"), and that defendant misrepresented
that each bottle of Concentrate may be diluted to make a specified number of gallons of
herbicide. Plaintiff brings this putative class action to recover damages on behalf of
himself and other purchasers. In particular, plaintiff asserts claims for (1) violation of the
Consumers Legal Remedies Act, Cal. Civ. Code §§ 1750, et seq., ("CLRA"); (2)
violation of the False Advertising Law, Cal. Bus. & Prof. Code §§ section 17500, et seq.
("FAL"); and (3) violation of the Unfair Competition Law, Cal. Bus. & Prof. Code §§
17200, et seq. ("UCL").

On January 15, 2018, plaintiff filed a motion for class certification. Dkt. 23
("Motion"). On March 26, 2018, defendant filed an opposition. Dkt. 35 ("Opp'n").

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES – GENERAL        'O'

| Case No. | 2:17-cv-06983-CAS(SKx) | Date | May 17, 2018 |
| Title | GREGORY ARTHUR v. UNITED INDUSTRIES CORPORATION | | |

Plaintiff filed a reply on April 7, 2018. Dkt. 42 ("Reply"). The motion for class certification is presently before the Court.

On May 14, 2018, the Court held a hearing. After carefully considering the parties' arguments, the Court finds and concludes as follows.

## II.    BACKGROUND

Plaintiff alleges the following facts.

Plaintiff is a resident of Tujunga, California. SAC ¶ 9. Defendant is the manufacturer of an herbicide known as Spectracide Weed and Grass Killer Concentrate. Id. ¶ 4. Defendant is a Delaware corporation that maintains its principal place of business in Earth City, Missouri. Id. ¶ 10.

Defendant manufactures, markets, and sells Concentrates in 16-, 32-, 40-, and 64-fluid ounce bottles, which, unlike defendant's "Ready-to-Use" Spectracide, are intended to be diluted with water prior to use. Id. ¶¶ 4, 11. Because Concentrates are comparatively less expensive than Ready-to-Use Spectracide, plaintiff alleges that defendant markets its Concentrates as better values than its Ready-to-Use products. Id. ¶ 14.

Plaintiff alleges that during the preceding four years, defendant advertised the Concentrates as capable of making a certain number of gallons of herbicide. Id. ¶ 5. For example, at the top of the bottle in bold red letters, the 32-fluid ounce Concentrate advertises that it "Makes Up to 10 Gallons." Id. The 16-fluid ounce container advertises that it "Makes Up to 5 gallons," the 40-fluid ounce contain advertises that it "Makes Up to 13 Gallons," and the 64-fluid ounce container advertises that it "Makes Up to 20 Gallons." Id. ¶ 12.

Plaintiff contends that these advertisements were false insofar as the Concentrates were only capable of making a fraction of the number of gallons represented when diluted to the same strength as "Ready-to-Use" Spectracide, mixed in accordance with defendant's own instructions.[1] Id. ¶ 7.

---

[1]    Plaintiff alleges generally that he "purchased Spectracide Concentrate products," and does not allege which particular size he purchased. SAC ¶¶ 27–28.

| CIVIL MINUTES – GENERAL | | 'O' | |
|---|---|---|---|
| Case No. | 2:17-cv-06983-CAS(SKx) | Date | May 17, 2018 |
| Title | GREGORY ARTHUR v. UNITED INDUSTRIES CORPORATION | | |

On the back label of certain Concentrate bottles, plaintiff alleges that there is a glossy-paged pamphlet that depicts a graphic on its front page stating "Where to Use," "What It Does," "When to Use," and "Amount to Use." Id. ¶¶ 15–16. Plaintiff alleges that under the "Amount to Use" heading on the back label of the 64-fluid ounce bottle, the label provides that (1) "For best results: 7 fl oz (14 Tbsp) per gallon of water;" (2) for "general weed control (annuals): 5 fl oz (10 Tbsp) per gallon of water;" and (3) for "Newly emerged weeds: 3 fl oz (6 Tbsp) per gallon of water." Id. ¶ 16. The back label of the 64-fluid ounce bottle also provides that it "Makes Up to 20 Gallons." Id. These instructions allegedly fail to state which mixing option produces the "makes up to" advertisement on the front of the Concentrate bottle. Id.

The inside of the pamphlet on the 64-fluid ounce bottle contains a section titled "Mixing Instructions." Id. ¶¶ 16–17. This section provides the following instructions:

> **To kill newly emerged weeds:** 3 fl oz (6 Tbsp) per gallon of water treats 300 sq ft.
> **For general weed control:** 5 fl oz (10 Tbsp) per gallon of water treats 300 sq ft.
> **For best results:** 7 fl oz (14 Tbsp) per gallon of water treats 300 sq ft.
> 1 Tbsp = 3 tsp      1 fl oz = 2 Tbsp

Id. ¶¶ 17–18 (emphasis in original).

Plaintiff alleges that, given the dilutions set forth on the back panel of each Concentrate bottle, each bottle is capable of making only a fraction of defendant's representations when mixed according to defendant's instructions for "general weed control." Id. ¶ 19. Plaintiff provides the following table:

| Product | "Makes up to" gallon claim | Back label instruction "for general weed control" (Amount to mix with 1 gallon of water) | Amount made following instructions |
|---|---|---|---|
| Spectracide Concentrate 16-fluid ounce | "Makes up to 5 gallons" | "5 fl oz (10 Tbps) per gallon of water treats 300 sq ft." | 3.2 Gallons |

**CIVIL MINUTES – GENERAL**      **'O'**

| Case No. | 2:17-cv-06983-CAS(SKx) | Date | May 17, 2018 |
|---|---|---|---|
| Title | GREGORY ARTHUR v. UNITED INDUSTRIES CORPORATION | | |

| | | | |
|---|---|---|---|
| Spectracide Concentrate 32-fluid ounce | "Makes up to 10 gallons" | "5 fl oz (10 Tbps) per gallon of water treats 300 sq ft." | 6.4 Gallons |
| Spectracide Concentrate 40-fluid ounce | "Makes up to 13 Gallons" | "5 fl oz (10 Tbps) per gallon of water treats 300 sq. ft." | 8.0 Gallons |
| Spectracide Concentrate 64-fluid ounce | "Makes up to 20 gallons" | "5 fl oz (10 Tbps) per gallon of water treats 300 sq ft." | 12.8 Gallons |

