**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| MICHAEL GRAVES, KEITH GREN, and MICHAEL WHEALEN, on behalf of themselves, all others similarly situated, and the general public,<br><br>                  Plaintiffs,<br><br>   vs.<br><br>UNITED INDUSTRIES CORPORATION,<br><br>                  Defendant. | Case No. 2:17-cv-06983-CAS-SKx<br><br>**<u>CLASS ACTION</u>**<br><br>**[~~PROPOSED~~] JUDGMENT AND ORDER (1.) GRANTING FINAL APPROVAL OF CLASS ACTION SETTLEMENT, (2.) AWARDING CLASS COUNSEL FEES AND EXPENSES, (3.) AWARDING CLASS REPRESENTATIVES INCENTIVE AWARDS, AND (4.) DISMISSING ACTION WITH PREJUDICE**<br><br>**[REDACTED]** |

     Plaintiffs Michael Graves, Keith Gren, and Michael Whealen ("Plaintiffs"), individually and on behalf of the Class defined below, move this Court for final approval of the proposed settlement in the above-captioned action. This Court has reviewed and considered Plaintiffs' Unopposed Motion for Final Approval of Class Action Settlement and supporting materials along with Plaintiffs' Motion for

-1-

*Graves, et al. v. United Industries Corporation*, Case No. 2:17-cv-06983-CAS-SK
[PROPOSED] ORDER GRATING FINAL APPROVAL OF CLASS ACTION SETTLEMENT

Attorneys' Fees, Costs, and Incentive Awards ("Fee Motion") and supporting materials. Now, having fully considered the record and the requirements of law, this Court orders that the Motion for Final Approval and Fee Motion is **GRANTED** as set forth below.

**IT IS THIS 24TH DAY OF FEBRUARY, 2020, THE COURT ORDERED** that the settlement (including all terms of the Settlement Agreement and exhibits thereto) is hereby **GRANTED FINAL APPROVAL**. The Court further finds and orders as follows:

## I.   BACKGROUND

On September 21, 2017, original plaintiff Gregory Arthur ("Arthur") filed this putative class action alleging violations of consumer protection laws against Defendant and on November 27, 2017, Arthur filed a First Amended Class Action Complaint. (ECF Nos. 1, 16). The First Amended Complaint alleged that the "Makes Up To __ Gallons" representation on the Spectracide® Concentrate Products is deceptive because UIC fails to disclose that "the Spectracide Concentrates were in fact only capable of making a fraction of the number of gallons represented when diluted to the same strength as 'Ready-to-use' Spectracide according to UIC's own instructions." (*Id*. at ¶ 16).

On January 12, 2018, UIC moved to dismiss Arthur's First Amended Complaint (ECF No. 22). Then, on January 15, 2018, Arthur filed a Motion for Class Certification and to appoint class counsel. (ECF No. 23). On March 23, 2018, the Court entered an Order granting in part and denying in part UIC's Motion to Dismiss Arthur's First Amended Complaint. (ECF No. 34). The Court dismissed Arthur's request for injunctive relief, but granted him leave to amend to file a Second Amended Complaint. (ECF No. 34). On April 16, 2018, Arthur filed his Second Amended Complaint (ECF No. 39), which UIC answered on April 30, 2018 (ECF No. 40). On May 17, 2018, the Court entered an Order denying Arthur's Motion for

/ / /

Class Certification without prejudice, holding that Arthur could not adequately represent the putative class. (ECF No. 47).

On June 25, 2018, Arthur and UIC filed a Joint Stipulation to dismiss Arthur from the Litigation, for leave to substitute Michael Graves and Keith Gren as plaintiffs and putative class representatives, and for leave for Graves and Gren to file a Third Amended Complaint. (ECF No. 53). On June 26, 2018, the Court entered an Order substituting Graves and Gren as named plaintiffs and proposed class representatives, dismissing Arthur from the Litigation, and granting Graves and Gren leave to file a Third Amended Complaint. (ECF No. 54). On June 28, 2018, Graves and Gren filed their Third Amended Class Action Complaint against UIC (ECF No. 55), which UIC answered on July 19, 2018. (ECF No. 59).

On July 12, 2018, the Court entered an Order staying the Litigation pursuant to a Joint Stipulation filed by Graves, Gren, and UIC seeking time to allow them to engage in settlement discussions (ECF No. 58). On September 7, 2018, Michael Whealen sent UIC a consumer notice and demand letter on behalf of himself and a proposed nationwide class concerning the Products. On May 15, Class Counsel filed a Fourth Amended Complaint adding Whealen as a named Plaintiff in addition to Graves and Gren. (ECF No. 63). The Fourth Amended Complaint also adds a cause of action under the Missouri Merchandising Practices Act, Mo. Rev. Stat. §§ 407.010, *et seq.* in addition to causes of action under California's consumer protection laws. (ECF No. 63 at ¶¶ 52-58).

Plaintiffs and UIC have engaged in substantial discovery. On October 26, 2017, Arthur served a first set of Interrogatories and a first set of Request for Production of Documents on UIC. In exchange for Arthur's agreement to extend UIC's time to serve written responses and objections, UIC produced several documents that were crucial to Arthur's claims in the litigation including the suggested retail prices for the Products, annual sales of the Products, and Product labels that were in use during the class period. On February 16, 2018, UIC served

objections and responses to Arthur's discovery requests. UIC also produced a second batch of documents relating to Plaintiffs' claims, including communications with the Environmental Protection Agency ("EPA") relating to the labels of the Products. Class Counsel sent a meet and confer letter to UIC on March 23, 2018 regarding remaining deficiencies with its written discovery responses. Following extensive meet and confer efforts, the Parties reached an agreement on the scope of Plaintiff's discovery requests.