Id. ¶ 19. Plaintiff alleges that defendant fails to disclose that the advertised "makes up to" amount can only be achieved by following the mixing instruction for "newly emerged weeds." Id. ¶ 20. Plaintiff contends that reasonable consumers would expect that the advertised "Makes up to" amount would be for the product's intended purpose, which is "general weed control." Id. ¶¶ 20-21. In addition, plaintiff asserts that the "amount to use" mixing instructions are actually concealed *inside* the pamphlets that are taped to the back of certain iterations of Concentrate products sold during the class period. Id. ¶ 20. Plaintiff alleges that a reasonable purchaser does not have the professional understanding of what constitutes a "newly emerged weed," and would instead rely on defendant's representation that for "general weed control," the purchaser should mix "5 fl oz (10 Tbps) per gallon of water [to treat] 300 sq ft." Id. ¶ 21. Plaintiff further alleges that use of the product on "newly emerged weeds" is not normal use, and that normal use is instead represented on the pamphlet's cover and the front of the bottles as a "WEED & GRASS KILLER" that "Kills the Root!" and is to be used "on patios, walkways, and flowerbeds." Id. ¶ 22–23.

In sum, plaintiff contends that a reasonable consumer should not be expected to look beyond "misleading representations" on the front label to discover the truth from mixing instructions in small print on a product's back pamphlet. Id. ¶ 25. Plaintiff alleges that this is especially true where the products at issue are concentrated forms of a Ready-to-Use product and are represented to be a better value than the Ready-to-Use product. Id. Moreover, plaintiff argues that the U.S. Federal Trade Commission ("FTC") has stated that "advertisers using [the "makes up" to] claims should be able to

| CIVIL MINUTES – GENERAL | | | 'O' |
|---|---|---|---|
| Case No. | 2:17-cv-06983-CAS(SKx) | Date | May 17, 2018 |
| Title | GREGORY ARTHUR v. UNITED INDUSTRIES CORPORATION | | |

substantiate that consumers are likely to achieve the maximum results promised under normal circumstances." Id. ¶ 22.

Plaintiff alleges that he purchased Concentrate products on multiple occasions, and that he relied on the products' "Makes up to" labels. Id. ¶ 27. Plaintiff contends that defendant's representations on these Concentrate products were false and misleading insofar as these products did not yield the volume of herbicide necessary to kill all types of weed and grass when used according to the "prominently stated" instructions on the product's back panel. Id. ¶¶ 30–31. Plaintiff alleges that he paid more for the Concentrate products, and that he would have only been willing to pay *less* absent the false and misleading advertising. Id. ¶ 33.

Plaintiff also includes class action allegations, and alleges that class treatment is appropriate under Federal Rules of Civil Procedure 23(a), 23(b)(3), and 23(c)(4). Id. ¶¶ 39–40, 46, 47.

## III.  LEGAL STANDARDS

"Class actions have two primary purposes: (1) to accomplish judicial economy by avoiding multiple suits, and (2) to protect rights of persons who might not be able to present claims on an individual basis." Longest v. Green Tree Servicing LLC, 308 F.R.D. 310, 320 (C.D. Cal. 2015) (citing Crown, Cork & Seal Co. v. Parker, 462 U.S. 345 (1983)). Federal Rule of Civil Procedure 23 governs class actions. For a suit to be maintained as a class action, the proposed class must "satisfy the criteria set forth in subdivision (a) . . ., and it also must fit into one of three categories described in subdivision (b)." Shady Grove Orthopedic Assocs., P .A. v. Allstate Ins. Co., 559 U.S. 393, 398 (2010).

More than a pleading standard, Rule 23 requires the party seeking class certification to "affirmatively demonstrate . . . compliance with the rule." Wal–Mart Stores, Inc. v. Dukes, 564 U.S. 338, 350 (2011). This requires a district court to conduct "rigorous analysis" that frequently "will entail some overlap with the merits of the plaintiff's underlying claim." Id. at 351. However, the Supreme Court has strongly cautioned that "merits questions may be considered to the extent—but only to the extent—that they are relevant to determining whether the Rule 23 prerequisites for class certification are satisfied." Amgen Inc. v. Connecticut Ret. Plans & Tr. Funds, 568 U.S. 455, 466 (2013).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | CIVIL MINUTES – GENERAL | | 'O' |
|---|---|---|---|
| Case No. | 2:17-cv-06983-CAS(SKx) | Date | May 17, 2018 |
| Title | GREGORY ARTHUR v. UNITED INDUSTRIES CORPORATION | | |

First, plaintiff must demonstrate that the four requirements of Rule 23(a) are met: (1) numerosity; (2) commonality; (3) typicality; and (4) adequacy of representation. These requirements effectively "limit the class claims to those fairly encompassed by the named plaintiff's claims." Gen. Tel. Co. of Sw. v. Falcon, 457 U.S. 147, 155 (1982) (quoting Califano v. Yamasaki, 442, U.S. 682, 701 (1979)). Second, if a court finds that the Rule 23(a) requirements are met, the court must consider whether the class is maintainable under one of the three alternatives set forth in Rule 23(b). Dukes, 564 U.S. at 345. Plaintiff here seeks to maintain certification under Rule 23(b)(3), which requires "that questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3).

"The Rule 23(b)(3) predominance inquiry tests whether the proposed classes are sufficiently cohesive to warrant adjudication by representation." Hanlon v. Chrysler Corp., 150 F.3d 1011, 1022 (9th Cir. 1998) (citing Amchem Products, Inc. v. Windsor, 521 U.S. 591 (1997)). If "common questions present a significant aspect of the case and they can be resolved for all members of the class in a single adjudication," then adjudication on a representative basis is appropriate. Id. Otherwise, individualized adjudication is more appropriate. Therefore, the Court must balance concerns regarding the litigation of issues common to the class as a whole with questions affecting individual class members. In re N.D. Cal., Dalkon Shield IUD Products Liability Litig., 693 F.2d 847, 856 (9th Cir. 1982).