On January 26, 2018, UIC served a deposition notice on Gregory Arthur that included several document requests. On January 31, 2018, Arthur served objections and responses to UIC's document requests. On February 2, 2018, UIC then took the deposition of Gregory Arthur. In support of Arthur's Motion for Class Certification, Class Counsel submitted an expert report from Charlene L. Podlipna, CPA detailing a proposed class wide damages model. On January 26, 2018, UIC served a Notice of Deposition Duces Tecum on Ms. Podlipna that contained several document requests. On February 14, 2018, Class Counsel served objections and responses to the document requests that were served on Ms. Podlipna. On February 16, 2018, UIC took the deposition of Ms. Podlipna on topics relating to her expert opinion and report. After Plaintiffs Graves and Gren filed their Third Amended Complaint, UIC promptly began pursuing discovery from the new named Plaintiffs. Marron Decl., ¶ 9. On June 29, 2018, UIC served a Notice of Deposition Duces Tecum on Plaintiff Gren that contained several document requests. UIC then took the deposition of Plaintiff Keith Gren on July 12, 2018. Plaintiff Gren's deposition lasted more than five hours.

Following Plaintiff Gren's deposition, the Parties began engaging in preliminary settlement discussions. During the course of several months the Parties engaged in hard-fought settlement negotiations that resulted in the Settlement Agreement. The several months that it took to work out significant details and vigorous disagreements between the parties demonstrate that this proposed

resolution was the product of heavily disputed and arm's length negotiation.

On June 3, 2019, Plaintiffs filed an Unopposed Motion for Preliminary Approval of the class action settlement with Defendant. (ECF No. 64-1). On June 27, 2019, the Court entered an Order Denying Plaintiffs' Motion for Preliminary Approval Without Prejudice, and ordered Plaintiffs to file an amended motion to address the requirements of Rule 23(e)(3). (ECF No. 65). On August 19, 2019, Plaintiffs filed a Renewed Motion for Preliminary Approval of the class action settlement, which the Court granted on September 18, 2019. (ECF Nos. 71, 77). In its preliminary approval order, the Court conditionally certified the nationwide settlement class noting that the requirement of Federal Rules of Civil Procedure 23(a) and 23(b)(3) had been satisfied. (ECF No. 77 at 12-18). The Court also preliminarily approved the settlement noting that the relevant factors weighed in favor of approval. (ECF No. 77 at 4-12).

## II.    **<u>SUMMARY OF SETTLEMENT</u>**

Plaintiffs now move for final approval of a Settlement Class defined as follows:

> All persons residing in the United States who during the Class Period[1] purchased in any state, for personal or household use and not for resale or distribution, any of the Products.[2, 3]

The Settlement Agreement provides that UIC will pay $2,500,000.00 into a settlement fund. Agreement at § 7.4. This fund will be used, among other things, to pay authorized claims to the Settlement Class Members, to pay the costs of

---

[1] The term "Class Period" means September 21, 2013 to the date on which the Notice is disseminated to the Settlement Class. Agreement at § 2.7.

[2] The term "Products" means UIC's herbicide products that are (a) sold under the "Spectracide®" tradename and (b) are sold in a "concentrate" product form (in other words, designed to be manually mixed by consumers with water prior to use on targeted vegetation). Agreement at § 2.20.

[3] The Settlement Class specifically excludes (1) any judicial officer presiding over the Litigation, (2) UIC and Released Parties, and each of their current or former officers, directors, and employees, (3) legal representatives, successors, or assigns of any such excluded person, and (4) any person who properly executes and files a timely Request for Exclusion. Ageement at § 2.26.

settlement administration and notice to the Class Members, to pay Class Counsel's fees and expenses, and to pay incentive awards to the named Plaintiffs. Agreement at § 7.6. For Authorized Claimants, UIC will provide $6.25 in cash from the Settlement Fund for each Claim submitted by a household, with a limit of four (4) Claims per household (total payable per household in no event to exceed $25, unless distribution is increased pro rata). Agreement at § 7.2.1. The settlement provides for a *pro rata* reduction if the claims exceed the amount in the settlement fund (Agreement at § 7.2.3) or a pro rata increase if the settlement fund is not exhausted. Agreement at § 7.2.3.  If after all accepted Claims (plus other authorized fees, costs and expenses) are paid and money remains in the Settlement Fund after pro rata distribution to Authorized Claimants, any remaining settlement funds thereafter will be awarded cy pres to the National Advertising Division of the Better Business Bureau.

In addition to monetary relief, UIC agrees to the following injunctive relief: If, with respect to any Product manufactured by UIC after June 1, 2020, UIC elects to state on its Product label that such Product "Makes Up to ___ Gallons" of end-use herbicide, Defendant shall include on such labeling, mixing directions that are acceptable to EPA-equivalent agencies of the State(s) in which the Product is registered for sale (such acceptability being deemed by virtue of such agency(ies) registration of such Product). The ultimate timing and content of any label changes shall be at the sole discretion of UIC.  Agreement at § 7.3.