In determining superiority, the court must consider the four factors of Rule 23(b)(3): (1) the interests that members in the class have in individually controlling the prosecution or defense of separate actions; (2) the extent and nature of any litigations concerning the controversy already commenced by or against members of the class; (3) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (4) the difficulties likely encountered in the management of a class action. See Zinser v. Accufix Research Inst., Inc., 253 F.3d 1180, 1190–1193 (9th Cir. 2001), opinion amended on denial of reh'g, 273 F.3d 1261 (9th Cir. 2011).

| CIVIL MINUTES – GENERAL | | | 'O' |
|---|---|---|---|
| Case No. | 2:17-cv-06983-CAS(SKx) | Date | May 17, 2018 |
| Title | GREGORY ARTHUR v. UNITED INDUSTRIES CORPORATION | | |

## IV. DISCUSSION

### A. Plaintiff's Request for Judicial Notice

Plaintiff requests that the Court judicially notice two documents: (1) a true and correct copy of an article entitled <u>FTC Report: Many Consumers Believe "Up To" Claims Promise Maximum Results</u>[2]; and (2) a true and correct copy of a study entitled <u>Effects of a Bristol Windows Advertisement with an "Up To" Savings Claim on Consumer Take-Away and Beliefs</u>.[3] RJN at 2. Plaintiff argues that these documents are publicly available online records from the FTC's website, and that they are capable of accurate determination and are not subject to reasonable dispute. <u>Id.</u> at 2–3. Defendant does not appear to oppose this request.

The Court may take judicial notice of publicly available information found on a government agency's website. <u>Gerritsen v. Warner Bros. Entm't Inc.</u>, 112 F. Supp. 3d 1011, 1033 (C.D. Cal. 2015) ("Under Rule 201, the court can take judicial notice of public records and government documents available from reliable sources on the Internet, such as websites run by governmental agencies." (alteration and internal quotation marks omitted)); <u>see also</u> <u>Daniels-Hall v. Nat'l Educ. Ass'n</u>, 629 F.3d 992, 998–99 (9th Cir. 2010) (taking judicial notice of online information "made publicly available by government entities"). As these exhibits originate from the FTC's website, the Court finds that they are properly subject to judicial notice. Accordingly, the Court **GRANTS** plaintiff's request for judicial notice.

### B. The Proposed Class

Plaintiff seeks to represent a class of "all persons who, on or after September 21, 2013 (the "Class Period"), purchased in California, for personal or household use and not for resale or distribution, Spectracide Concentrate products in packages stating that the product "Makes up to" a specified number of gallons as follows:

---

[2] Publicly available at https://www.ftc.gov/news-events/press-releases/2012/06/ftc-report-many-consumers-believe-claims-promise-maximum-results.

[3] Publicly available at https://www.ftc.gov/sites/default/files/documents/reports/effects-bristol-windows-advertisement-savings-claim-consumer-take-away-beliefs/120629bristolwindowsreport.pdf.

| CIVIL MINUTES – GENERAL | | | 'O' |
|---|---|---|---|
| Case No. | 2:17-cv-06983-CAS(SKx) | Date | May 17, 2018 |
| Title | GREGORY ARTHUR v. UNITED INDUSTRIES CORPORATION | | |

| 16 Ounce Spectracide Concentrate | "Makes Up to 5 Gallons" |
|---|---|
| 32 Ounce Spectracide Concentrate | "Makes Up to 10 Gallons" |
| 40 Ounce Spectracide Concentrate | "Makes Up to 13 Gallons" |
| 64 Ounce Spectracide Concentrate | "Makes Up to 20 Gallons" |

SAC ¶ 39.

## C. Federal Rule of Civil Procedure 23(a) Requirements

Plaintiff requests the Court to certify the proposed class and appoint plaintiff as the class representative. Motion at 1.

### 1. Numerosity

Rule 23(a)(1) requires the proposed class to be "so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). "As a general matter, courts have found that numerosity is satisfied when class size exceeds 40 members." Moore v. Ulta Salon, Cosmetics & Fragrance, Inc., 311 F.R.D. 590, 602–03 (C.D. Cal. 2015). "Where the exact size of the class is unknown, but general knowledge and common sense indicate that it is large, the Numerosity requirement is satisfied." Longest, 308 F.R.D. at 321 (internal quotation marks omitted).

Plaintiff alleges that the numerosity requirement is satisfied because, during the class period, [REDACTED]. Motion at 5–6 (citing In re Brazilian Blowout Litig., 2011 WL 10962891, at *2 (C.D. Cal. Apr. 12, 2011).

Here, defendant's discovery responses reveal that it [REDACTED] during the class period. Podlipna Decl. ¶ 16; Marron Decl. ¶ 8 & Ex. 7. Moreover, defendant does not appear to oppose plaintiff's assertion that the proposed Class satisfies the numerosity requirement. See Opp'n. Accordingly, the Court finds that the numerosity requirement is satisfied.

### 2. Commonality

Under Rule 23(a)(2), plaintiffs must demonstrate that "there are questions of law or fact in common to the class." Fed. R. Civ. P. 23(a)(2). "Commonality requires the plaintiff to demonstrate that the class members have suffered the same injury . . . [and] [t]heir claims must depend upon a common contention . . . of such nature that it is capable of class-wide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." Dukes, 564 U.S. at 350 (internal quotation marks and citations omitted). "What matters to class certification . . . is not the raising of common 'questions'—even in droves—but, rather the capacity of a class-wide proceeding to generate common answers apt to drive the resolution of the litigation." Id.

Here, plaintiff argues that the proposed class includes only persons who purchased the Concentrate products bearing defendant's "Makes up to" claim, and that the gravamen of the SAC's claims is that defendant did not fulfill its promise to provide a specified amount of spray solution. Motion at 7. Plaintiff asserts that given the alleged uniform misrepresentation as to the amount of ready-to-use solution that the Concentrates yield, the primary common question with respect to the consumer fraud claims is whether defendant's "Makes up to" statements were likely to deceive. Id. (citing Spann v. J.C. Penney Corp., 307 F.R.D. 508, 518 (C.D. Cal. 2015); Martin, 2017 WL 1115167, at *4). Thus, plaintiff contends the commonality requirement is "easily satisfied." Id.

In opposition, defendant argues that the Supreme Court noted in Duke that "[t]he commonality and typicality requirements of Rule 23(a) tend to merge," and that these two requirements also "tend to merge with the adequacy-of-representation requirement." Opp'n at 8 n.2. Therefore, defendant argues that although it "explicitly challenges [p]laintiff's showing as to typicality and adequacy, [it] also does not concede that [p]laintiff can establish commonality under Rule 23(a)." Id.