### III.  NOTICE AND CLAIMS PROCESS

The Court finds that the Class has received the best notice practicable and that the notice complies with due process requirements. The Parties' selection and retention of Classaura LLC as the Notice Administrator was reasonable and appropriate.  Based on the Declaration of Gajan Retnasaba, the Court hereby finds that the Settlement Notices were published to the Class Members substantially in the form and manner approved by the Court in its Preliminary Approval Order.  The

Settlement Notices provided fair, effective and the best practicable notice to the Class of the Settlement and the terms thereof. The Notices also informed the Class of Plaintiff's intent to seek attorneys' fees, costs, and incentive payments, and set forth the date, time, and place of the Fairness Hearing and Class Members' rights to object to the Settlement or Fee Motion and to appear at the Fairness Hearing. The Court further finds that the Settlement afforded Class members a reasonable period of time to exercise such rights. *See Weeks v. Kellogg Co.*, 2011 U.S. Dist. LEXIS 155472, at *82 (C.D. Cal. Nov. 23, 2011) (class members' deadline to object or opt out must arise after class counsel's fee motion is filed); *In re Mercury Interactive Corp. Secs. Litig.*, 618 F.3d 988, 994 (9th Cir. 2010) (same). The Settlement Notices fully satisfied all notice requirements under the law, including the Federal Rules of Civil Procedure, the requirements of the California Legal Remedies Act, Cal. Civ. Code § 1781, and all due process rights under the U.S. Constitution and California Constitutions. The Court also finds that Defendant has satisfied all notice requirements of the Class Action Fairness Act of 2005 ("CAFA"), 28 U.S.C. § 1715, as attested to by the Retnasaba Declaration. The Court has received no objection or response to the Settlement agreement by any federal or state official, including any recipient of the foregoing notices.

To date, Classaura has received 84,572 claim forms from prospective class members. Out of the total claim forms received, Classaura has found 16,605 claim forms to be invalid due to being duplicative or not meeting the settlement criteria. Classaura estimates that there will be approximately 67,967 valid claim forms. Settlement Class members are eligible to request payment for up to four purchases per household on their claim forms. The average claim form reported 3.6 purchases. Thus, Classaura estimates that the total number of valid claims that will be paid is 248,042. In addition, there have been no requests for exclusion from the settlement and no class members have objected to the settlement.

## IV. APPROVAL OF CLASS ACTION SETTLEMENT

Approval of a proposed class action settlement is governed by Federal Rule of Civil Procedure 23(e). "[T]he 2018 amendment to Rule 23(e) establishes core factors district courts must consider when evaluating a request to approve a proposed settlement." *Zamora Jordan v. Nationstar Mortg., LLC*, No. 2:14-CV-0175-TOR, 2019 WL 1966112, at *2 (E.D. Wash. May 2, 2019).

Rule 23(e) now provides that the Court may approve a class action settlement "only after a hearing and only on a finding that it is fair, reasonable, and adequate after considering whether:

(A) the class representatives and class counsel have adequately represented the class;

(B) the proposal was negotiated at arm's length;

(C) the relief provided for the class is adequate, taking into account:

(i) the costs, risks, and delay of trial and appeal;

(ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;

(iii) the terms of any proposed award of attorney's fees, including timing of payment; and

(iv) any agreement required to be identified under Rule 23(e)(3); and

(D) the proposal treats class members equitably relative to each other." Fed. R. Civ. P. 23(e)(2).

"Under Rule 23(e), both its prior version and as amended, fairness, reasonableness, and adequacy are the touchstones for approval of a class-action settlement." *Zamora*, 2019 WL 1966112, at *2. "The purpose of the amendment to Rule 23(e)(2) is establish [sic] a consistent set of approval factors to be applied uniformly in every circuit, without displacing the various lists of additional approval factors the circuit courts have created over the past several decades." *Id*. Factors that the Ninth Circuit have typically considered include (1) the strength of plaintiffs'

case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action status throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery completed and the stage of the proceedings; and (6) the experience and views of counsel. *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998); *Churchill Vill., L.L.C. v. Gen. Elec.*, 361 F.3d 566, 575 (9th Cir. 2004).

"While the Ninth Circuit has yet to address the amendment to Rule 23(e)(2) . . . the factors in amended Rule 23(e)(2) generally encompass the list of relevant factors previously identified by the Ninth Circuit." *Zamora*, 2019 WL 1966112, at *2 (alteration in original). Indeed, "[t]he goal of this amendment is not to displace any factor, but rather to focus the court and the lawyers on the core concerns of procedure and substance that should guide the decision whether to approve the proposal." Fed. R. Civ. P. 23(e)(2) advisory committee's note to 2018 amendment. "Accordingly, the Court applies the framework set forth in Rule 23 with guidance from the Ninth Circuit's precedent, bearing in mind the Advisory Committee's instruction not to let '[t]he sheer number of factors' distract the Court and parties from the 'central concerns' underlying Rule 23(e)(2)." *In re Extreme Networks, Inc. Securities Litigation*, No. 15-CV-04883-BLF, 2019 WL 3290770, at *6 (N.D. Cal. July 22, 2019); *see also Hefler v. Wells Fargo & Co.*, No. 16-CV-05479-JST, 2018 WL 6619983, at *4 (N.D. Cal. Dec. 18, 2018).

## A.   ADEQUATE REPRESENTATION

A determination of adequacy of representation requires that "two questions be addressed: (a) do the named plaintiffs and their counsel have any conflicts of interest with other class members and (b) will the named plaintiffs and their counsel prosecute the action vigorously on behalf of the class?" *In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 462 (9th Cir. 2000), *as amended* (June 19, 2000) (citing *Hanlon*, 150 F.3d at 1020); *see also Hefler*, 2018 WL 6619983, at *6.

-8-

*Graves, et al. v. United Industries Corporation*, Case No. 2:17-cv-06983-CAS-SK
[PROPOSED] ORDER GRATING FINAL APPROVAL OF CLASS ACTION SETTLEMENT

The Court finds that Class Counsel and the Class Representatives have adequately represented the Class. The proposed class representatives in this action have no conflicts of interest with other class members and each have prosecuted this action vigorously on behalf of the Class. Each of the named Plaintiffs have suffered the same injuries as the absent class members because each purchased a Spectracide® Concentrate product, for personal and household use, in reliance on the "Makes Up To ___" gallons statement on the front of the label which they took to mean would, in fact, make up to the advertised amount of gallons when used as directed for general weed control. (*See* Fourth Amended Complaint, ECF No. 63 at ¶¶ 30-32). Each of the named Plaintiffs have been dedicated to vigorously pursuing this action on behalf of the class and each have kept themselves informed about the status of the proceedings.