In turn, plaintiff replies that defendant "does not dispute" that the commonality requirement is satisfied. Reply at 1, n.1.

For the reasons addressed in the Court's discussion of typicality and adequacy, the Court concludes that plaintiff and the proposed class members appear to have suffered different alleged injuries. In addition, plaintiff fails to demonstrate that the proposed class includes only those individuals who were actually injured, given that consumers who purchased the Concentrate products for "newly emerged weeds"—the most diluted

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES – GENERAL    'O'

| Case No. | 2:17-cv-06983-CAS(SKx) | Date | May 17, 2018 |
| Title | GREGORY ARTHUR v. UNITED INDUSTRIES CORPORATION | | |

mixing option—did in fact receive the amount of gallons promised. Because commonality "requires plaintiffs to demonstrate that the class members have suffered the same injury, not merely violations of the same law," the Court concludes that the commonality requirement is not satisfied. Parsons v. Ryan, 754 F.3d 657, 674-75 (9th Cir. 2014).

### 3.    Typicality

Rule 23(a) requires plaintiffs to demonstrate that "the claims or defenses of the representative parties are typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3). "Under the rule's permissive standards, representative claims are 'typical' if they are reasonably coextensive with those of absent class members; they need not be substantially identical." Hanlon, 150 F.3d at 1020; accord Just Film, Inc. v. Buono, 847 F.3d 1108, 1116 (9th Cir. 2017). However, the class representative "must be part of the class and possess the same interest and suffer the same injury as the class members." Falcon, 457 U.S. at 156. "Measures of typicality include 'whether other members have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiffs, and whether other class members have been injured by the same course of conduct.' " Torres v. Mercer Canyons Inc., 835 F.3d 1125, 1141 (9th Cir. 2016) (quoting Hanon v. Dataproducts Corp., 976 F.2d 497, 508 (9th Cir. 1992)). A court should not certify a class if "there is a danger that absent class members will suffer if their representative is preoccupied with defenses unique to it." Hanon, 976 F.2d at 508.

With respect to typicality, plaintiff argues that he and all putative class members were exposed to the same "Makes up to" claim and were injured in the same manner when they purchased the Concentrates, which allegedly provided less value than reasonable consumers would expect for "general weed control." Motion at 8. Accordingly, plaintiff argues that his claims are typical of the class member's claims. Id. (citing Martin, 2017 WL 1115167, at *4; Brazilian Blowout, 2011 WL 10962891).

In opposition, defendant argues that plaintiff's case is about *efficacy*, not alleged under-fill, insofar as plaintiff allegedly admitted in his deposition that he always received the maximum volume of Concentrate advertised on the package, and that his complaint with the Concentrate was instead that the product was not as effective as he expected at killing newly emerged weeds. Opp'n at 3–4, 9. Accordingly, defendant argues, plaintiff was not damaged because he received less product than he paid for; he was allegedly damaged because the product was "not effective for the purpose for which he purchased it—killing weeds as they sprouted and before they blossomed in his yard." Id. at 9.

**CIVIL MINUTES – GENERAL**   **'O'**

| Case No. | 2:17-cv-06983-CAS(SKx) | Date | May 17, 2018 |
|---|---|---|---|
| Title | GREGORY ARTHUR v. UNITED INDUSTRIES CORPORATION | | |

Defendant contends that plaintiff's assertion will require a specific examination into how he used the product—whether he mixed the Concentrate appropriately or followed the correct process for applying it—and defendant asserts that those issues are unique to his use of the Concentrate and do not overlap with the putative class, whose claims depend instead on how much product they received.  Id.

Defendant further argues that plaintiff used the Concentrate to treat newly emerged weeds before they could blossom, and that this sets him apart from the "reasonable consumer," whom plaintiff alleges used the Concentrate for "general weed control."  Id. Because plaintiff has expressly alleged that a reasonable consumer uses the Concentrate for "general weed control," and because plaintiff purportedly used the product to instead treat "newly emerged weeds," defendant asserts that this difference in expectations means that plaintiff's own expectations are not "typical" of the putative class, and he cannot establish that a class can be certified under Rule 23(a).  Id.

Next, defendant argues that plaintiff has repeatedly analogized this case to Martin v. Monsanto Co., 2017 WL 1115167, notwithstanding that Martin demonstrates that plaintiff here cannot establish typicality.  Id. at 10.  Defendant states that Martin involved allegedly under-filled Roundup concentrate products, and the plaintiff in Martin likewise argued that the "Makes up to" representations were misleading to a reasonable consumer. Id.  In addressing the class certification motion, Judge Walter noted that the class representative must be part of the class and possess the same injury as the class members, and concluded that the plaintiff "presented evidence that she acted like thousands of other purchasers."  Id. (citing Martin, 2017 WL 1115167, at * 4).  Defendant argues that, in contrast, plaintiff here has given testimony that demonstrates he did not act like the class members he seeks to represent insofar as he used the Concentrate for a different purpose, and agrees he never received less product than advertised by the "Makes up to" claim. Id.  Defendant argues that plaintiff's failure to read any part of the label other than the "Makes up to" claim "fundamentally distinguishes him from a reasonable consumer who would have considered the different dilution options in deciding whether to purchase, and how to use, the product."  Id. (citing Arthur Depo. 78:6-20).

Last, defendant argues that plaintiff lacks standing to sue on behalf of the class under Article III and under Rule 23(a) insofar as plaintiff admittedly mixed the Concentrate in such a manner that he "always received" the amount of product advertised on the "Makes up to" label and given that he used the Concentrate to kill newly emerged weeds.  Id. at 11–12.

**CIVIL MINUTES – GENERAL**     **'O'**

| Case No. | 2:17-cv-06983-CAS(SKx) | Date | May 17, 2018 |
|---|---|---|---|
| Title | GREGORY ARTHUR v. UNITED INDUSTRIES CORPORATION | | |

In reply, plaintiff argues that defendant "selectively quotes from [plaintiff's] deposition transcript" to portray him as having used the Concentrate for killing "newly emerged weeds" as opposed to "general weed control." Reply at 1–2. Plaintiff argues that his use of the Concentrate product is consistent with his legal theory that a reasonable purchaser does not have the professional understanding of what constitutes a "newly emerged weed," and does not have the technical expertise to know when it is appropriate to use less concentrate. Id. Plaintiff contends that to satisfy typicality, he only need show that his legal claims are "reasonably co-extensive with those of absent class members; they need not be substantially identical." Id. (citing Hanlon v. Chrysler Corp., 150 F.3d 1011, 1020 (9th Cir. 1998). In this respect, plaintiff argues that he and the absent Class members purchased a product that was under-filled when used for "general weed control," and that they were all similarly misled by defendant's mixing instructions insofar as the instructions fail to explicitly state which option produces the "Makes up to" advertisement on the front label. Id. at 2–3. In sum, plaintiff argues that typicality is satisfied insofar as plaintiff alleges that he and all the Class members were exposed to the same statement and that they were all injured because the Concentrates provided less spray solution than promised when diluted. Id.