Class Counsel have also vigorously represented the Class and have no conflicts of interest. The Settlement was negotiated by counsel with extensive experience in consumer class action litigation. Through the discovery process, Class Counsel obtained sufficient information and documents to evaluate the strengths and weaknesses of the case. The information reviewed by class counsel includes sales information for the Spectracide® Concentrate products during the class period, the labels for the Spectracide® Concentrate products in use during the class period, and Defendant's communications with the Environmental Protection Agency ("EPA") relating to the labels of the Products. Class Counsel have concluded that the Settlement provides exceptional results for the class while sparing the class from the uncertainties of continued and protracted litigation. *See, e.g., In re Omnivision Techs., Inc.*, 559 F. Supp. 2d 1036, 1043 (N.D. Cal. 2008) ("The recommendations of plaintiffs' counsel should be given a presumption of reasonableness."); *Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948, 976 (9th Cir. 2009) (Deference to Class Counsel's evaluation of the Settlement is appropriate because "[p]arties represented by

competent counsel are better positioned than courts to produce a settlement that fairly reflects each party's expected outcome in litigation.").

Accordingly, the Court finds that Class Counsel and the Class Representatives have been diligent in their representation of the class.

## B. ARM'S LENGTH NEGOTIATIONS

Regarding the negotiation process, the Court finds that the Settlement Agreement is the result of an adversarial, non-collusive, and arms-length negotiation. The Parties did not begin settlement discussions until after the Court had ruled on Defendant's motion to dismiss (ECF No. 34) and Plaintiff Arthur's motion for class certification (ECF No. 46). Settlement discussions also did not begin until after the Parties had exchanged written discovery and documents, which speaks to the fundamental fairness of the process. *See Nat'l Rural Telecommunications Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 528 (C.D. Cal. 2004) ("A settlement following sufficient discovery and genuine arms-length negotiation is presumed fair."). The several months that it took to work out significant details and vigorous disagreements between the parties demonstrate that this proposed resolution was the product of heavily disputed and arm's length negotiation. The settlement negotiations were hard-fought, with both Parties and their counsel thoroughly familiar with the applicable facts, legal theories, and defenses on both sides.

Accordingly, the Court finds no signs of conflicts of interest, collusion, or bad faith in the parties' settlement negotiation process.

## C. ADEQUATE RELIEF

The Court concludes that the relief provided for the Class is adequate. UIC has agreed to settle this matter for a non-reversionary total of $2,500,000. Agreement at § 7.4. As explained in the Court's Preliminary Approval Order (ECF No. 77), the $2,500,000 nationwide settlement amount is reasonable considering that damages would be limited to a fraction of total sales if Plaintiffs were to prevail at trial.

-10-

As previously explained by Plaintiffs' damages expert, Charlene L. Podlipna, CPA, the Spectracide® Concentrate products allegedly are underfilled by 36% to 38% based on Plaintiffs' claims that reasonable consumers' intend purpose for the Products is "general weed control." (ECF No. 23-14 [Podlipna Decl., ¶ 13]). Damages for the nationwide class would be based on the Benefit of the Bargain method, which is based on the difference between the amount Plaintiffs reasonably expected to receive and the actual amount received. (ECF No. 23-14 [Podlipna Decl., ¶ 15]). Accordingly, the projected maximum for nationwide class damages would be approximately $[Redacted] if Plaintiffs were to prevail at trial. ($[Redacted] nationwide sales x .38 underfill percentage = $[Redacted]). The $2,500,000 settlement fund accounts for [Redacted]% of total damages that would be available at trial, which is well within the range of reason. *See, e.g., Stovall-Gusman v. W.W. Granger, Inc.*, No. 13-cv-02540-HSG, 2015 WL 3776765, at *4 (N.D. Cal. June 17, 2015) (granting final approval of a net settlement amount representing 7.3% of the plaintiffs' potential recovery at trial); *Balderas v. Massage Envy Franchising, LLC*, No. 12-cv-06327NC, 2014 WL 3610945, at *5 (N.D. Cal. July 21, 2014) (granting preliminary approval of a net settlement amount representing 5% of the projected maximum recovery at trial); *Ma v. Covidien Holding, Inc.*, No. SACV 12-02161-DOC (RNBx), 2014 WL 360196, at *5 (C.D. Cal. Jan. 31, 2014) (finding a settlement worth 9.1% of the total value of the action "within the range of reasonableness"); *Downey Surgical Clinic, Inc. v. Optuminsight, Inc.*, No. CV09-5457PSG (JCx), 2016 WL 5938722 at *5 (C.D. Cal. May 16, 2016) (granting final approval where recovery was as low as 3.21% of potential recovery at trial).

The amount of recovery per class member is also adequate considering that Settlement Class Members can claim $6.25 in cash from the Settlement Fund for each Claim submitted by a household, with a limit of four (4) claims per household (total payable per household in no event to exceed $25, unless distribution is increased pro rata). Agreement at § 7.2.1. This recovery is significant considering

that a 64-ounce bottle of Spectracide® Concentrate, the most expensive bottle size, sells for approximately $30.00 at retail stores like Home Depot. The $6.25 recovery per purchase (up to four purchases per household) for each Settlement Class member is an excellent result considering it represents a large fraction of total damages that would be recoverable at trial. Indeed, $6.25 represents approximately 57.8% of the total potential recovery for purchasers of the 64-ounce bottle size ($30.00 x .36 underfill amount for 64-ounce bottle size = $10.80). Moreover, the settlement agreement provides for injunctive relief, which further supports the adequacy of relief to the class. Agreement at § 7.3.