With respect to defendant's argument that typicality is not satisfied because plaintiff did not read any other part of the label other than the "Makes up to" claim, plaintiff contends that this does not defeat typicality because defendant fails to demonstrate that a significant portion of the class read the pamphlet or fold-out prior to purchase. Id. at 3. Plaintiff asserts that his failure to read the instructions on the rear label do not subject him to unique defenses that threaten to consume the litigation because a plaintiff's individual experience with the product is irrelevant when the alleged injury under the UCL, FAL, and CLRA is established by an objective test. Id. (citing Bruno v. Quten Research Inst., LLC, 280 F.R.D. 524, 534 (C.D. Cal. 2011)).

As an initial matter, the Court observes that despite defendant's characterization to the contrary, plaintiff's deposition testimony reveals that he used the diluted Concentrate solution to kill newly sprouted weeds in addition to "well-established" grass. Arthur Depo. at 102:19-22; 103:2-3. Nevertheless, "[i]n addition to Article III standing, the named plaintiff must have standing to sue *on the claim that is the basis of the class action*." Judge William W. Schwarzer et al., California Practice Guide: Federal Civil Procedure Before Trial ¶ 10:291.5 (The Rutter Group 2017). This latter question of class action standing may be addressed in a Rule 23(a) typicality or adequacy analysis. See id. (citing Gen. Tel. Co. of Sw. v. Falcon, 457 U.S. 147, 156 (1982) (holding that claim of

discrimination in promotions was not typical of that for discrimination in hiring)); Bruno v. Quten Research Inst., LLC, 280 F.R.D. 524, 530 (C.D. Cal. 2011) ("District courts in California routinely hold that the issue of whether a class representative may be allowed to present claims on behalf of others who have similar, but not identical, interests depends not on standing, but on an assessment of typicality and adequacy of representation."); see also Mazur v. eBay Inc., 257 F.R.D. 563, 568 (N.D. Cal. 2009) (finding that a plaintiff's claims were not typical of the claims of the putative class, and thus could not represent a class with different claims). Thus, given that measures of typicality include "whether other [Class] members have the same or similar injury," the Court will address defendant's "Rule 23(a) standing" concerns here. See Torres, 835 F.3d at 1141.

Upon review of the record, the Court concludes that plaintiff complains of a different *type* of injury than the putative class members, who allegedly "mixed according to the instructions on the back label of the Spectracide Concentrates" and, as a result, received less spray solution than promised. SAC ¶ 41(a). Plaintiff's deposition testimony reveals, instead, that plaintiff "always mixed" the Concentrate product based on his own "mathematical division between the number of ounces in the bottle and the up to number" on the Concentrate label, and that the spray solution "didn't do the job that [he] was expecting it to do, which was kill the weeds." Arthur Depo at 84:7-25; 85:22-86:1-21. This deposition testimony is in tension with the alleged injury in the SAC that the Concentrate products "do not yield the volume, in gallons, as promised on the label, if following the instructions prominently stated on the product's back panel." SAC ¶ 30.

Moreover, the instant action is distinguishable from the Martin action in at least two critical ways: (1) plaintiff, unlike the plaintiff in Martin, did not follow the mixing instructions displayed on the Concentrate product; and (2) the Concentrate labels at issue here are distinct from the Roundup Concentrate labels. See 2017 WL 1115167. In Martin, the Roundup Concentrate promised a certain amount of spray solution yield on the front label, provided a mixing instruction on the rear label that yielded far less than the promise on the front label, and provided additional mixing instructions inside a taped pamphlet attached to the rear label. Id. at *1. Judge Walter reasoned that the plaintiff's claims were sufficiently typical of the class's claims because plaintiff and the class members were exposed to the same misleading statement, and "were all injured in the same manner, i.e., the Roundup Concentrates *provided less spray solution than promised when diluted in accordance with the instructions on the back label*." 2017 WL 1115167, at *4 (emphasis added).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**      **'O'**

| Case No. | 2:17-cv-06983-CAS(SKx) | Date | May 17, 2018 |
|----------|------------------------|------|--------------|
| Title | GREGORY ARTHUR v. UNITED INDUSTRIES CORPORATION | | |

With respect to the first distinction, whereas the plaintiff in <u>Martin</u> was injured because she received less spray solution than promised after mixing according to the Roundup Concentrate's instructions, plaintiff here actually received the promised amount of spray solution *and* admittedly failed to read the Concentrate's "prominently stated" mixing instructions. Specifically, plaintiff received the promised amount of gallons after mixing it according to his *own* calculations, without ever having looked at the back of the Concentrate bottle. <u>See</u> Arthur Depo at 102:4-8 ("Q …The first time you saw the back of the bottle was when you saw it in the complaint; correct? A: The first time I read it, yeah."). Moreover, plaintiff actually received the "Makes up to" amount of spray solution, and revealed during his deposition that he was disappointed in the spray solution's effectiveness. <u>See</u> Arthur Depo at 95:18-21 ("Q: And, again, it's not that it didn't make the ten gallons. Your complaint is that it made the ten gallons, but it wasn't effective in killing the weeds; correct? A: That's the basic of the story, yeah.").

With respect to the second critical difference, plaintiff alleges that many (though not all) of the rear Concentrate labels provide *three* "prominently stated" separate mixing instructions to choose from, unlike the rear label in <u>Martin</u>, which deceptively provided only the most concentrated mixing instruction on the rear label. <u>See</u> 2017 WL 1115167, at *1. Plaintiff also alleges that certain Concentrate products' mixing instructions were buried in the back pamphlet, where customers could not see them. These differences between plaintiff—who did not read the mixing instructions—and putative class members—some who allegedly followed "the instructions prominently stated on the product's back panel," SAC ¶ 30, and some who did not have the instructions available at all, SAC & Ex. 2—demonstrate fundamental distinctions between plaintiff's expectations and injuries and the putative class members' expectations and their resulting injuries.