The amount of recovery per claimant is also adequate considering that Settlement Class Members can claim $6.25 in cash from the Settlement Fund for each Claim submitted by a household, with a limit of four (4) claims per household (total payable per household in no event to exceed $25, unless distribution is increased pro rata). Agreement at § 7.2.1. Here, approximately 67,967 valid claim forms were submitted by settlement class members and 248,042 valid claims will be paid by the settlement administrator. Once notice and administration costs along with Plaintiffs' attorneys' fees, costs, and incentive awards are deducted from the $2,500,000 Settlement Fund, there will be approximately $1,702,477.37 available for distribution to the Settlement Class. This means that there will be a slight *pro rata* increase and $6.86 will be paid for each valid and timely claim submitted. ($1,702,477.37 in available funds for distribution / 248,042 valid claims = $6.86 per claim). Because the average valid claim form reported 3.6 purchases, average settlement class members will receive approximately $24.69. This recovery is significant considering that a 64-ounce bottle of Spectracide® Concentrate, the most expensive bottle size, sells for approximately $30.00 at retail stores. Accordingly, the Court finds that the amount offered in the settlement is adequate.

/ / /

/ / /

-12-

**1.      Costs, risks, and delay of trial and appeal**

The Court concludes that the costs, risks, and delay of trial and appeal further support final approval. Proceeding in this litigation in the absence of settlement poses various risks such as failing to certify a class, having summary judgment granted against Plaintiffs, or losing at trial. Such considerations have been found to weigh heavily in favor of settlement. *See Rodriguez*, 563 F.3d at 966; *Curtis-Bauer v. Morgan Stanley & Co., Inc.*, No. C 06-3903 TEH, 2008 WL 4667090, at *4 (N.D. Cal. Oct. 22, 2008) ("Settlement avoids the complexity, delay, risk and expense of continuing with the litigation and will produce a prompt, certain, and substantial recovery for the Plaintiff class."). Even if Plaintiffs are able to certify a class, there is also a risk that the Court could later decertify the class action. *See In re Netflix Privacy Litig.*, No. 5:11-cv-00379 EJD, 2013 WL 1120801, at *6 (N.D. Cal. Mar. 18, 2013) ("The notion that a district court could decertify a class at any time is one that weighs in favor of settlement.") (internal citations omitted). The Settlement eliminates these risks by ensuring Class Members a recovery that is "certain and immediate, eliminating the risk that class members would be left without any recovery . . . at all." *Fulford v. Logitech, Inc.*, No. 08-cv-02041 MNC, 2010 U.S. Dist. LEXIS 29042, at *8 (N.D. Cal. Mar. 5, 2010).

**2.      Effectiveness of proposed method of distributing relief to the Class**

The Court finds that the claims process was straightforward and allows Settlement Class members to make a claim by submitting a valid and timely Claim Form to the Settlement Administrator without complication. *See In re Toyota Motor Corp. Unintended Acceleration Mktg., Sales Practices, & Prod. Liab. Litig.*, No. 8:10ML 02151 JVS, 2013 WL 3224585, at *18 (C.D. Cal. June 17, 2013) ("The requirement that class members download a claim form or request in writing a claim form, complete the form, and mail it back to the settlement administrator is not onerous.").

/ / /

-13-

*Graves, et al. v. United Industries Corporation*, Case No. 2:17-cv-06983-CAS-SK
[PROPOSED] ORDER GRATING FINAL APPROVAL OF CLASS ACTION SETTLEMENT

The Settlement Agreement here provides for *pro rata* distribution to class, which will ensure that class members receive as much as the settlement fund as possible. Agreement at § 7.2.3. As discussed above, there will be a slight *pro rata* increase and approximately $6.86 will be paid out for each of the estimated 248,042 valid claims submitted. If any amounts remain in the settlement fund following a *pro rata* distribution to class members, then the remaining funds will thereafter be awarded *cy pres* to the National Advertising Division of the Better Business Bureau ("NAD"). Agreement at § 7.2.3. The proposed *cy pres* recipient will only receive funds that are no longer economically feasible to distribute to the class after a *pro rata* distribution. Courts have previously approved NAD as a suitable cy pres recipient. *See Rawa v. Monsanto Co.*, No. 4:17CV01252 AGF, 2018 WL 2389040, at *11 (E.D. Mo. May 25, 2018) (approving NAD as a cy pres recipient and noting that it "monitors national advertising in all media for goods and services, enforce[es] high standards of truth and accuracy, and accepts complaints from consumers"). Accordingly, the Court appoints NAD as the cy pres recipient and approves the proposed method of distribution.

### 3. The Requested Attorneys' Fees, Costs, and Incentive Awards Are Fair and Reasonable

Class Counsel has fully addressed the reasonableness of the fee request in Plaintiffs' Motion for Attorneys' Fees, Costs, and Incentive Awards that was filed on January 6, 2020. (ECF No. 78-1). Pursuant to Federal Rule of Civil Procedure 23(h), the Court orders that Class Counsel is entitled to reasonable attorneys' fees incurred in connection with the action in the amount of $625,000.00, to be paid at the time and in the matter provided in the Settlement Agreement. (ECF No. 71-3). The fee award sought in the present case is reasonable when judged by the standards of this circuit. *See, e.g., In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 941 (9th Cir. 2011). The $625,000.00 fee award accounts for 25% of the $2,500,000.00 Settlement Fund and is well within the percentage range that courts