In light of the above, the Court concludes that plaintiff has not established that his claims are typical of the claims of the proposed class.

### 4. Adequacy of Representation

Last, plaintiff contends that both plaintiff and his counsel are adequate class representatives. Motion at 9. Plaintiff argues that he has standing, is aware of his obligations as a class representative, and is willing to continue prosecuting on behalf of the class. <u>Id.</u> (citing <u>Brazilian Blowout</u>, 2011 WL 10962891, at *5). In addition, plaintiff argues that his class counsel are adequate because they are experienced in consumer protection class actions and other false advertising litigation, have no conflicts of interest,

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | CIVIL MINUTES – GENERAL | | 'O' |
|---|---|---|---|
| Case No. | 2:17-cv-06983-CAS(SKx) | Date | May 17, 2018 |
| Title | GREGORY ARTHUR v. UNITED INDUSTRIES CORPORATION | | |

and will continue prosecuting the action vigorously on behalf of the class. Id. at 9–10 (citing Martin, 2017 WL 1115167, at *5).

In opposition, defendant contends that plaintiff does not have constitutional standing, which is a prerequisite to adequacy under Rule 23(a) insofar as standing guarantees that "the litigant has a personal stake in the outcome," and without that reassurance conflicts of interest may arise between plaintiff and other Class members. Opp'n at 11. In sum, defendant asserts that plaintiff's Concentrates were never "under-filled," and he used the Concentrate to kill "newly emerge weeds," the purpose that corresponds to the "Makes up to" amount on the front label. Id. at 12. Thus, defendant contends that plaintiff's alleged injury is not the same as the class that he purports to represent, and thus he is not an adequate class representative. Id. at 12–13.

Plaintiff replies that because he purchased a product that was ineffective for general weed control, he has suffered damages and has Article III standing to pursue this case. Reply at 4–5 (citing Arthur Depo. at 95:5-17). Plaintiff further asserts that he satisfies the adequacy requirement because he is familiar with his duties as a class representative and is willing to "speak up" on behalf of consumers. Id.

To establish adequacy of representation, the Court must resolve whether "the named plaintiffs and their counsel have any conflicts of interest with other class members" and whether "the named plaintiffs and their counsel will prosecute the action vigorously on behalf of the class." Hanlon, 150 F.3d at 1020. Insofar as the Rule 23(a) inquiries into typicality, commonality, and adequacy appear similar, the Supreme Court has observed that

[t]he commonality and typicality requirements of Rule 23(a) tend to merge. Both serve as guideposts for determining whether under the particular circumstances maintenance of a class action is economical and whether the named plaintiff's claim and the class claims are so interrelated that the interests of the class members will be fairly and adequately protected in their absence. Those requirements therefore also tend to merge with the adequacy-of-representation requirement, although the latter requirement also raises concerns about the competency of class counsel and conflicts of interest.

Gen. Tel. Co. of Sw. v. Falcon, 457 U.S. 147, 156 (1982). As observed *supra*, plaintiff's deposition testimony reveals that plaintiff's injury is premised upon the Concentrate's alleged lack of *efficacy* for the purpose of general weed control. In contrast, the proposed class members' alleged injuries stem from the Concentrate product's failure to yield the "Makes up to" representation when class members mixed the Concentrate according to instructions for "general weed control." Thus, the proposed class members' injuries are distinct injuries premised upon the Concentrate's alleged *under-fill* for the purpose of general weed control. Additionally, plaintiff fails to demonstrate how the proposed class can be limited to only those consumers who purchased the Concentrate products for "general weed control," since consumers who purchased the product for "newly emerged weeds" could not be injured under plaintiff's theory.[4]

Accordingly, although plaintiff and his counsel appear ready and willing to prosecution the action vigorously on behalf of the proposed class, insofar as plaintiff's injury appears distinct from the proposed class members' injuries, and insofar as it is unclear whether certain proposed class members suffered any injury at all, plaintiff fails to demonstrate that he is free from conflicts of interest that may arise with other proposed class members. The Court therefore concludes that plaintiff fails to demonstrate that he can adequately represent the proposed class.

### D.     Rule 23(b)(3) Requirements

Under Rule 23(b)(3), class certification is appropriate "if Rule 23(a) is satisfied" and if "the court finds that [1] the questions of law or fact common to class members predominate over any questions affecting only individual members, and that [2] a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3).

---

[4]     With respect to defendant's Article III standing argument, defendant contends that plaintiff is unable to demonstrate an "injury in fact," and that plaintiff's own damages expert admits that a consumer who used the Concentrate product to treat "newly emerged weeds" would not be damaged. Opp'n at 11. Yet defendant appears to conflate Article III standing with plaintiff's ability to represent the class; insofar as plaintiff alleges that he overpaid for the Concentrate products at issue, plaintiff demonstrates an injury in fact for purposes of Article III standing. Plaintiff's "Rule 23 standing," on the other hand, is the issue squarely before the Court.

| CIVIL MINUTES – GENERAL | | | 'O' |
|---|---|---|---|
| Case No. | 2:17-cv-06983-CAS(SKx) | Date | May 17, 2018 |
| Title | GREGORY ARTHUR v. UNITED INDUSTRIES CORPORATION | | |

### 1. Rule 23(b)(3) Predominance of Liability Issues

"The predominance analysis under Rule 23(b)(3) focuses on 'the relationship between the common and individual issues' in the case, and 'tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation.' " Wang v. Chinese Daily News, Inc., 737 F.3d 538, 545 (9th Cir. 2013) (quoting Hanlon, 150 F.3d at 1022). The predominance inquiry is similar to the one for commonality under Rule 23(a)(2) but it is more rigorous. Hanlon, 150 F.3d at 1019. The "main concern in the predominance inquiry . . . [is] the balance between individual and common issues." In re Wells Fargo Home Mortg. Overtime Pay Litig., 571 F.3d 953, 959 (9th Cir. 2009). "When common questions present a significant aspect of the case and they can be resolved for all members of the class in a single adjudication, there is clear justification for handling the dispute on a representative rather than on an individual basis." Hanlon, 150 F.3d at 1022. In contrast, when "claims require a fact-intensive, individual analysis," then class certification would "burden the court" and be inappropriate. Vinole v. Countrywide Home Loans, Inc., 571 F.3d 935, 947 (9th Cir. 2009). The predominance inquiry begins with an analysis of the elements of the underlying cause of action. Erica P. John Fund, Inc. v. Halliburton Co., 563 U.S. 804, 809 (2011).