-14-

*Graves, et al. v. United Industries Corporation*, Case No. 2:17-cv-06983-CAS-SK
[PROPOSED] ORDER GRATING FINAL APPROVAL OF CLASS ACTION SETTLEMENT

have allowed in the Ninth Circuit. *Id.* at 942; *see also Vasquez v. Coast Valley Roofing, Inc.*, 266 F.R.D. 482, 491 (E.D. Cal. 2010) ("typical range of acceptable attorneys' fees in the Ninth Circuit is 20% to 33 1/3 % of total settlement value"); *Hopkins v. Stryker Sales Corp.*, No. 11-2786, 2013 WL 2013 WL 496358, at *1 (N.D. Cal. Feb. 6, 2013) (acknowledging same and awarding 30%); *In re Activision Sec. Litig.*, 723 F. Supp. 1373, 1377 (N.D. Cal. 1989) ("[a] review of recent reported cases discloses that nearly all common fund awards range around 30%"); *Pokorny v. Quixtar, Inc.*, No. 07-00201 SC, 2013 WL 3790896, *1 (N.D. Cal. July 18, 2013) (acknowledging same, stating 30% award is "the norm absent extraordinary circumstances that suggest reasons to lower or increase the percentage" and granting fee request of 27.3%); *see also In re Pacific Enters. Sec. Litig.*, 47 F.3d 373, 379 (9th Cir. 1995) (award of 33% of settlement fund as fees affirmed).

Class Counsel's fee request is also reasonable under the lodestar method. Class Counsel's total lodestar in this action equals $545,052.50. Accordingly, the $625,000.00 fee award results in a positive multiplier of 1.146. *See Wershba v. Apple Computer, Inc.*, 91 Cal. App. 4th 224, 255 (2001) ("Multipliers can range from 2 to 4, even higher."); *Van Vranken v. Atlantic Richfield Co.*, 901 F. Supp. 294, 298 (N.D. Cal. 1995) (3-4 are in the "range [of] common" multipliers for sophisticated class actions). Moreover, the fee award is justified based on the excellent results obtained, the experience and skill of Counsel, the complexity of issues, the risk of non-payment, and the preclusion of other work.

Based on the declaration submitted by Class Counsel in support of the Fee Motion, the Court finds that Class Counsel have incurred out-of-pocket litigation expenses (paid and un-reimbursed) in the amount of $32,090.63. Accordingly, the Court further awards Class Counsel $32,090.63 in litigation costs, to be paid at the time and manner provided in the Settlement Agreement.

The Court finds that the Class Representatives in this action have actively participated in and assisted Class Counsel with this litigation for the substantial

benefit of the Class. Each of the Class Representatives have reviewed material filings; have had continuous communications with Class Counsel throughout the litigation; have reviewed and approved the Settlement Agreement; and were committed to securing substantive relief on behalf of the Class. The Court further finds that the requested incentive awards are presumptively reasonable are in line with Ninth Circuit authority. *See Wren v. RGIS Inventory Specialists*, No. C-06-05778 JCS, 2011 WL 1230826, at *36 (N.D. Cal. Apr. 1, 2011) ("there is ample case law finding $5,000 to be a reasonable amount for an incentive payment."). Accordingly, the Court awards incentive payments as follows: (a.) $3,000 incentive payment to Plaintiff Michael Graves; (b.) $3,000 incentive payment to Plaintiff Michael Whealen; and (c.) $5,000 incentive payment to Plaintiff Keith Gren. The Court finds that the incentive payment to Plaintiff Keith Gren is reasonable in light of the fact he sat for a deposition on July 12, 2018 and that he incurred additional time and expense for appearing at the deposition.

### 4. *Agreements required to be identified under Rule 23(e)(3)*

The Court has not been advised of any side agreements made in connection with the proposed settlement pursuant to Rule 23(e)(3). Thus, there is nothing for the Court to consider.

### D. The Settlement Agreement Treats Class Members Equitably

The Court finds that the apportionment of relief among Class Members treats class members equitably. As discussed above, each valid claim submitted will be paid approximately $6.86 following a slight *pro rata* increase. Because each class member is treated equally, the Court approves the settlement as fair, reasonable, and adequate.

### E. The Absence of Governmental Participation Supports Final Approval

Although CAFA does not create an affirmative duty for either state or federal officials to take any action in response to a class-action settlement, CAFA presumes

that—once put on notice—state or federal officials will "raise any concerns that they may have during the normal course of the class action settlement procedures." *Garner v. State Farm Mut. Auto. Ins. Co.*, No. CV 08-1365, 2010 WL 1687832, at *14 (N.D. Cal. Apr. 22, 2010); *see also LaGarde v. Support.com, Inc.*, No. C 12-0609, 2013 WL 1283325, at *7 (N.D. Cal. Mar. 26, 2013) (same); *In re Netflix Privacy Litig.*, No. 5:11-cv-00379, 2013 WL 1120801 at *8 (N.D. Cal. Mar. 18, 2013) (same). To date, no state or federal official has raised any objection to the settlement.

### F. The Reaction of the Class Has Been Favorable

It is well established that "the absence of a large number of objections to a proposed class action settlement raises a strong presumption that the terms of a proposed class settlement action are favorable to the class members." *Nat'l Rural Telecomms. Coop.*, 221 F.R.D. at 529 (collecting cases). Here, the Court finds that the response from Class members has been overwhelmingly positive. There have been no requests for exclusion and no objections have been filed. This positive reaction to the Settlement indicates that this Court "'may appropriately infer that [the] class action settlement is fair, adequate, and reasonable when few class members object to it.'" *Garner*, 2010 WL 1687832, at *14.

## V. CERTIFICATION OF THE SETTLEMENT CLASS

When presented with a proposed settlement, a court must first determine whether the proposed settlement class satisfies the requirements for class certification under Rule 23. In assessing those class certification requirements, a court may properly consider that there will be no trial. *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 620 (1997) ("Confronted with a request for settlement-only class certification, a district court need not inquire whether the case, if tried, would present intractable management problems . . . for the proposal is that there be no trial."). For the reasons below, the Court finds that the Settlement Class meets the requirements of Rule 23(a) and (b).