Plaintiff asserts that the primary evidence in a false advertising case is the advertising itself, and asserts that to state a claim under the UCL or FAL based on false advertising, it is only necessary to show that members of the public are likely to be deceived. Motion at 11 (citations omitted). Plaintiff contends that if he demonstrates that a representation was likely to deceive under the objective "reasonable consumer" test, then relief is available without "individualized proof of deception, reliance and injury, so long as the named plaintiff [] demonstrate[s] injury and causation." Id. at 12 (citing Guido v. L'Oreal, USA, Inc., 284 F.R.D. 468, 482 (C.D. Cal. 2012)). Plaintiff further argues that the objective tests for deception and materiality renders his claims under the UCL, FAL, and CLRA "ideal for class certification" insofar as they do not require investigation of class members' individual interactions with the product. Id. (citing Tait v. BSH Home Appliances Corp., 289 F.R.D. 466, 480 (C.D. Cal. 2012)). Plaintiff asserts that district courts in California routinely certify consumer class actions arising from alleged violations of the CLRA, FAL, and UCL, and that the predominating common issues here include whether defendant misrepresented that the Concentrate products made more spray solution for advertised applications than they were actually capable of making, and whether these misrepresentations were likely to deceive a reasonable

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**  **'O'**

| Case No. | 2:17-cv-06983-CAS(SKx) | Date | May 17, 2018 |
| Title | GREGORY ARTHUR v. UNITED INDUSTRIES CORPORATION | | |

consumer.  Id. at 13 (citing Johns v. Bayer Corp., 280 F.R.D. 551, 557 (S.D. Cal. 2012); In re Ferrero Litig., 278 F.R.D. 552, 560 (S.D. Cal. 2011)).

### a.    Plaintiff's UCL and FAL Claims

The UCL prohibits "any unlawful, unfair or fraudulent business act or practice and unfair, deceptive, untrue or misleading advertising."  Cal. Bus. & Prof. Code § 17200. The statute is phrased in the "disjunctive," and, as a result, is violated where a defendant's act or practice is unlawful, unfair, or fraudulent.  Prata v. Super. Ct., 91 Cal. App. 4th 1128, 1137 (Cal. Ct. App. 2001).

To succeed under the "fraudulent" prong, plaintiffs "need only show that members of the public are likely to be deceived" by the advertising or marketing campaign, which can be demonstrated by the effect the advertisement has on "the reasonable consumer." In re Tobacco II, 46 Cal.4th at 312 (internal quotation marks and citation omitted); Williams v. Gerber Prods. Co., 552 F.3d 934, 938 (9th Cir. 2008).  To succeed under the "unlawful" prong, a plaintiff that demonstrates violations of the FAL necessarily proves violations of the UCL.  Williams, 552 F.3d at 938.  Last, to succeed under the "unfair" prong, a business practice is "unfair" if it is immoral, unethical, oppressive, unscrupulous, or substantially injurious to consumers.  People v. Casa Blanca Convalescent Homes, Inc., 159 Cal. App. 3d 509, 530 (Cal. Ct. App. 1984).

Similarly, the FAL prohibits the dissemination of advertising that is deceptive, untrue, or misleading.  Cal. Bus. & Prof. Code § 17500.  "Unlike common-law fraud claims that focus on the victim's reliance or damages, the UCL [and FAL] focus[ ] on the perpetrator's behavior: 'to state a claim under either the UCL or the false advertising law ... it is necessary only to show that members of the public are likely to be deceived.' " Berger v. Home Depot USA, Inc., 741 F.3d 1061, 1068 (9th Cir. 2014) (quoting In re Tobacco II Cases, 46 Cal.4th at 312).

In class actions, relief under the UCL and FAL is available "without individualized proof of deception, reliance and injury," so long as the named plaintiff demonstrates reliance, injury, and causation.  Mass. Mut. Life Ins. Co. v. Sup. Ct., 97 Cal. App. 4th 1282, 1289, (Cal .Ct. App. 2002); In re Tobacco II, 46 Cal.4th at 326–27.

As discussed *supra*, plaintiff's deposition testimony reveals that he never read the mixing instructions that are allegedly part of defendant's deceptive packaging, which poses a reliance and causation problem unique to plaintiff.  In particular, based on the

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**          **'O'**

| Case No. | 2:17-cv-06983-CAS(SKx) | Date | May 17, 2018 |
| Title | GREGORY ARTHUR v. UNITED INDUSTRIES CORPORATION | | |

SAC's allegations and plaintiff's deposition testimony, it appears that plaintiff and the proposed class members had varied exposure to defendant's mixing instructions— plaintiff admittedly never read them; some class members followed the mixing instructions on the rear label; and some class members purchased products that buried the instructions inside a taped pamphlet. In Martin, the Roundup Concentrates displayed a *single* set of instructions on the front of the rear label, and in order to prove a class-wide method of reliance, the plaintiff in that case proffered a consumer research study demonstrating that consumers relied on the gallons statement on the front of the Roundup Concentrates. See Case No. 5:16-cv-2168, dkt. 51. The plaintiff also proffered evidence that Monsanto's consumers were actually confused by the Roundup Concentrate's gallons claim, and cited to consumer behavior research supporting her theory of liability that consumers were likely to be confused by the Concentrate's labeling. See id. Here, unlike in Martin, plaintiff offers no class-wide method of proving that defendant's labeling amounts to actionable misrepresentations under the UCL and FAL, despite the variations in product labeling and despite certain product's "prominently stated" mixing instructions—which presumably enable consumers to calculate the gallons yielded for each mixing option. Plaintiff's motion points to no expert declaration or consumer survey demonstrating a class-wide method of proof with respect to liability under these statutes.