### A. Rule 23(a)

#### 1. *Numerosity*

Rule 23(a)(1) requires that "the class is so numerous that joinder of all members is impracticable." *See* Rule 23(a)(1). "As a general matter, courts have found that numerosity is satisfied when class size exceeds 40 members, but not satisfied when membership dips below 21." *Slaven v. BP Am., Inc.*, 190 F.R.D. 649, 654 (C.D. Cal. 2000). Here, the proposed class is comprised of tens of thousands of consumers who purchased the Class Products. To date, the settlement administrator has received 67,967 valid claim forms. Accordingly, the Court finds that the numerosity requirement is satisfied.

#### 2. *Commonality*

Rule 23(a)(2) requires the existence of "questions of law or fact common to the class." See Rule 23(a)(2). Commonality is established if plaintiffs and class members' claims "depend on a common contention," "capable of class-wide resolution . . . [meaning] that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011). Because the commonality requirement may be satisfied by a single common issue, it is easily met.

The Court finds that there are ample issues of both law and fact here that are common to the members of the Class. All of the Class Members' claims arise from a common nucleus of facts and are based on the same legal theories. Plaintiffs allege that UIC's "Makes Up To __" gallons statement on the Spectracide® Concentrate Product labels is false and misleading because the Products yield only a fraction of the advertised "Makes Up To" amount when mixed for "general weed control" purposes. These alleged misrepresentations were made in a uniform manner to each of the Class Members. Accordingly, commonality is satisfied by the existence of these common factual issues. *See Arnold v. United Artists Theatre Circuit, Inc.*, 158 / / /

F.R.D. 439, 448 (N.D. Cal. 1994) (commonality requirement met by "the alleged existence of common discriminatory practices").

Second, Plaintiffs' claims are brought under legal theories common to the Class as a whole. Alleging a common legal theory alone is enough to establish commonality. *See Hanlon*, 150 F.3d at 1019 ("All questions of fact and law need not be common to satisfy the rule. The existence of shared legal issues with divergent factual predicates is sufficient, as is a common core of salient facts coupled with disparate legal remedies within the class."). Here, all of the legal theories asserted by Plaintiffs are common to all Class Members. Given that there are virtually no issues of law which affect only individual members of the Class, the Court finds that commonality is satisfied.

### 3. Typicality

Rule 23(a)(3) requires that the claims of the representative plaintiffs be "typical of the claims . . . of the class." *See* Rule 23(a)(3). "Under the rule's permissive standards, representative claims are 'typical' if they are reasonably coextensive with those of absent class members; they need not be substantially identical." *See Hanlon*, 150 F.3d at 1020. In short, to meet the typicality requirement, the representative plaintiffs simply must demonstrate that the members of the settlement class have the same or similar grievances. *Gen. Tel. Co. of the Sw. v. Falcon*, 457 U.S. 147, 161 (1982).

The Court finds that the claims of the named Plaintiffs are typical of those of the Class. Like those of the Class, their claims arise out of the purchase of Spectracide® Concentrate products for personal or household use after relying on UIC's allegedly misleading "Makes Up To ___" gallons representations. The named Plaintiffs have precisely the same claims as the Class and must satisfy the same elements of each of their claims, as must other Class Members. Supported by the same legal theories, the named Plaintiffs and all Class Members share claims based on the same alleged course of conduct. The named Plaintiffs and all Class Members

have been injured in the same manner by this conduct. Therefore, the typicality requirement is satisfied.

### 4. *Adequacy*

The final requirement of Rule 23(a) is set forth in subsection (a)(4) which requires that the representative parties "fairly and adequately protect the interests of the class." *See* Rule 23(a)(4). As discussed above, the Court finds that Class Counsel and the Class Representatives have adequately represented the Class. Accordingly, the Court hereby appoints Plaintiffs Michael Graves, Keith Gren, and Michael Whealen as Class Representatives for the Settlement Class. The Court also appoints the Law Offices of Ronald A. Marron, APLC as Settlement Class Counsel to Federal Rule of Civil Procedure 23(g).

### B. Rule 23(b)(2)

In addition to meeting the prerequisites of Rule 23(a), Plaintiffs must also meet one of the three requirements of Rule 23(b) to certify the proposed class. *See Zinser v. Accufix Research Inst., Inc.*, 253 F.3d 1180, 1186 (9th Cir. 2001). Under Rule 23(b)(3), a class action may be maintained if "the court finds that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." *See* Rule 23(b)(3). Certification under Rule 23(b)(3) is appropriate and encouraged "whenever the actual interests of the parties can be served best by settling their differences in a single action." *Hanlon*, 150 F.3d at 1022.

### 1. *Predominance*

The Court finds that the proposed Class is well-suited for certification under Rule 23(b)(3) because questions common to the Class Members predominate over questions affecting only individual Class Members. Predominance exists "[w]hen common questions present a significant aspect of the case and they can be resolved for all members of the class in a single adjudication." *Id.* As the U.S. Supreme Court

-20-

has explained, when addressing the propriety of certification of a settlement class, courts take into account the fact that a trial will be unnecessary and that manageability, therefore, is not an issue. *Amchem*, 521 U.S. at 619-62. In this case, common questions of law and fact exist and predominate over any individual questions, including, in addition to whether this settlement is reasonable (*see Hanlon*, 150 F.3d at 1026-27), *inter alia*: (1) whether UIC's representations regarding its "Makes up to ___" gallons claim were false and misleading or reasonably likely to deceive consumers; (2) whether UIC violated the CLRA, UCL, FAL and the MMPA; (3) whether UIC had defrauded Plaintiff and the Class Members; and (4) whether the Class has been injured by the wrongs complained of, and if so, whether Plaintiffs and the Class are entitled to damages, injunctive and/or other equitable relief, including restitution, and if so, the nature and amount of such relief.