Moreover, it appears that plaintiff fails to demonstrate that he can properly represent a class of consumers with respect to the UCL and FAL claims insofar as his deposition testimony reveals that he failed to read the Concentrate's mixing instructions. In Martin, the plaintiff demonstrated actual reliance on the Roundup Concentrate's gallons claim and mixing instruction, which allowed reliance to be imputed to the proposed class members. See Case No. 5:16-cv-2168, dkt. 51. Absent proffering a class-wide method of proof that a reasonable consumer would typically overlook the Concentrate's mixing instructions (as plaintiff did), and would thereby be deceived by the standalone "Makes up to" representations, plaintiff fails to demonstrate reliance for purposes of proving liability under the UCL and FAL on a class-wide basis.

Accordingly, the Court finds that common issues of law and fact do not predominate with respect to plaintiff's UCL and FAL claims.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES – GENERAL          'O'

| Case No. | 2:17-cv-06983-CAS(SKx) | Date | May 17, 2018 |
| Title | GREGORY ARTHUR v. UNITED INDUSTRIES CORPORATION | | |

### b.     CLRA

The CLRA is to be "liberally construed and applied to promote its underlying purposes, which are to protect consumers against unfair and deceptive business practices and to provide efficient and economical procedures to secure such protection." Cal. Civ. Code § 1760. Relief under the CLRA is available to "any consumer who suffers and damage as a result of the use or employment" of any unlawful "method, act, or practice." Cal. Civ. Code § 1780(a). Such damage may result "through the materiality" of an alleged misrepresentation, and material is determined from the perspective of the reasonable consumer. See Parkinson v. Hyundai Mot. Am., 258 F.R.D. 580, 595–96 (C.D. Cal. 2008). " [T]he causation required by the [CLRA] does not make plaintiffs' claims unsuitable for class treatment" because "[c]ausation as to each class member is commonly proved more likely than not by materiality." Mass. Mut., 97 Cal. App. 4th at 1292. Where misrepresentations are sufficiently material, "an inference of reliance may arise as to the entire class." Id. at 1286, (stating that class wide inference of reliance may be based on a material misrepresentation in order to certify CLRA class); but see, Gonzalez v. Proctor and Gamble Co., 247 F.R.D. 616 (S.D. Cal 2007) (denying class certification because although an inference of reliance is permitted when a "single, material misrepresentation was directly made to each class member," the "[p]laintiff's allegations that a class of consumers, who may have seen all, some, or none of the advertisements that form the basis of [p]laintiff's suit, does not allow an inference of common reliance or liability").

In the instant case, the gravamen of plaintiff's allegations is that defendant's "Makes up to" representations are material such that they compel a reasonable customer to believe that the Concentrate products will yield the "Makes up to" representations when mixed according to the instructions for "general weed control." SAC ¶ 19. Furthermore, plaintiff fails to demonstrate that class members are confined to individuals who purchased the Concentrate products for "general weed control." This failure bears on whether the "Makes up to" representations were material to class members, since the "Makes up to" representations *were* in fact accurate with respect to the mixing instructions for "newly emerged weeds," and thus consumers who purchased the product for this purpose would not have been injured. Assuming arguendo that it is possible to demonstrate that a reasonable consumer purchases the Concentrate products for "general weed control," plaintiff provides no class survey, consumer behavior research, or other evidence demonstrating that class members—or reasonable consumers—generally purchase Concentrate products for this purpose. Moreover, due to plaintiff's own

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | **CIVIL MINUTES – GENERAL** | | **'O'** |
|---|---|---|---|
| Case No. | 2:17-cv-06983-CAS(SKx) | Date | May 17, 2018 |
| Title | GREGORY ARTHUR v. UNITED INDUSTRIES CORPORATION | | |

testimony that he never read the allegedly deceptive mixing instructions, defendant was not exposed to—and was therefore not harmed by—defendant's allegedly deceptive mixing instructions that "fail[ed] to explicitly state *which* option produces the 'makes up to' advertisement." SAC ¶ 16. Without proof of his own injury, plaintiff cannot establish through common proof that "material misrepresentations were made to the class members [such that] at least an inference of reliance arises as to the entire class." Mass Mut., 97 Cal. App. 4th at 1292-93. Accordingly, the Court concludes as to plaintiff's CLRA claim that common issues of fact do not predominate over individual ones.

### 2. Rule 23(b)(3) Predominance of Damages Issues

As an initial matter, the Court observes that because plaintiff is an inadequate class representative for consumers who purchased Concentrate products with mixing instructions buried in the taped rear pamphlet, plaintiff is precluded from proffering a damages model for these individuals.

With respect to the Concentrate products that prominently displayed mixing instructions on the front of the rear label, given that plaintiff fails to demonstrate a class-wide method of establishing liability with respect to his UCL, FAL, and CLRA claims, the Court declines to address the predominance of damages issues.

### 3. Superiority and Adequacy

Because plaintiff fails to make out a sufficient showing to satisfy Rule 23(b)(3)'s predominance requirement, the Court need not consider whether the superiority and adequacy requirements are met.

### E. Rule 23(b)(2) Requirements

Plaintiff argues that certification for injunctive relief under Rule 23(b)(2) is proper, and asserts that in the Ninth Circuit, a class may be certified under both (b)(2) and (b)(3). Motion at 18 (citing Smith v. Univ. of Wash. Law Sch., 233 F.3d 1188, 1196 (9th Cir. 2000)). In opposition, defendant argues that on March 23, 2018, the Court ordered that plaintiff's request for injunctive relief should be stricken as preempted by the Federal Insecticide, Fungicide, and Rodenticide Act. Opp'n at 13. For that reason alone, defendant contends, the Court should deny plaintiff's request for certification of a Rule 23(b)(2) injunctive relief class. Id.

**CIVIL MINUTES – GENERAL**          **'O'**

| Case No. | 2:17-cv-06983-CAS(SKx) | Date | May 17, 2018 |
|---|---|---|---|
| Title | GREGORY ARTHUR v. UNITED INDUSTRIES CORPORATION | | |

Given that plaintiff conceded that the FAC's injunctive relief claims were preempted under FIFRA, and because the Court dismissed plaintiff's claim for injunctive relief in its March 23, 2018 Order, the Court declines to certify a class for injunctive relief under Rule 23(b)(2) on the same grounds.

## V.    CONCLUSION

In accordance with the foregoing, the Court **DENIES without prejudice** plaintiff's motion for class certification.

IT IS SO ORDERED.

|  | 00 | : | 00 |
|---|---|---|---|
| Initials of Preparer | | CMJ | |