There are also no concerns here about certifying a nationwide settlement class under *Mazza v. Am. Honda Motor Co.*, 666 F.3d 581, 590 (9th Cir. 2012). In *Mazza*, the Ninth Circuit held that, when certifying a nationwide class, the burden is on the defendant to show "'that foreign law, rather than California law, should apply to class claims.'" *See also In re MDC Holdings Securities Litigation*, 754 F. Supp. 785, 803–04, 808 (S.D. Cal. 1990) (the "court presumes that California law controls unless and until defendants show that choice of law problems render the common law claims inappropriate for class treatment."); *In re Seagate Technologies Sec. Litigation*, 115 F.R.D. 264, 269, 274 (N.D. Cal. 1987) (applying California law to nationwide class because "[a]bsent the defendant carrying [its] burden, California law would govern the foreign state plaintiffs' claims" and noting several other decisions reaching this conclusion).

The Ninth Circuit recently held that differences in state law do not defeat predominance in the settlement class context. *See In re Hyundai & Kia Fuel Econ. Litig.*, 926 F.3d 539, 561 (9th Cir. 2019). This is especially relevant here because

UIC is not opposing the certification of a nationwide class involving California and Missouri law. Consequently, UIC is voluntarily subjecting itself to California and Missouri law, including California's Consumer Legal Remedies Act and Missouri's Merchandising Practices Act, which provide greater protections to consumers than other jurisdictions. Where, as here, UIC's products were widely distributed and there are significant contacts with California residents, and where UIC does not oppose California law applying to the nationwide class, the *Mazza* choice of law analysis is easily satisfied because the interests of other states will not be impaired. *In re Hyundai & Kia Fuel Econ. Litig.*, 926 F.3d at 561. Missouri's MMPA can also be applied to the nationwide Settlement Class because UIC maintains its principal place of business in Missouri and Missouri has significant contacts with the claims of each class member.

Moreover, the considerations driving the rest of the *Mazza* analysis are inapplicable here. In the settlement context, other states' interests would not be undermined by the application of California and Missouri law because UIC is opting into a regime that protects consumers more vigorously than other states. In *Hanlon*, the Ninth Circuit also held that "the idiosyncratic differences between state consumer protection laws are not sufficiently substantive to predominate over the shared claims." *Hanlon*, 150 F.3d at 1022–23; *In re Hyundai & Kia Fuel Econ. Litig.*, 926 F.3d at 561 ("no party argued that California's choice-of-law rules should not apply to this class settlement"); *Sullivan v. DB Investments, Inc.*, 667 F.3d 273, 301 (3d Cir. 2011) ("variations in the rights and remedies available to injured class members under the various laws of the fifty states [do] not defeat commonality and predominance."); *In re Anthem, Inc. Data Breach Litig.*, 327 F.R.D. 299, 315 (N.D. Cal. 2018) (finding that differences between state consumer protection laws do not defeat predominance and certifying nationwide settlement class). Accordingly, the Court finds that common issues predominate.

/ / /

### 2.   *Superiority*

The Court finds that the class mechanism is superior to other available means for the fair and efficient adjudication of the claims of the Class Members. Each individual Class Member may lack the resources to undergo the burden and expense of individual prosecution of the complex and extensive litigation necessary to establish Defendant's liability. Individualized litigation increases the delay and expense to all parties and multiplies the burden on the judicial system. Individualized litigation also presents a potential for inconsistent or contradictory judgments. In contrast, the class action device presents far fewer management difficulties and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court. Accordingly, the Court finds that common questions predominate and a class action is the superior method of adjudicating this controversy and that the requirements of Rule 23(b)(3) are satisfied.

Accordingly, the Court hereby **CERTIFIES** the Settlement Class.

## VI.   <u>MISCELLANEOUS</u>

**Implementation of Settlement.** The Parties are hereby directed to implement the Settlement according to its terms and conditions.

**Enforcement of Settlement**. Nothing in this Final Approval Order shall preclude any action to enforce or interpret the terms of the Settlement. Any action to enforce or interpret the terms of the Settlement shall be brought solely in this Court.

**Retention of Jurisdiction**. The Court expressly retains continuing jurisdiction as to all matters relating to the Settlement, and this Final Order, and for any other necessary and appropriate purpose. Without limiting the foregoing, the Court retains continuing jurisdiction over all aspects of this case including but not limited to any modification, interpretation, administration, implementation, effectuation, and enforcement of the Settlement, the administration of the Settlement and Settlement relief, including notices, payments, and benefits thereunder, the

Settlement Notice and sufficiency thereof, any objection to the Settlement, any request for exclusion from the certified Class, the adequacy of representation by Class Counsel and/or the Class Representative, the amount of attorneys' fees and litigation expenses to be awarded Class Counsel, the amount of any incentive awards to be paid to the Class Representatives, any claim by any person or entity relating to the representation of the Class by Class Counsel, to enforce the release and injunction provisions of the Settlement and of this Order, any remand after appeal or denial of any appellate challenge, any collateral challenge made regarding any matter related to this litigation or this Settlement or the conduct of any party or counsel relating to this litigation or this Settlement, and all other issues related to this action and Settlement. Further, the Court retains continuing jurisdiction to enter any other necessary or appropriate orders to protect and effectuate the Court's retention of continuing jurisdiction provided that nothing in this paragraph is intended to restrict the ability of the Parties to exercise their rights under the Settlement Agreement.

**Dismissal of Action With Prejudice**. The claims against Defendant in this action, including all individual and Class claims resolved in it, shall be dismissed on the merits and with prejudice.

**IT IS SO ORDERED.**

DATED: February 24, 2020

_Christina A. Snyder_

HON. CHRISTINA A. SNYDER
United States District Judge

-24-